

**115 South LaSalle Street   Suite 2910   Chicago, Illinois 60603**

**Tel: 312. 332.3400**

Lori A. Fanning
Lfanning@millerlawllc.com

December 12, 2018

*Via ECF*

The Honorable Robert W. Lehrburger
United States Magistrate Judge
Daniel Patrick Moynihan, United States Courthouse
U.S. District Court for the Southern District of New York
500 Pearl Street, Room 1960
New York, NY 02903

Re:  *Sergeants Benevolent Ass'n Health & Welfare Fund, et. al. v. Actavis, PLC, et al*, (*Namenda III*)**, No. 15-cv-06549-CM (S.D.N.Y.)**

Dear Judge Lehrburger:

I write on behalf of End Payor Plaintiff, (New York) Sergeants Benevolent Association Health & Welfare Fund ("SBA" or "EPP"). SBA requests that this Court enter an order quashing the subpoenas for documents and depositions the Defendants served on absent class members on the grounds that discovery of absent class members is improper. SBA also objects to the extent the documents and information are duplicative of discovery already served on and responded to by SBA, and to the extent the discovery sought is duplicative of that discovery taken in the related action, *In re Namenda Direct Purchaser Antitrust Litig.* (*Namenda II*), 15-cv-07488-CM-RWL (S.D.N.Y.), with regard to any litigated issue, including but not limited to, relevant market. Finally, such third-party discovery was not contemplated by the Court's Case Management Order (ECF No. 145).

SBA notes that these subpoenas were served on the eve of the Court ordered discovery cut-off date and ask that third parties interrupt their busy schedules, shortly in advance of the holidays, to comply with unreasonably intrusive and complex discovery requests on an expedited basis. Even were the Court to decide that the discovery of any of the requests are facially proper, absent a compelling showing as to the need for the discovery and why such discovery was not sought in a more-timely fashion, such discovery should be disallowed. The Court was very specific in allowing for a limited time for discovery to allow the EPP portion of this complex litigation to get "caught up" and to address non-duplicative issues. What Defendants have done here is abusive to the third parties, abusive to Plaintiff and violates the letter and spirit of the Order allowing only for a "catch-up."

Magistrate Judge Lehrburger
December 12, 2018
Page 2

**Defendants' Third-Party Subpoenas**

In particular, Defendants have served document subpoenas on four insurers ("Insurers")[1], who are all absent class members of the End Payor Class, three healthcare services companies[2], three pharmacy benefits managers ("PBM")[3], and a coalition of health & welfare funds[4], including SBA itself. Certain of the subpoenaed entities provide or provided services for SBA, thus the subpoenas improperly seek class discovery from absent class members, as well as discovery on issues which are the subject of previous rulings in the related Namenda cases.

The law is clear that seeking discovery from absent class members such as insurers Aetna, Humana, MVP HealthCare, Inc., and UnitedHealth is improper absent a clear showing of a particularized need. No such showing has or can be made here. That was the precise inquiry during a telephonic meet and confer where Defendants failed to articulate any particularized need. Thus, the subpoenas served upon the absent class members should be quashed on that ground alone.

Most of the requests in the subpoenas fall into two categories: 1) the relationship between SBA and their PBMs; and 2) topics which Defendants would claim to concern the breadth of the contested relevant product market in this case (and which Plaintiffs contend are already resolved in this case as a matter of law). As such, they are either duplicative of prior discovery served upon SBA or attempt to delve into settled law. In addition, the subpoenas appear to seek data about: (1) purchases and usage of *any Alzheimer's Treatments*, not limited to Namenda IR and Namenda XR and generic memantine, the only drugs at issue in this case;[5] and (2) all purchase data and claims for all plan members for all *Alzheimer's Treatments*, including data identifying patients and claims, which necessarily is confidential. Defendants request this information despite that market definition having been rejected by this Court and affirmed in the Second Circuit. *The People of State of New York v. Actavis, PLC* (*Namenda I*), No. 14 Civ 7473, 2014 WL 7015198 *35-36 (Dec. 11, 2014)(*aff'd sub nom. New York ex. rel. Schneiderman v. Actavis PLC* (*Namenda II*), 787 F.3d 638 (2d Cir. 2015)("The appropriate geographic and product market for antitrust purposes in this case has been established as the memantine market in the United States."). Those rulings formed the basis of this Court's ruling on collateral estoppel that "[B]ecause all of the elements of collateral estoppel are met, Forest is precluded from relitigating the questions of (1) whether it possessed monopoly power over the U.S. memantine market up until the entry of generic competition; (2) whether its February 2014 announcement of the upcoming discontinuation of Namenda IR was coercive and anticompetitive; and (3) whether Forest had any non-pretextual procompetitive justification for its illegal conduct. Plaintiffs' motion for collateral estoppel on these

---

[1]   Aetna, Inc., Humana, Inc., UnitedHealth Group, Inc., and MVP Health Care, Inc. are all insurers who are end-payor plaintiff absent class member. CVS Healthcare recently acquired Aetna, Inc. (Exhibit A.)

