```
 1                    UNITED STATES DISTRICT COURT
                     SOUTHERN DISTRICT OF NEW YORK
 2

 3   --------------------------------X
                                     :
 4   SERGEANTS BENEVOLENT ASSOCIATION :
     HEALTH & WELFARE FUND, et al.,   :
 5                                    : 15-CV-6549 (CM)
                     Plaintiffs,      :
 6                                    :
                 v.                   : October 9, 2018
 7                                    :
     ACTAVIS, PLC, et al.,            : 500 Pearl Street
 8                                    : New York, New York
                     Defendants.      :
 9   --------------------------------X

10        TRANSCRIPT OF CIVIL CAUSE FOR DISCOVERY CONFERENCE
             BEFORE THE HONORABLE ROBERT W. LEHRBURGER
11                UNITED STATES MAGISTRATE JUDGE

12   APPEARANCES:

13

14   For the Plaintiffs:        PETER SAFIRSTEIN, ESQ.
                                ELIZABETH METCALF, ESQ.
15                              MARVIN MILLER, ESQ. (via telephone)
                                Safirstein Metcalf LLP
                                The Empire State Building
16                              350 Fifth Avenue, 59th Floor
                                New York, New York 10118

17

18   For the Forest
     and Merz Defendants:       MARTIN MICHAEL TOTO, ESQ.
19                              HEATHER McDEVITT, ESQ.
                                White & Case LLP (New York)
20                              1221 Avenue of the Americas
                                New York, New York 10020

21

22

23   Court Transcriber:         SHARI RIEMER, CET-805
                                TypeWrite Word Processing Service
24                              211 N. Milton Road
                                Saratoga Springs, New York 12866

25


     Proceedings recorded by electronic sound recording,
     transcript produced by transcription service
```

```
 1                                                                    2

 2

 3    APPEARANCES CONTINUED:

 4
      For Dr. Reddy's
 5    Laboratories, Ltd.:      JONATHAN BERMAN, ESQ.
                               Jones Day (DC)
 6                             51 Louisiana Avenue, NW
                               Washington, DC 20001
 7

 8    For Amneal and
      Sun Defendants:          ALLIE STRANG, ESQ.
 9                             White & Case LLP (New York)
                               1221 Avenue of the Americas
10                             New York, New York 10020

11
      For Wockhardt
12    Defendants:              DAMON SUDEN, ESQ.
                               Kelley Drye & Warren, LLP (New York)
13                             101 Park Avenue
                               New York, New York 10178
14
      For Teva, Barr, and
15    Cobalt Defendants:       SARAH FREDERICK, ESQ.
                               Goodwin Procter, LLP (Boston)
16                             53 State Street, Exchange Place
                               Boston, Massachusetts 02109
17
      For the Direct Purchaser
18    Class:                   BRUCE GERSTEIN, ESQ.
                               Garwin Gerstein & Fisher
19                             88 Pine Street, 10th Floor
                               New York, New York 10005
20

21

22

23

24

25
```

3

1          THE CLERK:  We're in the matter for a discovery

2    conference, 15-CV-6549, <u>Sergeants Benevolent Association and</u>

3    <u>parties versus Actavis, PLC, and parties</u>.

4          Attorneys, please state your name for the record.

5          MR. SAFIRSTEIN:  Good afternoon, Your Honor.  I'm

6    Peter Safirstein from Safirstein Metcalf, LLP, on behalf of

7    the plaintiffs.

8          MS. METCALF:  Elizabeth Metcalf, Safirstein Metcalf,

9    LLP.

10          MR. TOTO:  Martin Toto with White & Case.  We're

11   here for the Forest and Merz defendants, Your Honor.

12          MS. McDEVITT:  Good afternoon, Your Honor.  Heather

13   McDevitt of White & Case for the same defendants.

14          THE COURT:  Uh-huh.

15          MR. BERMAN:  Jonathon Berman, Your Honor, with Jones

16   Day representing Dr. Reddy's Laboratories.

17          THE COURT:  Okay.

18          MS. STRANG:  Allie Strang on behalf of Amneal, Sun,

19   and Upsher.

