WHITE & CASE

May 29, 2019

**VIA ECF**

The Honorable Colleen McMahon
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street, Room 2550
New York, NY 10007

White & Case LLP
1221 Avenue of the Americas
New York, NY 10020-1095
T +1 212 819 8200

whitecase.com

**In re Namenda Direct Purchaser Antitrust Litig., No. 15-cv-7488
("DPP Case"); Sergeants Benevolent Ass'n Health & Welfare
Fund v. Actavis, No. 15-cv-6549 ("IPP Case")**

Dear Judge McMahon:

Forest submits this letter to address the Court's May 17, 2019 letter relating to Forest's motion for leave to supplement two expert reports in the DPP Case (ECF Nos. 694-96) due to discovery of a document produced by Dr. Reddy's Laboratories ("DRL Document") to the IPPs in the IPP Case.

As set forth below, while DPPs and Forest sought non-party discovery of information from DRL related to the patent merits, DRL objected to such requests, and ultimately the requests were limited by agreement of the parties and DRL. Forest did not believe it had good grounds (or sufficient time under the expedited schedule) to contest DRL's objections. Forest had no knowledge of the DRL Document until it was produced *by DRL to the IPPs* in the IPP Case, where DRL is a defendant, and well after discovery in the DPP Case had closed.

When Forest first received the DRL Document, the DPP Case had been dormant for some time, and no trial date or schedule for pretrial filings had been set. As the Court is aware, the parties were engaged in extensive mediation efforts at the time, and Forest was hopeful that those mediation efforts would succeed. Forest did not want to waste the Court's time with mediation ongoing, and saw no conceivable prejudice to DPPs from not filing the motion to supplement immediately. After mediation failed in early March, the Court held a status conference in the DPP Case on March 15, 2019 and issued an order that same day setting the trial date and dates for final pretrial submissions. After that time, Forest moved promptly to file the motion to supplement.

Finally, Forest has been completely accurate in representations it has made to DPPs. The December 11, 2018 email referenced by the Court that states that "Forest did not know what discovery would show" was made *explicitly* about Forest's third-party subpoenas in the IPP Case that were the subject of a dispute between Forest and DPPs at the time. The statement was accurate at the time—and remains so today—because to date Forest has not received any third-party discovery in the IPP Case.

**(1) Discovery in the DPP Case**

DPPs issued a subpoena to DRL dated January 5, 2017, seeking, among other things, documents concerning the likelihood of success in the patent litigation and the costs/benefits of settling the patent litigation (see requests 6 and 9). Ex. 1, DPPs' Subpoena to Produce Documents at Schedule

A, p. 5-6.  Forest issued a "me too" subpoena to DRL on February 3, 2017, seeking the documents requested by DPPs, as well as certain additional documents, such as those pertaining to DRL's litigation costs and generic Namenda IR sales forecasts.  DPPs negotiated with DRL regarding their requests; Forest negotiated with DRL regarding Forest's additional requests.

DRL objected to the subpoena on numerous grounds, including privilege and burden.  DRL and DPPs then agreed to the scope of the production in response to DPPs' requests, including an express agreement that excluded the request for documents concerning DRL's view of the merits of the patent case.  Ex. 2, Apr. 7, 2017 Email from J. Berman to K. Fields.  Forest did not challenge the agreement between DRL and DPPs to exclude patent merits documents from the request at that time because such documents are often privileged, are rarely produced by third parties in reverse-payment cases, and Forest believed it did not have meritorious grounds at the time to challenge privilege assertions by third parties.  Moreover, discovery in the DPP Case was conducted under an expedited schedule, where Forest had little time to engage in discovery fights with third parties.

Forest was not aware of the existence of the DRL Document during discovery in the DPP Case.  Forest also never received a privilege log from DRL, and did not know why DRL did not produce the DRL Document in the DPP Case.  Similarly, Forest had no role in (or any advanced knowledge of) the production by DRL of the DRL Document to IPPs in the IPP Case.  Forest only became aware of the existence of the document after it was produced in the IPP Case.