[2]   Brookdale Senior Living, Inc., Envision Healthcare Holdings, Inc., and Kindred Healthcare LLC. (Exhibit B.)

[3]   Express Scripts Holding Company, CVS HealthCare, and OptumRX, Inc. (Exhibit C.)

[4]   True Health Benefits, Inc. (Exhibit D.)

[5]   While Plaintiff maintains its position that discovery regarding any Alzheimer's Treatments, other than Namenda IR or Namenda XR is improper, irrelevant, and duplicative, Defendants' subpoenas show no effort to comply with the Court's ruling finding collateral estoppel to the issue of relevant market. *The People of State of New York v. Actavis, PLC* (*Namenda I*), No. 14 Civ 7473, 2014 WL 7015198 *35-36 (S.D.N.Y. Dec. 11, 2014)(*aff'd sub nom. New York ex. Rel. Schneiderman v. Actavis PLC* (*Namenda II*), 787 F.3d 638 (2d Cir. 2015); *In re Namenda Direct Purchaser Antitrust Litig.*, 2017 WL 4358244, *16 (S.D.N.Y. May 23, 2017). The subpoenas seek information related to *any Alzheimer's Treatment* without limit.

issues of fact is GRANTED. They will be presented to the jury as already decided. *In re Namenda Direct Purchaser Antitrust Litig.* (*Namenda IV*), 2017 WL 4358244, *16 (S.D.N.Y. May 23, 2017).

Additionally, the confidential financial and personal health information and testimony sought by Defendants is burdensome, irrelevant, and unnecessarily intrusive. For example, Defendants' requests for formulary and rebate information and testimony from absent class members and the other subpoena recipients is not probative for relevant market analysis. A cherry-picked selection of anecdotal formulary and rebate examples does not address any relevant issue in the case -- including class certification -- and does not warrant the extreme step of allowing burdensome absent class member discovery.

Accordingly, Defendants cannot demonstrate a substantial particularized need for the information they seek, therefore, the insurer subpoenas should be quashed, at a minimum.

The parties have met and conferred on this issue. On the day the subpoenas were served, December 2, 2018, SBA requested a meet and confer, and offered two potential dates for the call. See L. Fanning email to Kevin Adam dated December 2, 2018. Defendants responded by confirming their intention to seek the third-party discovery in the face of Plaintiff's objections but did not confirm the meet and confer until after they were pressed to do so. The meet and confer took place on December 4, 2018. After the unsuccessful meet and confer, Plaintiff's counsel asked Defendants to stand down on pursuing the discovery pending the motion to quash. See L. Fanning email to K. Adam on December 4, 2018. Defendants declined and served 3 additional subpoenas in response. See K. Adam response to L. Fanning dated December 4, 2018 and 3 more subpoenas on December 5, 2018. See K. Adam email to L. Fanning. (Emails attached as Exhibit E.)

SBA respectfully requests that the Court issue a protective order under Fed. R. Civ. P. 26(c)(1) and/or an order under Rule 45(d)(3) quashing the outstanding subpoenas or directing Defendants to withdraw the subpoenas and not seek any further discovery from absent class members and subpoena recipients without prior approval of the Court.

## ARGUMENT

**A.     Discovery of absent class members is particularly disfavored and requires Defendants to make a heightened showing of particularized need**.

"The Federal Rules of Civil Procedure do not provide for discovery from absent class members as 'parties.'" *Stinson v. City of New York*, No. 10-civ-4228, 2015 WL 8675360, *1, (S.D.N.Y. Dec. 11, 2015) *accord In re Publ'n Paper Antitrust Litig.*, No. 3:04-md-1631, 2005 WL 1629633, *1 (D. Conn. July 5, 2005). "[A]n absent class action plaintiff is not required to do anything. He may sit back and allow the litigation to run its course, content in knowing that there are safeguards provided for his protection." *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 810 & fn.2 (1985). As the Supreme Court has recognized, absent class members should be treated as "passive beneficiaries" of the litigation and, therefore, should not be subjected to undue involvement, burden, or bother. *American Pipe & Constr. Co. v. Utah*, 414 U.S. 538, 552 (1974).

Individualized class member discovery thwarts the efficiencies of a class action under Rule 23 and can place "undue burdens on the absent class members." *Collins v. Int'l Dairy Queen*, 190 F.R.D. 629, 631 (M.D. Ga. 1999) (denying discovery); *see also Teachers Ret. Sys. v. ACLN Ltd.*, Fed.