20          MR. SUDEN:  Damon Suden of Kelley Drye & Warren for

21   the Wockhardt defendants.

22          MS. FREDERICK:  I'm Sarah Frederick.  I'm here on

23   behalf of the Teva and Barr defendants.  And there's also a

24   pending stipulation and proposed order of substitution to

25   substitute me for White & Case for the Cobalt defendant.

4

1          THE COURT:  Okay.  Granted.

2          MS. FREDERICK:  Thank you.

3          MR. SAFIRSTEIN:  Your Honor, as you've heard on the

4   telephone is my co-counsel Marvin Miller (indiscernible).

5          THE COURT:  Okay.  Counsel on the phone, can you

6   hear us fine?

7          MR. MILLER:  I can, Your Honor.

8          THE COURT:  Okay.

9          MR. MILLER:  Thank you.

10          THE COURT:  Okay.

11          MR. MILLER:  It's Marvin Miller.

12          THE COURT:  Okay.  Is anyone aware of any parties

13   that haven't appeared?

14          Okay.  Good.  All right.  So we're here mainly

15   because I wanted to just meet everybody and deal with the

16   threshold issue of the schedule that Judge McMahon asked us to

17   get in place.  But even before that, I do have before me the

18   stipulated protective order.  I've read through it.  It looks

19   fine, and I will so order that.

20          All right.  As to the schedule, I have to say Judge

21   McMahon did not authorize me to deal with this all the way

22   through trial yet.  So I'm not prepared to enter a schedule

23   that's through trial, so I am much more inclined towards the

24   IPP, the indirect purchasers' schedule.  But I'd like to know

25   whether if that is adopted whether it presents any concerns or

5

1   issues.

2       MR. BERMAN:  Yes, Your Honor.  Jonathan Berman for

3   the manufacturing, sorry, the generic manufacturing of Dr.

4   Reddy's.  And it really does create some very serious concerns

5   for us.  You know -- okay.  I can certainly appreciate that

6   the Forest defendants have been working this case for 2 ½

7   years and they're ready to go, they're trial ready.  We're

8   still warming up, Your Honor.  We do not know who has been

9   asked for documents.  We don't know what they're asked for.

10  We don't have any of the documents.  We don't have any of the

11  deposition transcripts.  We don't even have a list of who was

12  deposed.

13      We don't have a clear understanding as to what the

14  claims are against us.  You read through the complaints, you

15  read through the plaintiffs' motion papers, and it's Forest

16  did this and Forest did that.  And they did all these things

17  allegedly to interfere with the ability of my client and with

18  the other generic defendants, interfere with our ability to

19  sell our products.  Leading to the question of why are we a

20  defendant here and what exactly are we alleged to have done

21  and how do we fit into the overarching scheme that Forest has

22  alleged to have committed.

23      So at this point in time, I can appreciate that a

24  party like Forest is able to complete things fairly quickly

25  because they've been through the war.  We're not able to do

1    that.  And so the suggestion that I've got and I think the

2    other generic defendants would echo this is we'd like to see

3    the record that's been developed so far.  And I don't think

4    there's a problem transmitting it.  There's some logistical

5    issues with the protective order Your Honor just signed and

6    complying with the protective order in the other case.

7              We'd like to see the record.  We'd like to

8    understand it.  And in order to evaluate it, we'd like to know

9    with guidance from the Court based on our motion to dismiss

10   are we still in the case and, if so, what's the set of facts

11   that's relevant to us.  Now that's plenty of work for us to

12   do.  I don't know exactly how big the record is, but I'm sure

13   it's dozens and dozens of depositions and it's probably

14   millions of pages of documents.  We have a lot to do just to

15   understand what's been done already, and we'll make good use

16   of the time.  But we are in no position to, you know, to

17   conclude discovery.

18             THE COURT:  Right.  But isn't the whole point of

19   this for the parties to come up to speed to be able to

20   participate in the mediation and don't the plaintiffs face the

21   same issue?

22             MR. BERMAN:  I can't speak for the plaintiffs and

23   whether they have an interest in reviewing the file like that

24   or not or what else they want to do.