**(2) Forest's First Knowledge of the DRL Document**

The Court stayed discovery in the IPP Case, *sua sponte*, after the parties briefed motions to dismiss the DPP and IPP complaints.  ECF No. 106 at 3 (Sept. 13, 2016).  That stay was not lifted until September 10, 2018, well after discovery was completed in the DPP Case, and the Court had decided summary judgment in the DPP Case.

After the Court lifted the stay of the IPP Case, on October 26, 2018, IPPs served requests for production of documents ("RFPs") on all generic defendants, including DRL.  Those requests for party discovery included all documents produced by the generic defendants in the DPP Case, and other requests.  Forest had no role in those IPP RFPs, and Forest served no RFPs on generic defendants.  Forest was not included in any meet and confers or negotiations between IPPs and generic defendants regarding the scope and content of their production in the IPP Case.

DRL produced a total of 900 documents in the IPP Case on November 16 and November 30, 2018.  Forest believes that the DRL Document was first viewed by a junior associate at White & Case on or about Sunday, December 9, 2018 as part of a larger review process whereby any interesting documents were identified, analyzed and then ultimately shared with the larger team.  Thus, while an attorney had "laid eyes" on the DRL Document as early as December 9, 2018, that was just the first step of a longer process that involved analysis of the document and surrounding context by the fuller team and the relevant experts.

Forest did not seek to bring the DRL Document to DPPs' or the Court's attention immediately because, at the time, activity in the litigation (as opposed to the medication) was dormant, the Court had not yet set dates for trial or final pretrial submissions, and DPPs and Forest were working toward mediation, as instructed by the Court.  The mediation process stretched over several months, and

involved numerous and extensive written submissions, in-person and telephonic meetings with the mediator, and discussions between White & Case and its client before an in-person session with DPPs.  The parties devoted substantial time and resources to the mediation and Forest was hopeful that it would be successful.  In light of this, Forest did not believe it was the appropriate time to move to supplement expert reports because a successful resolution of the litigation through mediation would have obviated the need for the inevitable motion practice regarding such supplementation.  In any event, Forest disclosed the DRL Document to DPPs and Forest brought the motion to supplement approximately six months before trial was set to start in the DPP Case, leaving plenty of time for any additional discovery well in advance of trial.

DPPs' suggestion that Forest *orchestrated* the production of the DRL Document is baseless.  Forest was unaware of the DRL Document before DRL's party production in the IPP Case, which was requested and negotiated by IPP counsel without any involvement from Forest.  Forest received the production by right as a party to the IPP Case.

On March 7, 2019, the parties reported to the Court that the mediation between Forest and DPPs had not succeeded, and on March 15, 2019, the Court set trial for October 21, 2019, and set dates for final pretrial submissions.  With the case then set for trial, Forest examined its options for treatment of the DRL Document in the DPP Case, and moved expeditiously to work with its experts to analyze the DRL Document and move to supplement.  In early April 2019, Forest sought and received permission from DRL to produce the DRL Document to DPPs, and Forest did so prior to the submission of the updated DPP Pretrial Order on April 30, 2019.

Accordingly, Forest did not intentionally delay bringing the DRL Document to the Court's and DPPs' attention as part of a plan to hide the ball, as DPPs suggest.  After the March 15, 2019 conference, Forest moved quickly to produce the document, discuss the document with its experts, and file the motion to supplement.

### (3) Forest's December 11, 2018 Email to DPPs

The Court raised in its letter the question of whether Forest's counsel "told an outright lie to counsel for the DPPs on December 11, 2018" regarding the existence of the DRL Document.  Forest's counsel did not do so because the representation in question came up in discussions between DPPs and Forest *related to third-party discovery* in the IPP Case, not discovery from parties to the IPP Case like DRL.  Forest's actual representation to DPPs that it did not know what discovery would show is crystal clear that it related to those third-party discovery efforts.  Thus, Forest's representation that it did not know what that third-party discovery would show was true then and remains true today because Forest has not received *any discovery* from *any third parties* to date in the IPP Case.  The December 11 email does not even discuss the *party* discovery from DRL at issue here.