Sec. L. Rep. (CCH) ¶ 93,067, 2004 WL 7314548, *7-8 (S.D.N.Y. 2004) ("courts are extremely reluctant to permit discovery of absent class members," citing *Kline v. First W. Gov't Secs.*, No. Civ. 83-1076, 1996 WL 122717, *2 (E.D. Pa. Mar. 11, 1996) ("upon survey of the cases, it is safe to state that discovery of absent class members is disfavored."). It is, therefore, generally improper, under Rule 23, to permit discovery directed towards absent or passive class members. *Cox v. Am. Cast Iron Pipe Co.*, 784 F.2d 1546, 1556 (11th Cir.), *cert. denied*, 479 U.S. 883 (1986).

Discovery from absent class members is limited only to those situations where the requesting party first demonstrates a strong showing of specific need for the information being sought. *See, e.g.,* MANUAL FOR COMPLEX LITIGATION (FOURTH) § 21.14, at 256-57 (2004) ("Discovery relevant to certification should generally be directed to the named parties."); *see also Groth v. Robert Bosch Corp.*, 2008 WL 2704709, *1 (W.D. Mich. Jul. 9, 2008) ("Discovery from absent class members is not warranted as a matter of course."); *Baldwin & Flynn v. Nat'l Safety Associates*, 149 F.R.D. 598, 600-01 (N.D. Cal. 1993) (holding defendants failed to demonstrate the need for discovery of unnamed class members at the precertification stage).

The burden of establishing the need for absent class discovery falls squarely, and appropriately, upon the party seeking the discovery. *Cooper v. Pacific Life Ins. Co.*, 2005 WL 1866166, *2 (S.D. Ga. 2005) (party seeking to have absent class members fill out questionnaire bears burden of proving necessity) (citing *Schwartz v. Celestial Seasonings*, 185 F.R.D. 313, 316 (D. Colo. 1999) and *Enter. Wallpaper Mfg. Co. v. Bodman*, 85 F.R.D. 325, 327 (S.D.N.Y. 1980)). When a defendant is seeking discovery against absent class members, the defendant must "(1) make a strong showing of the need for particular discovery and (2) narrowly tailor its requests to its particular need so as to not burden absent class members." *Publ'n Paper*, 2005 WL 1629633, at *1; *see also Corpac v. Rubin & Rothman, LLC*, No. 10-4165, 2012 WL 2923514, at *2 (E.D.N.Y. July 18, 2012) (same); *Redmond v. Moody's Investor Serv.*, No. 92-9161, 1995 WL 276150, at *1 (S.D.N.Y. May 10, 1995) (burden on party seeking discovery from absent class members).

In this case, Defendants have failed to make any showing as to why they are entitled to discovery from absent class members.

B. **The discovery is cumulative of discovery already received and likely to be obtained in deposition from SBA.**

Defendants seek the same information from the subpoena recipients that they have already sought and received from the named EPP Plaintiff, SBA. As such, the subpoenas are cumulative and should be quashed.

SBA has already responded to **276** document requests and **144** Interrogatories[6] from Defendants regarding a broad range of topics, including those regarding purchase data, contracts, and rebates, SBA may use. The instant subpoenas seek that same information again and additional information, from these absent class members, such as purchases of any Alzheimer's Treatment (Request No. 4), and patients' and physicians' names and addresses. (Request No. 4 c. and d.). Other topics, such as discovery regarding contracts between SBA and TPAs, has little or no relevance in the

---

[6] Generic Defendants Barr, Cobalt, and Teva each served 13 interrogatories, excluding sub-parts, on SBA. Generic Defendant Wockhardt served 14 interrogatories, excluding sub-parts, on SBA. Generic Defendants Amneal, Dr. Reddys, Sun, and Upsher-Smith each served 17 interrogatories, excluding sub-parts, on SBA. The Forest Defendants served 23 interrogatories, excluding sub-parts, on SBA.

first place. Cumulative discovery on these topics is beating a dead horse. Moreover, Defendants are also likely to elicit testimony on these topics during the 30(b)(6) deposition of SBA.

Therefore, Defendants cannot articulate a particularized need to impose the same duplicative and cumulative discovery obligations on absent class members or non-party subpoena recipients that has already been or will be imposed on SBA.