25             THE COURT:  Well, that's precisely what Judge

7

1  McMahon has asked us to do, isn't it, to be able to have a

2  system in place and a set of procedures to facilitate the

3  parties becoming familiar with the record and having access to

4  the record, conducting non-duplicative discovery perhaps so

5  that they can all knowingly participate in a mediation

6  starting on -- well, after the first of the year, as she puts

7  it?

8              MR. BERMAN:  And that's what my suggestion is

9  designed to do, Your Honor.  There is so much in the record

10 already that we think we will learn a great deal by looking at

11 that record.  And we don't think that you need to have

12 completed all of discovery before you can engage in settlement

13 discussions.  You need to have a good idea of what's going on.

14 But just looking at the record will get us that.

15             And in terms of non-duplicative discovery, I don't

16 know what that is, Your Honor, because I don't know what

17 discovery has been done.  I can go back to my office and I can

18 write out a list of third parties that I might want to

19 subpoena.  And for all I know, all of them have already been

20 subpoenaed.  I bet most of them have because I'm sure the

21 parties in the dry purchaser case have done a very thorough

22 job.  But then I'd want to know what facts supposedly tie my

23 client into the alleged anti-competitive scheme of Forest and

24 the issue of whether or not the generic defendants are tied

25 into the course of conduct that's alleged, has anybody

8

1   discovered that?

2          THE COURT:  Is that -- by the way, is that a subject

3   of the pending motion to dismiss?

4          MR. BERMAN:  It certainly is, Your Honor.

5          THE COURT:  All right.  So that'll be for Judge

6   McMahon to decide.

7          MR. BERMAN:  Sure.  I'm not asking for a ruling on

8   the motion to dismiss.

9          THE COURT:  Right.

10         MR. BERMAN:  What I'm saying is that I don't know

11  what set of facts is alleged that would tie Dr. Reddy's, my

12  client, to an alleged scheme to prevent Dr. Reddy's from

13  successfully competing in the marketplace, which is what's

14  alleged.  And I don't know what's in the record already in

15  terms of whether people have actually analyzed that issue.

16         THE COURT:  All right.  Let me ask this.  I have

17  proposals, two of them.  Do I have proposals from Dr. Reddy's

18  as to what their alternative would be?

19         MR. BERMAN:  Yes.  The alternative is that we get

20  the existing discovery record turned over as soon as the

21  various protective orders allow and we get to work hard on

22  looking at those records and understanding it.  And then when

23  the order on the motion to dismiss comes in if we're still in

24  the case, we'll then be in position to spring into action and

25  promptly moved forward on discovery.

9

1          THE COURT:  So it sounds like then you're asking for

2     the equivalent of a stay of discovery as to you pending a

3     motion to dismiss; would that be fair?

4          MR. BERMAN:  Well, it's fair except that we're going

5     to be working hard.  We're not going to the beach, you know,

6     while this is happening.

7          THE COURT:  Understood.

8          MR. BERMAN:  We're looking at formally

9     (indiscernible) the stuff that we've never seen before.

10         THE COURT:  All right.  Let me hear from plaintiff

11    on this.

12         MR. SAFIRSTEIN:  Thank you, Your Honor.  You know,

13    we read the judge's order in the same way as you've just

14    described it and that is for us -- excuse me -- and that is

15    for us to come up to speed.  And we believe that the order tat

16    we've worked out amongst ourselves that we've submitted is

17    designed to be both efficient and practical and to reach the

18    end where we can get up to speed as quickly as possible.

19         And we know that it's an enormous amount of work.

20    We're prepared to do that, and we think that we are now on

21    October 9th so we're talking about let's say 2 ½ months to 3

22    months until the beginning of next year.  And as soon as we

23    get those documents, we'll be reviewing the documents and

24    we'll be in a position to make the evaluation and make a

25    determination as to what non-duplicative discovery we ought to

1  be receiving and to get that as soon as possible so that we

2  can meaningfully participate in the mediation in January or

3  after the beginning of the new year.