DPPs' Opposition fails to provide the context for Forest's December 11, 2018 representation.  In November and December 2018, Forest served subpoenas on a number of third parties in the IPP Case.  DPPs then wrote to Forest expressing concerns about "3rd party document and deposition subpoenas," and asking Forest to stipulate that it would not use any evidence produced in response to *those third-party subpoenas* in the DPP Case.  Ex. 3, Dec. 7, 2018 Email from D. Litvin to H. McDevitt.  Forest refused to do so.  While DPPs cite Forest's letter to the Court of December 12,

3

2018, the actual representation was made to DPPs in an email dated December 11, 2018. In that email (which is attached), in response to DPPs' expressed concerns about "3rd party document and deposition subpoenas," Forest stated: "At this point we do not know what any evidence that we receive in response to *these subpoenas* will show." Ex. 3, Dec. 11, 2018 Email from H. McDevitt to D. Litvin. (emphasis added). The DRL Document simply had no bearing on the issue being discussed between DPP and Forest counsel, and Forest made no express or implied representations about generic manufacturer discovery.

Moreover, in that same December 11, 2018 email, Forest told DPPs that discovery in the IPP Case may in fact be relevant to the DPP Case, and that Forest may seek to use it: "to the extent that we ultimately deem that evidence [from the IPP Case] to also be relevant to the claims and defenses in the Direct Purchaser case we will evaluate that evidence at the appropriate time. You of course would be free to oppose such effort on our part to evaluate or use that evidence." *Id.* In fact, DPPs cited this statement in its December 12, 2018 letter to the Court. ECF No. 603 at 3.

The December 12, 2018 correspondence referenced in the Court's May 17, 2019 letter similarly pertained to the dispute between DPPs and Forest over third-party discovery in the IPP Case—not DRL's party discovery. In advance of a conference with Magistrate Judge Lehrburger on December 13, 2018, DPPs filed a letter with the Court seeking a protective order regarding Forest's third-party subpoenas. ECF No. 603 ("I am co-lead counsel for the Direct Purchaser Class in the above-captioned case. ***This letter pertains to 11 third party document and deposition subpoenas Forest recently served*** and seeks a protective order in the Direct Purchaser Class case regarding those subpoenas.") (emphasis added). IPPs also filed a letter with the Court seeking to quash Forest's third-party discovery. IPP Case, ECF No. 171. Forest filed its response to the IPP and DPP letters regarding third-party discovery on December 12 and 13, respectively. DPP Case, ECF No. 604; IPP Case, ECF No. 175. At the December 13, 2018 conference with Magistrate Judge Lehrburger, the only dispute involving Forest related to the third-party subpoenas. Moreover, DPPs participated in the conference precisely because of their concerns about the possibility of discovery from the third-party subpoenas in the IPP Case being used in the DPP Case. Magistrate Judge Lehrburger stated that the issue of whether discovery from the IPP Case could be used in the DPP Case would be decided at a later time.

Thus, Forest has been completely transparent and overt with DPPs—the opposite of a "Trojan horse" strategy that DPPs suggest.

### (4) Discovery from Other Generics in the IPP Case

Forest took no discovery from generic defendants in the IPP Case and was not involved in the negotiations between IPPs and generics regarding their productions. As a result, Forest is not aware of any privilege disputes concerning generic discovery in the IPP Case.

**WHITE & CASE**

Respectfully submitted,

*/s/ Heather K. McDevitt*

**Heather K. McDevitt**

**T** +1 212 819 8937
**E** hmcdevitt@whitecase.com

cc:    The Honorable Robert W. Lehrburger

5