**C. Defendants are estopped from re-litigating relevant market and the formulary, rebate, and purchase data discovery sought from the absent class members and other third parties is not probative of the litigated relevant market, does not justify the absent class member discovery on a settled issue, and is pure harassment.**

Defendants seek discovery concerning formulary placement of all Alzheimer's Treatments as part of an attempt to re-litigate the issue that the product market in this case is not exclusively limited to Namenda IR and Namenda XR or memantine. Such efforts should be rejected as duplicative of the findings in the NY AG action and subsequent rulings in the related *Namenda* action cited *supra*. *See In re Namenda Antitrust Litig.*, 787 F. 3d 638 (S.D.N.Y. 2017) (holding that no discovery of drugs other than the brand at issue was relevant because "[e]vidence of market power (in addition to direct evidence of competitive harm in the form of supracompetitive prices) will therefore be available in cases like this one even without an express articulation of the relevant market definition.").[7]

Expanding this irrelevant and disproportional discovery to absent class members and non-parties is duplicative of the market definition ruling in this case.

The subpoena recipients would offer little if any information not already in the record. And to the extent there is any new information after the unduly burdensome and expensive process of requiring these non-parties to search for and produce documents regarding all Alzheimer's Treatments, the information would have little, if any probative value given the Court's collateral estoppel ruling. Market power and market definition are analyzed by reference to aggregate *market-wide* demand and price shifts. Anecdotal formulary and rebate evidence unique to a few cherry-picked absent class

---

[7] Other courts have held that the relevant market in pharmaceutical antitrust cases is limited to the brand name drug and its AB-rated generics. *United Food and Commercial Workers Local 1776 & Participating Employers Health and Welfare Fund v. Teikoku Pharma USA (In re Lidoderm Antitrust Litig.)*, No. 14-md-2521, 2017 WL 5068533, *21 (N.D. Cal. Nov. 3, 2017) (granting partial summary judgment to plaintiffs on relevant market where defendants relied on qualitative evidence of interchangeability, such as formularies, instead of quantitative cross-elasticity of demand—price competition); *In re Ciprofloxacin Hydrochloride Antitrust Litig.*, 363 F. Supp. 2d 514, 522–23 (E.D.N.Y. 2005) (on motion for summary judgment, court found relevant market consisting solely of ciprofloxacin, rejecting inclusion of drugs in the same molecular family). Indeed, the Second Circuit has even endorsed a product market consisting only of the AB-rated generics which excluded the brand name drug. *Geneva Pharms. Tech. Corp. v. Barr Labs., Inc.*, 386 F.3d 485, 496-501 (2d Cir. 2004) (relevant market was limited to generic warfarin sodium tablets). *See also In re Nexium (Esomeprazole) Antitrust Litig.*, 968 F. Supp. 2d 367, 388 (D. Mass. 2013) (the jury could find a "single product" relevant market for Nexium because "[t]he fact that other drugs may be used to treat heartburn and related conditions is immaterial" and noting that "courts across the county have on numerous occasions ruled that both a brand-name drug and its generic analogs can fall within the bounds of a relevant market"); *In re Cardizem CD Antitrust Litig.*, 105 F. Supp. 2d 618, 680-81 (E.D. Mich. 2000) (plaintiffs adequately alleged a relevant market limited to Cardizem CD and its AB-rated bioequivalents); *Louisiana Wholesale Drug Co. v. Sanofi-Aventis*, 07-cv-7343(HB), 2008 WL 169362, *7 (S.D.N.Y. Jan 18, 2008) (plaintiff alleged plausible relevant market limited to Arava (leflunomide) and its AB-rated equivalents).

members is not probative of the ultimate dispute,[8] and, in any case, Defendants have already obtained substantial discovery from SBA on purchase data for the Namenda products and rebates.

Moreover, while certain formularies may be publicly available, information regarding the decisions about individual drugs inherently involves confidential business decisions, making such discovery extremely intrusive when sought from non-parties. Accordingly, Defendants cannot provide any persuasive reason why this Court should allow them to pursue additional cumulative discovery against absent class members and non-parties.

**D.  Discovery on EPP overall drug and healthcare spending is factually and legally irrelevant, and particularly so when sought from absent class members.**

Among Defendants' requests are requests seeking policies and procedures with respect to all pharmaceutical products in the United States and competition, substitution, or interchangeability, among Alzheimer's Treatments. (Deposition Topics Nos. 7 and 10.) This confidential business information and duplicative discovery has no relevance nor probative value.

For the foregoing reasons, Defendants' improper attempt to seek discovery of irrelevant, confidential, and previously litigated and confidential information concerning drug and healthcare spending from absent class members and non-parties should be quashed.

Sincerely,

/s/ *Lori A. Fanning*
Lori A. Fanning

Cc: Counsel of Record (via email and ECF)

---

[8]  *See In re Live Concert Antitrust Litig.*, 247 F.R.D. 98, 127 (C.D. Cal. 2007) (noting that "when calculating the cross-elasticity of demand, economists examine the aggregate demand of consumers as represented by a demand curve rather than the purchasing decisions of an individual consumer.").