4          With regard to the generics' position on the motion

5  to dismiss, as Your Honor has just pointed out, they've

6  briefed that issue.  We'll have an opportunity to put in our

7  papers as well.  That'll be an issue before the judge.  The

8  one thing that we don't want to have happen is we know that

9  the direct purchasers and that Forest have been at this

10 litigation for three years.  We're catching up; the generics

11 are catching up as well.  We understand the judge to not want

12 us to hold anything up, and we're committed to not hold

13 anything up.  Speaking for the IPP purchasers, we are not

14 going to hold anything up, and we would really hope and

15 suggest that the generics don't hold up the proceedings as

16 well.

17         And that to the extent that the judge rules that

18 they're in the case and there is a mediation in the beginning

19 of January or soon thereafter, we'll be prepared and we hope

20 they'll be prepared as well.

21         THE COURT:  Is there -- what kind of discovery is

22 going to be required and sort of what's the magnitude of that

23 with respect to the generics that would be non-duplicative?

24         MR. SAFIRSTEIN:  Well, we're really not in a

25 position to address that definitively at this point, but what

1    I can tell Your Honor from what I understand is that in the

2    discovery that's been produced already, which deals with

3    Forest to a large extent, the generics have been producing

4    discovery as well as third parties.  They've had depositions

5    taken and whatever.  We, of course, have not seen that.  We've

6    heard that.

7            So once we have an opportunity to review the

8    discovery with regard to the generics part of the case with

9    regard to their witnesses and documents that were produced

10   there, then we'll be in a better position to know that.  I

11   might also add, as the Court I'm sure is aware that there was

12   another proceeding all together here and that involved New

13   York State and the Attorney Generals action.  What we've asked

14   for is that that record be produced to us as well.  And like I

15   said, we're committed to working as hard as we need to work to

16   be sure that we can attend a mediation and meaningfully

17   participate at the beginning of next year.

18           THE COURT:  Okay.  Thank you.  Before I heard from

19   Forest, I have a question back to Reddy's, which is just tell

20   me is it correct that you have been participating in discovery

21   in the other case or cases?

22           MR. BERMAN:  We received a subpoena, and we produced

23   some documents.  We produced a witness for a 30(b)(6) witness

24   for deposition.  So in terms of, you know, has Dr. Reddy's

25   produced relevant materials, we have.  Whether they think

1  we're done or not is something we're going to have to figure

2  out later.  But that's the only participation we had.  We

3  didn't sit in on the 90 other depositions --

4           THE COURT:  Right.

5           MR. BERMAN:  -- however many they were.  We didn't

6  get anybody else's documents.  We didn't -- so, you know, we

7  know what we produced, but we don't know what anybody else on

8  earth produced --

9           THE COURT:  Right.

10           MR. BERMAN:  -- in this case.

11           THE COURT:  Right.  Okay.  All right.  Let me hear

12  from is it Forest, right?

13           MS. McDEVITT:  Yes.  Thank you, Your Honor.  Heather

14  McDevitt for Forest and the Merz defendants as well.  A couple

15  of observations that I think amplify what appeared on our

16  behalf in the joint letter, and they have to do both with the

17  ability to intelligently and productively prepare for a

18  mediation in this case which has not been scheduled and in

19  part, you know, we need to kind of figure out the universe of

20  preparation that we're going to obtain before that could

21  happen but also to be having this case catch up to the DPP

22  case.  And there's a couple of reasons why I think that's

23  quite important.

24           So let me start with the mediation.  A real deficit

25  that in our view appears in the proposed scheduling order that

1  the IPP plaintiffs have submitted to Your Honor is that it's

2  pretty much a one-way street.  And, in fact, I think if you

3  look at the truly non-duplicative discovery that's going to be

4  needed in this case and that would allow us both to catch this

5  case up for purposes of perhaps an eventual trial but

6  certainly for a productive mediation is discovery that we're

7  going to need to take of the IPPs.

8          And in large part that discovery is going to be

9  grounded in the differences between the IPP and DPP plaintiffs

10 as it relates both to damage theories, damage modeling, and

11 class cert.  These are not one size fits all treatment.  In

12 either case, there are going to be significant issues in terms

13 of, you know, passthrough and downstream discovery and ways in

14 which perhaps the overlapping or duplicative damages need to

15 be sorted out.  This is complex in pharmaceutical payment

16 chain, you know, worlds.

17         And in order for us to be able to mediate in an

18 intelligent way, that is information that we think we need,

19 that we're entitled to, and that we have tried to account for

20 in the proposed schedule that we've put before you.  Same goes

21 for class certification.

22         When it comes to trial, we think that the parties

23 ought to be able to both be progressing this case productively

24 toward a mediation with the same work that we would be engaged

25 in to meet a pretrial schedule.  The reality is that we -- and

14

1   we raised this with Judge McMahon at the September 7th

2   scheduling conference -- that there are significant issues as

3   we said earlier relating to potentially inconsistent

4   judgments, duplicative discovery.  And we may very well be

5   asking Judge McMahon previewed with her last month for a joint

6   trial of the DPP and IPP cases.

7           We certainly do not want to be in a position where

8   we get to the worst of both worlds, that we have a mediation,

9   we don't settle, and we haven't advanced this case to the

10  point where it needs to be in order to catch it up for

11  purposes of trial.  Now Judge McMahon, of course, didn't rule

12  on that request on September 7th.  She did say, yeah, you

13  know, there are some issues here.  I need to think about it.

14  But we are concerned about preserving the point and being in a

15  position where we don't sort of have a de factor abandonment

16  of it because we haven't moved this case along in a way that

17  will be satisfactory to Judge McMahon.

18          She pushed us very hard in the DPP case, Your Honor.

19  We had a very aggressive schedule.  We really -- you know,

20  it's been around for a few years, but the past year or so we

21  took that case pretty much all the way through discovery,

22  summary judgment, and class certification.  The DPP plaintiffs

23  who are here in the courtroom can attest to that as well.  And

24  we are concerned that she will expect this case to progress

25  and that we won't be in a position to have done so without a

1    more meaningful pretrial schedule like the one that we

2    submitted last week to Your Honor.

3           She did at the September 7th scheduling conference

4    reference a spring 2019 trial.  Unclear as to, you know, what

5    that meant, DPPs, DPPs plus IPPS.  But that was the general

6    time frame that she referenced and so we've kept that in mind

7    as well.

8           THE COURT:  In terms of the one-way street, I didn't

9    quite get that.  Where's the one-way street because the

10   schedule proposed by the plaintiffs includes production by

11   parties generally.  It's not limited to one party.

12          MS. McDEVITT:  That's right, but it's got no expert

13   discovery.

14          THE COURT:  Well, I realize that.  I mean that to me

15   is a separate issue, right, because there's been no expert

16   discovery form either side; is that right?

17          MS. McDEVITT:  Well, not in the IPP case --

18          THE COURT:  Right.

19          MS. McDEVITT:  -- and the DPP case.

20          THE COURT:  Right.

21          MS. McDEVITT:  The case is fully teed up.  But we

22   think that in order to be in a position both to move the case

23   along and to mediate, we've got to go through that process.

24          THE COURT:  Yeah.  I don't know that experts are

25   necessary for the mediation, but I do have concerns about

16

1  holding things up from what would otherwise be the normal

2  course and certainly would not want Judge McMahon to find the

3  parties and herself in a position where mediation wasn't

4  successful for some reason and then all of a sudden find out

5  that there's work to be done that wasn't done at all.

6          So I do have some concern about that.  Plaintiff,

7  why shouldn't we go ahead and at least schedule expert

8  discovery at least for perhaps after the first of the year?

9          MR. SAFIRSTEIN:  Well, a couple of different things.

10 First of all, with regard to the issue of the one-way street,

11 as Your Honor pointed out, we're not looking at it as a one-

12 way street.  We understand that they're going to want to

13 depose our client and they'll want to take some discovery.

14 And that's fine.  And we will certainly produce our client

15 timely, and they will have that opportunity.

16          With regard to experts, let's just take a step back

17 for a second.  And as I said earlier, I think the aim here, at

18 least from our perspective from what we understand the judge

19 to be asking from us, is to be, as I said earlier, efficient

20 and practical.  So there are different ways that one can go

21 about doing that, particularly with regard to experts.  For

22 example, with regard to a mediation we will be putting in a

23 mediation statement as will all of the parties over here.  We

24 have been down this road before in other cases.  Every -- I

25 would imagine that every attorney who's in this room

17

1  practically has had similar experiences and we know how to do
2  this.  We can put in -- and we've done this in other cases
3  where we've put in information with regard to class cert and
4  information with regard to some expert analysis, for example
5  on damages into a mediation statement.  We can do that in
6  front of the mediator.  We'll put in our statement.  They can
7  meaningfully oppose, and we can put in this information
8  without having a full-blown expert discovery.

9              If we go down the road of full-blown expert
10  discovery, which if we go to trial, we certainly will have to
11  do, the reality is we're talking about months.  We're talking
12  about making this virtually impossible to have any kind of
13  meaningful mediation at the beginning of next year.  Now if
14  the Court wants meaningful mediation beginning of next year,
15  then we think that the formula to get there is to allow the
16  parties who weren't participating before to catch up as
17  quickly as possible to do a more abbreviated analysis of some
18  of these issues that my opponent is talking about right now
19  dealing with, for example, expert discovery and class
20  certification because those issues need to properly be before
21  the Court and we can put them there as I said in a more
22  truncated abbreviated practical way through a mediation
23  statement.

24              If the case settles, then this is resolved.  If the
25  case doesn't settle, then we need full-blown discovery.  And

1    we're back in front of you or in front of the Court talking

2    about a schedule that contemplates all those different issues.

3              THE  COURT: All right.  Okay.

4              MS. McDEVITT:  You know, just one point, Your Honor,

5    and not to belabor it.  Our view is that it's more practical

6    and efficient not to do it twice and that we have the ability

7    to test both damages modeling and class cert through a regular

8    expert discovery process that in turn could make the mediation

9    that much more productive.  But to sort of go through

10   mediation statements and have our experts and their experts

11   too do a little analysis not a full analysis and it doesn't

12   work and then we go back to expert -- it just seems wasteful

13   and inefficient.  And so we would just like to do it all at

14   once.

15             MR. SAFIRSTEIN:  I mean I think the opposite.

16             THE COURT:  I know.  I see someone standing back

17   there.

18             MR. GERSTEIN:  Judge, I'm Bruce Gerstein from Garwin

19   Gerstein & Fisher.  I represent the direct purchaser class.

20   If I could just --

21             THE COURT:  Welcome.

22             MR. GERSTEIN:  If I can approach.

23             THE COURT:  Sure.

24             MR. GERSTEIN:  I just wanted to give you our

25   perspective because just for some background since we have

1  been litigating very aggressively for at least three years I

2  would say.  It seems longer.

3        THE COURT:  Sure it does.

4        MR. GERSTEIN:  We've been, you know, through quite a

5  bit.  We're trial ready.  We've been trial ready since

6  January.  The judge had ordered us as of last January to be

7  fully ready for to be on the trial list.  The only thing

8  that's pending is that she has a rule that limine motions are

9  five days after the last pretrial conference.  But everything

10 else including the pretrial statements, the exhibit lists, the

11 deposition designations and everything else has been done.

12        The just had told us at the September 7th conference

13 two things.  One is that after having decided the motions for

14 summary judgment which she happened to advise us very clearly

15 that it ruined her summer, not ours but hers.  She ruined our

16 last holidays overall.  But she did say a couple of things.

17 One is that she's not going to delay this.  She's going to

18 allow us to go to the trial in the spring if we can settle it.

19 And we should do mediation as quickly as possible and she

20 said, at worst, you know, right after the end of this year.

21        So we're ready to go and what we're concerned about

22 is delaying the whole process, you know, and just having to

23 repeat everything.  We've had a very, very extensive discovery

24 period.  Obviously, you see from the Court's opinion that

25 there was quite a bit from both sides of, you know, of work

1   done.  You have a very, very extensive summary judgment record

2   with most probably hundreds of exhibits and deposition

3   designations, et cetera that was presented to the judge.

4          So they have everything for the most part for the

5   liability part of the case.  She just felt that there was some

6   additional information that they may need personally to come

7   up to speed if they're going to get involved in the same

8   mediation that we would be in.

9          THE COURT:  Okay.

10          MR. GERSTEIN:  And that's our concern is from a pure

11  self-interest if we can't settle it, we want it on trial as

12  quickly as possible.

13          THE COURT:  Uh-huh.

14          MR. GERSTEIN:  And we're not -- we'd do everything

15  we can to resist delaying this case for trial, and that was

16  something that was communicated very strongly by Judge

17  McMahon.

18          THE COURT:  Understood.  All right.  Is there anyone

19  else who wants to weigh in before I come back to Dr. Reddy's

20  counsel there?

21          MS. FREDERICK:  I'm Sarah Frederick for the Teva and

22  Barr defendants and for Cobalt as well.  I'll speak into the

23  mic.      THE COURT:  Okay.  That would be helpful.

24          MS. FREDERICKS:  I just -- you had asked Dr. Reddy's

25  counsel if there'd been any discovery of his client, and I

1  just wanted to let you know that there's been discovery of my

2  client as well in the DPP case but we're similarly situated in

3  that we were a third party in that case.

4          THE COURT:  I see.

5          MS. FREDERICKS:  And so we are similarly really

6  behind the starting line --

7          THE COURT:  Yes.

8          MS. FREDERICKS:  -- in terms of understanding the

9  theories in this case, including the theories against us.

10          THE COURT:  Okay.  Understood.  I believe Counsel

11  for Dr. Reddy's wanting to say one more thing.

12          MR. BERMAN:  Sure.  I mean I appreciate that the

13  parties in the direct purchaser action are trial ready and

14  they've got all these statements which we've never seen.

15  Maybe if we read them, we would learn more about at least what

16  a different set of plaintiffs was bringing against a different

17  set of defendants.  We still wouldn't exactly know what our

18  case is.

19          I just wanted to say a couple of things.  One is

20  we're in no position to start expert discovery.  We need to

21  start looking at the record that's out there to understand

22  what there is and just doing that is absolutely necessary in

23  order to get to a mediation.  I mean right now, you know, if I

24  were to talk to my clients, you know, what are the claims

25  against us, I don't really know.  What's the evidence against

1  us?  I have no idea.  There's four million pages.  I don't

2  know if any of them talk about us or not.  Who wants us at a

3  mediation?  Well, so far nobody.  Nobody's actually invited us

4  to a mediation.  You know, we got out of the blue the judge's

5  order, how about a mediation.  And the mediation talks about

6  them and them and them.  It doesn't talk about us.  I mean,

7  you know, I think it's fine.  If those guys want to go ahead

8  and mediate and settle and try and fine.  But we're not ready.

9  We can't do that.

10       THE COURT:  Does plaintiff think that mediation

11  could go forward without the generic defendants?

12       MR. SAFIRSTEIN:  It could.  Our clear preference is

13  that it not.  But if the Court were to say that the only way

14  to go forward at this point would be to go forward to separate

15  it and to have it as far as first and generic second, if

16  that's what the Court would rule, then that's what the Court

17  rules, but that's not our preference.

18       THE COURT:  And what about Forest?  Do you have a

19  position on that?

20       MR. TOTO:  I don't know that we have a specific

21  position as we sit here right now.  Our position is that we

22  can't even at this point decide whether we would agree to a

23  mediation with the IPPs.  That has not been agreed.  Our

24  position is that --

25       THE COURT:  Isn't Judge McMahon sort of expecting

23

1   that?

2           MR. TOTO:  Well, she has ordered us to do -- to

3   consider mediation, I believe.  I'm not sure that we can be

4   forced to pay for a mediation with a party that we don't want

5   to mediate with, but I'm not 100 percent sure.

6           THE COURT:  Well, according to her order, it says,

7   "Before setting a trial date, the DPPs and Forest have advised

8   the Court they are amenable to mediation."

9           MR. TOTO:  Well, we said we were amenable to

10  considering mediation at the September 7th with the DPPs.

11  That's what we said.  It was discussed whether we should have

12  a joint trial with the IPPs and we think we should, at least

13  at this point in time.  But our position now is we kind of

14  like the generic defendants, we don't know what their

15  allegations are against us.  They've said they're not bringing

16  a claim for a reverse payment under Actavis, which was the

17  basis of the DPPs' claim or at least half of their claim.  We

18  don't know if they have a certifiable class.  We don't know

19  what their damages model looks like.

20          As we sit here now, we can't say that any mediation

21  with the DPP -- the IPPs would be productive at all.  We have

22  to go through that process to see if they have a certifiable

23  class, to see if they have any cognizable damages.  And then

24  we can consider whether it makes sense to mediate, whether it

25  makes sense to mediate as one big party here or individually.

24

1   But those decisions, it's our position, can't be made right

2   now in a vacuum, Your Honor.

3            THE COURT:  Okay.  All right.  I'm going to rule.

4   So, I am guided by Judge McMahon's order which is very

5   specific and it says we are to set things in motion for the

6   parties to -- to get the parties to the IPP case up to speed

7   so that they can participate meaningfully in a mediation that

8   will be scheduled after the first of the year.  That requires

9   getting everyone access to the record that so far has not had

10  it.  And it requires non-duplicative discovery as Judge

11  McMahon has ordered.

12           And these are the two issues or two groups of

13  material that the order proposed by the plaintiffs addresses.

14  So I am going to enter their order.  If any party,

15  particularly the generic defendants, have any particular

16  difficulty with any specific item or material that raises an

17  issue that really creates an impossibility, bring that to my

18  attention.  I'm sure we can work through it.  But I am going

19  to enter the schedule entered by the -- offered by the

20  plaintiffs.

21           Anything else?

22           MR. SAFIRSTEIN:  Thank you, Your Honor.

23           MR. BERMAN:  Well, I hate to take advantage of your

24  offer already.

25           THE COURT:  I didn't say you could do it now.

25

```
 1            MR. BERMAN:  Well, I --

 2            THE COURT:  But, actually, I do have to get back to

 3   a settlement conference.  But could you just give me a

 4   highlight?

 5            MR. BERMAN:  Well, we're supposed to serve our non-

 6   duplicative discovery request in two weeks with -- and sitting

 7   here today, I don't even know what has been served in the

 8   other case at all.  I have no idea how to figure out what is

 9   duplicative and what is non-duplicative.

10            THE COURT:  Well, what's the deadline for the --

11            MR. BERMAN:  October 26th.

12            THE COURT:  Hold on.

13            MR. SAFIRSTEIN:  It was -- it's the 14th.  I'm

14   sorry.  It's the 12th.  The contemplation was that they would

15   give us the record --

16            THE COURT:  Right.

17            MR. SAFIRSTEIN:  -- by the 12th, give us two weeks -

18   --

19            THE COURT:  Right.

20            MR. SAFIRSTEIN:  -- to review it and to --

21            THE COURT:  Exactly.  And is access going to be

22   given on the 12th?

23            MS. McDEVITT:  Yes, Your Honor.

24            THE COURT:  Okay.

25            MS. McDEVITT:  Yeah.  I mean there's -- I mean we've
```

1   got the five motions, exhibits, pleadings.  That will be

2   produced.  We have some consent issues with third parties

3   under the DPP protective order.  We've given notice to those

4   parties.  We can produce information that doesn't fall under

5   those consent issues if we haven't gotten it.  They've got 30

6   days to consent.  We've told those parties that we're before

7   you today, and we're trying to move that process along.

8          THE COURT:  And will the discovery requests

9   themselves be included in what is in this material to which

10  there is access?

11         MS. McDEVITT:  The request and responses.

12         THE COURT:  Responses.

13         MS. McDEVITT:  Yes.

14         THE COURT:  Okay.

15         MS. McDEVITT:  We can provide that.

16         THE COURT:  All right.  Well, let's -- we're going

17  to leave it as-is for the moment.  Let's see what you get

18  access to, how overwhelming it may or may not be, and we can

19  take it from there.  But this is the schedule that's going in.

20  All right.  Anything else?

21         UNIDENTIFIED ATTORNEY:  Thank you, Your Honor.

22         THE COURT:  Thank you all.  We're adjourned.

23                        *  *  *  *  *

24

27

1       I certify that the foregoing is a court transcript from

2  an electronic sound recording of the proceedings in the above-

3  entitled matter.

4                                    _____

5

6                                    Shari Riemer, CET-805

7  Dated:   December 9, 2018

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25