**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SERGEANTS BENEVOLENT ASSOCIATION HEALTH & WELFARE FUND, INDIVIDUALLY AND ON BEHALF OF ITSELF AND ALL OTHERS SIMILARLY SITUATED, <br><br> Plaintiff, <br> v. <br><br> ACTAVIS, PLC, FOREST LABORATORIES, LLC, MERZ GMBH & CO. KGAA, MERZ PHARMA GMBH & CO. KGAA, MERZ PHARMACEUTICALS GMBH, AMNEAL PHARMACEUTICALS, LLC, TEVA PHARMACEUTICALS USA, INC., TEVA PHARMACEUTICAL INDUSTRIES, LTD., BARR PHARMACEUTICALS, INC., COBALT LABORATORIES, INC., UPSHER-SMITH LABORATORIES, INC., WOCKHARDT LIMITED, WOCKHARDT USA LLC, SUN PHARMACEUTICAL INDUSTRIES, LTD., DR. REDDY'S LABORATORIES LTD., and DR. REDDY'S LABORATORIES INC., <br><br> Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) )   No.: 1:15-CV-06549-CM-RWL |

**END-PAYOR CLASS PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF PROPOSED SETTLEMENTS WITH AMNEAL PHARMACEUTICALS, LLC, SUN PHARMACEUTICAL INDUSTRIES, LTD., UPSHER-SMITH LABORATORIES, LLC, AND SETTLEMENT WITH WOCKHARDT LIMITED, AND WOCKHARDT USA LLC; CERTIFICATION OF SETTLEMENT CLASS; APPOINTMENT OF CLASS REPRESENTATIVES AND CLASS COUNSEL; DEFERRAL OF NOTICE TO THE CLASS; AND STAY OF PROCEEDINGS**

# TABLE OF CONTENTS

I.      INTRODUCTION ...................................................................................................... 1

II.     BACKGROUND ....................................................................................................... 3

    A.     Plaintiff's Claims and Procedural History .......................................................... 3

    B.     Negotiation of the Settlements ............................................................................ 4

III.    THE REQUIREMENTS FOR CERTIFICATION OF A SETTLEMENT CLASS
    HAVE BEEN MET ................................................................................................... 6

    A.     Fed. R. Civ. P. 23(a)'s Requirements Are Satisfied. ......................................... 8

        1.     Numerosity.................................................................................................. 8

        2.     Commonality............................................................................................... 9

        3.     Typicality .................................................................................................. 10

        4.     Adequacy of Representation ..................................................................... 11

    B.     The Requirements of Fed. R. Civ. P. 23(b)(3) Are Also Satisfied. .................. 11

        1.     Common Questions of Law and Fact Predominate. ................................. 11

        2.     A Class Action Is Superior to Other Methods of
            Adjudicating the Class Claims.................................................................. 16

        3.     Class Counsel Meet the Requirements for Appointment
            Under Fed. R. Civ. P. 23(g). ................................................................... 17

IV.     THE PROPOSED SETTLEMENTS MEET THE STANDARD
    FOR PRELIMINARY APPROVAL. ..................................................................... 18

    A.     The Proposed Settlement Were the Result of Serious and
       Informed Negotiations by Experienced Counsel. ............................................. 19

    B.     Class Counsel Are Highly Experienced in Antitrust Litigation
       Alleging Delayed Generic Drug Competition................................................... 20

    C.     The Proposed Settlements Are Well Within the Realm of Possible Approval. ... 21

    D.     The Court Should Appoint Bank Leumi USA as Escrow Agent........................ 22

    E.     The Court Should Stay Further Litigation Between the Parties........................... 22

V.      CONCLUSION....................................................................................................... 23

# TABLE OF AUTHORITIES

**Cases**

*Ackerman v. Coca-Cola Co.*,
   2013 U.S. Dist. LEXIS 184232 (E.D.N.Y. July 17, 2013) ..................................................... 12

*Allen v. Dairy Farmers of Am., Inc.*,
   2012 U.S. Dist. LEXIS 164718 (D. Vt. Nov. 19, 2012) ......................................................... 12

*Amchem Prods., Inc. v. Windsor*,
   521 U.S. 591 (1997) ................................................................................................. 6, 12, 15

*Amgen Inc. v. Conn. Ret. Plans & Trust Funds*,
   133 S. Ct. 1184 (2013) ................................................................................................ 11, 12

*Blue Tree Hotels Inv. (Canada), Ltd. v. Starwood Hotels & Resorts Worldwide, Inc.*,
   369 F.3d 212 (2d Cir. 2004) ................................................................................................. 13

*Bourlas v. Davis Law Assocs.*,
   237 F.R.D. 345 (E.D.N.Y. 2006) .......................................................................................... 21

*Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*,
   429 U.S. 477 (1977) ............................................................................................................. 13

*Capsolas v. Pasta Res. Inc.*,
   2012 WL 1656920 (S.D.N.Y. May 9, 2012) ........................................................................ 18

*Cordes & Co. Fin. Servs., Inc. v. A.G. Edwards & Sons, Inc.*,
   502 F.3d 91 (2d Cir. 2007) .................................................................................... 10, 11, 14

*Detroit v. Grinnell Corp.*,
   495 F.2d 448 (2d Cir. 1974) .......................................................................................... 18, 21

*DG ex rel. Stricklin v. Devaughn*,
   594 F.3d 1188 (10th Cir. 2010) ........................................................................................... 14

*Elkind v. Revlon Consumer Prods. Corp.*,
   2017 U.S. Dist. LEXIS 24512 (E.D.N.Y. Feb. 17, 2017) ....................................... 17, 18, 20, 21

*Freeland v. AT&T Corp.*,
   238 F.R.D. 130 (S.D.N.Y. 2006) .......................................................................................... 13

*FTC v. Actavis, Inc.*,
   570 U.S. 136, 133 S. Ct. 2223 (2013) .................................................................................... 4

*Hernandez v. Anjost Corp.*,
  2013 WL 4145952 (S.D.N.Y. Aug. 14, 2013) ........................................................ 19

*Hernandez v. Merrill Lynch & Co.*,
  2012 U.S. Dist. LEXIS 165771 (S.D.N.Y. Nov. 15, 2012) ..................................... 18

*In re Abbott Labs. Norvir Antitrust Litig.*,
  2007 U.S. Dist. LEXIS 44459 (N.D.Cal. June 11, 2007) ......................................... 8

*In re Air Cargo Shipping Servs. Antitrust Litig.*,
  2014 U.S. Dist. LEXIS 180914 (E.D.N.Y. Oct. 15, 2014) ...................................... 14

*In re Am. Int'l Grp. Secs. Litig.*,
  689 F.3d 229 (2d Cir. 2012) ....................................................................................... 6

*In re Buspirone Patent Litig.*,
  210 F.R.D. 43 (S.D.N.Y. 2002) ..................................................................... 9, 10, 16

*In re Cardizem CD Antitrust Litig.*,
  200 F.R.D. 326 (E.D. Mich. 2001) ............................................................................ 7

*In re Corrugated Container Antitrust Litig.*,
  643 F.2d 195 (5th Cir. 1981) .................................................................................... 21

*In re DDAVP Direct Purchaser Antitrust Litig.*,
  2011 U.S. Dist. LEXIS 97487 (S.D.N.Y. Aug. 15, 2011) ............................. 9, 10, 16

*In re Elec. Books Antitrust Litig.*, No. 11 MD 2293 (DLC),
  2014 WL 1282293 (S.D.N.Y. Mar. 28, 2014) ......................................................... 14

*In re Ethylene Propylene Diene Monomer (EPDM) Antitrust Litig.*,
  256 F.R.D. 82 (D. Conn. 2009) .......................................................................... 13, 14

*In re Flonase Antitrust Litig.*,
  284 F.R.D. 207 (E.D. Pa. 2012) ......................................................................... 7, 13

*In re Hydrogen Peroxide Antitrust Litig.*,
  552 F.3d 305 (3d Cir. 2008) ..................................................................................... 12

*In re Initial Pub. Offering Sec. Litig.*,
  226 F.R.D. 186 (S.D.N.Y. 2005) .............................................................................. 20

*In re K-Dur Antitrust Litig.*,
  686 F.3d 197 (3d Cir. 2012) ..................................................................................... 14

*In re Lidoderm Antitrust Litig.*,
  2017 WL 679367 (N.D. Cal. Feb. 21, 2017).........................................................7, 13, 14, 15

*In re Lorazepam & Clorazepate Antitrust Litig.*,
  205 F.R.D. 369 (D.D.C. 2002) ................................................................................................7

*In re Metlife Demutualization Litig.*,
  689 F. Supp. 2d 297 (E.D.N.Y. 2010)...................................................................................18

*In re NASDAQ Market Makers Antitrust Litig.*,
  169 F.R.D. 493 (S.D.N.Y. 1996).....................................................................................12, 14

*In re NASDAQ Market Makers Antitrust Litig.*,
  176 F.R.D. 99 (S.D.N.Y. 1997).............................................................................................20

*In re Neurontin Antitrust Litig.*,
  2011 WL 286118 (D.N.J. Jan. 25, 2011) ..............................................................................14

*In re Nexium (Esomeprazole) Antitrust Litig.*,
  297 F.R.D. 168 (D. Mass. 2013) ...............................................................................7, 14, 15

*In re Nexium Antitrust Litig.*,
  777 F.3d 9 (1st Cir. 2015) .....................................................................................................15

*In re OxyContin Antitrust Litig.*,
  2010 U.S. Dist. LEXIS 146003 (S.D.N.Y. Sept. 27, 2010) .........................................9, 10, 16

*In re Pet Food Prods. Liab. Litig.*,
  629 F.3d 333 (3d Cir. 2010) ...................................................................................................6

*In re Petrobras Securities*,
  862 F.3d 250 (2d Cir. 2017) .................................................................................................16

*In re Processed Egg Prod. Antitrust Litig.*,
  312 F.R.D. 171 (E.D. Pa. 2015) ...........................................................................................12

*In re Relafen Antitrust Litig.*,
  221 F.R.D. 260 (D. Mass. 2004) ...............................................................................7, 13, 16

*In re Remeron End-Payor Antitrust Litig.*,
  2005 U.S. Dist. LEXIS 27011 (D.N.J. Sep. 13, 2005)............................................................7

*In re Telik, Inc. Sec. Litig.*,
  576 F. Supp. 2d 570 (S.D.N.Y. 2008).......................................................................18, 19, 22

*In re Terazosin Hydrochloride Antitrust Litig.*,
    220 F.R.D. 672 (S.D. Fla. 2004) ........................................................................... 15

*In re Traffic Exec. Ass'n E.R.Rs.*,
    627 F.2d 631 (2d Cir. 1980) ........................................................................... 18, 21

*In re Union Carbide Corp. Consumer Prods. Bus. Sec. Litig.*,
    718 F. Supp. 1099 (S.D.N.Y. 1989) ..................................................................... 19

*In re Visa Check/Mastermoney Antitrust Litig. v. Visa*,
    280 F.3d 124 (2d Cir. 2001) ............................................................................... 12

*In re Warfarin Sodium Antitrust Litig.*,
    212 F.R.D. 231 (D. Del. 2002) ......................................................................... 7, 14

*In re Warfarin Sodium Antitrust Litig.*,
    391 F.3d 516 (3d Cir. 2004) ................................................................................. 7

*In re Wellbutrin XL Antitrust Litig.*,
    2011 U.S. Dist. LEXIS 90697 (E.D. Pa. Aug. 12, 2011) ...................................... 7

*Kohen v. Pac. Inv. Mgmt. Co. LLC*,
    571  F.3d 672 (7th Cir. 2009) ............................................................................. 14

*Louisiana Wholesale Drug Co., Inc. v. Sanofi-Aventis*,
    2008 U.S. Dist. LEXIS 123291 (S.D.N.Y. Apr. 8, 2008) ........................... 9, 10, 16

*Marisol A. v. Giuliani*,
    126 F.3d 372 (2d Cir.1997) .................................................................................. 8

*McReynolds v. Richards-Cantave*,
    588 F.3d 790 (2d Cir. 2009) ............................................................................... 18

*Meijer, Inc. v. Warner Chilcott Holdings Co. III, Ltd.*,
    246 F.R.D. 293 (D.D.C. 2007) ........................................................................... 10

*Mims v. Stewart Title Guar. Co.*,
    590 F.3d 298 (5th Cir. 2009) .............................................................................. 14

*Nichols v. SmithKline Beecham Corp.*,
    2005 WL 950616 (E.D.Pa. Apr. 22, 2005) ........................................................... 7

*Noble v. 93 Univ. Place Corp.*,
    224 F.R.D. 330 (S.D.N.Y. 2004) ........................................................................ 17

*O'Keefe v. Mercedes-Benz USA, LLC*,
    214 F.R.D. 266 (E.D. Pa. 2003) ................................................................................. 15

*Palacio v. E*TRADE Fin. Corp.*,
    2012 WL 1058409 (S.D.N.Y. Mar. 12, 2012) ............................................................ 18

*Reade-Alvarez v. Eltman, Eltman & Cooper, P.C.*,
    237 F.R.D. 26 (E.D.N.Y. 2006) ........................................................................... 20, 21

*Robidoux v. Celani*,
    987 F.2d 931 (2d Cir. 1993) ..................................................................................... 8

*Ross v. Am. Express Co. (In re Currency Conversion Fee Antitrust Litig.)*,
    264 F.R.D. 100 (S.D.N.Y. 2010) ............................................................................... 13

*Spencer v. Hartford Fin. Servs. Group, Inc.*,
    256 F.R.D. 284 (D. Conn. 2009) ....................................................................... 8, 9, 10

*Sullivan v. Barclays PLC*,
    2017 U.S. Dist. LEXIS 25756 (S.D.N.Y. Feb. 21, 2017) ......................................... 13

*Sullivan v. DB Invs, Inc.*,
    667 F.3d 273 (3d Cir. 2011) ..................................................................................... 14

*Sykes v. Mel S. Harris & Assocs. LLC*,
    780 F.3d 70 (2d Cir. 2015) ....................................................................................... 12

*Tart v. Lions Gate Entm't Corp.*,
    2015 U.S. Dist. LEXIS 139266 (S.D.N.Y. Oct. 13, 2015) ....................................... 6

*Teva Pharms. USA, Inc. v. Abbott Labs.*,
    252 F.R.D. 213 (D. Del. 2008) .............................................................................. 7, 13

*True v. Am. Honda Motor Co.*,
    749 F.Supp.2d 1052 (C.D. Cal. 2010) ...................................................................... 21

*Tyson Foods, Inc. v. Bouaphakeo*,
    136 S. Ct. 1036 (2016) .............................................................................................. 12

*United States v. City of N.Y.*,
    276 F.R.D. 22 (E.D.N.Y. 2011) ............................................................................... 12

*Vista Healthplan, Inc. v. Warner Holdings Co. III, Ltd.*,
    246 F.R.D. 349 (D.D.C. 2007) ................................................................................. 7

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*,
   396 F.3d 96 (2d Cir. 2005) ......................................................................... 19, 21

*Wilson v. DirectBuy Inc.*,
   2011 U.S. Dist. LEXIS 51874 (D. Conn. May 16, 2011) ......................................... 18

*Zenith Radio Corp. v. Hazeltine Research, Inc.*,
   395 U.S. 100 (1969) ................................................................................... 13

## Other Authorities

2 W. Rubenstein, *Newberg on Class Actions* § 4:49 (5th ed. 2012) ............................ 12

6 W. Rubenstein, *Newberg on Class Actions* § 18:5 (4th ed. 2011) ............................. 9

7B FEDERAL PRACTICE AND PROCEDURE § 1781 .......................................... 13

*Manual for Complex Litigation*, § 21.632 at 382 (4th ed. 2005) ................................ 18

## Rules

Fed. R. Civ. P. 23(a) ................................................................................... 6, 8, 9, 10

Fed. R. Civ. P. 23(b) ............................................................................ 6, 11, 12, 13, 15

Fed. R. Civ. P. 23(e) ..................................................................................... 18, 21

Fed. R. Civ. P. 23(g) ..................................................................................... 16, 17

## I.      INTRODUCTION

During the months following this Court's lift of the stay of this case, Plaintiff Sergeant's Benevolent Association Health & Welfare Fund ("Plaintiff") or ("SBA"), through its counsel, began an aggressive review of the documents produced in the parallel class action and prepared for mediation with Jonathan Marks and with all parties. Direct Purchasers declined to join in an omnibus mediation so there were two separate mediation tracks.  Initially, Plaintiff mediated with the brand-named defendants, Forest and Merz, but that mediation was not successful. Subsequently, Plaintiff mediated for several weeks with the Generic Defendants. After in-person negotiations and numerous telephonic sessions with Mr. Marks, Plaintiff was able to achieve settlement agreements with five Generic Defendants – Amneal Pharmaceuticals, LLC, Sun Pharmaceutical Industries Ltd., Upsher-Smith Laboratories, LLC,[1] Wockhardt Limited, and Wockhardt USA LLC (the "Settlements"), conditioned on the Court's approval. Plaintiff seeks the Court's certification of the settlement class of end-payor purchasers (the "EPP Class" or "Class") and preliminary approval of the Settlements. Plaintiff continues to aggressively prosecute its claims against the remaining Defendants.

Pursuant to the terms of the Settlements, Amneal Pharmaceuticals, LLC, Sun Pharmaceuticals Industries, Ltd., and Upsher-Smith Laboratories, LLC, have deposited $1,200,000.00 into an escrow fund for the benefit of all members of the EPP Class and pursuant to the terms of their settlement, Wockhardt Limited, and Wockhardt USA LLC agreed to pay $340,000 in three installments and as of this date, the first two payments, totaling $255,000, have been deposited into the QSF escrow established for that purpose.  In exchange, Plaintiff will release its claims against those Defendants and agree to dismissal of this action with prejudice upon Court

---

[1]      Upsher-Smith Laboratories, Inc., which was originally named as a defendant in the Complaint, has been succeeded in interest by Upsher-Smith Laboratories, LLC.

approval. The complete terms of the Settlement with Amneal Pharmaceuticals, LLC, Sun Pharmaceuticals Industries, Ltd., and Upsher-Smith Laboratories, Inc are memorialized in the parties' Settlement Agreement, dated June 25, 2019 (the "Settlement Agreement"), attached as Exhibit 1 to the Declaration of Marvin A. Miller ("Miller Declaration").  The complete terms of the Settlement with Wockhardt Limited, and Wockhardt USA LLC are memorialized in the parties' Settlement Agreement, dated June 10, 2019 (the "Settlement Agreement"), attached as Exhibit 2 to the Declaration of Marvin A. Miller ("Miller Declaration").

The Settlements warrant the Court's preliminary approval. They resulted from intense, protracted negotiations among highly experienced counsel whose intimate knowledge with the relevant facts and surrounding legal landscape ideally situates them to assess the merits of their respective claims and defenses, and the risks of proceeding to trial. Further, Court-appointed interim counsel for the Class has a wealth of experience with antitrust class litigation generally and have also represented, and are now representing, end payors in other class actions specifically alleging, as Plaintiff does here, antitrust injury caused by unlawful delayed entry of generic versions of branded pharmaceutical drugs.

The Settlements assure that all eligible Class members will be eligible to receive a cash settlement payment thereby avoiding the risk and uncertainty that would inhere in prosecuting this action to judgment, and likely beyond in appellate review. The Settlements also spare the judicial resources and enormous costs that would be consumed by further litigation with these Defendants. Defendants do not oppose the relief requested in this motion, which is brought pursuant to the Settlements.

Accordingly, Plaintiff respectfully requests that the Court enter the Proposed Order attached as Exhibit A to the Settlement Agreements (the "Preliminary Approval Order"), which provides for the following:

1. Certification of the proposed Indirect Purchaser Class for purposes of the Settlements;

2. Appointment of the named Indirect Purchaser Class Plaintiff as representative of the Class;

3. Appointment as Co-Lead Counsel (collectively, "Class Counsel") for the Indirect Purchaser Class of the interim counsel previously appointed by the Court in its June 4, 2019 Order (ECF No. 267), with the same roles and responsibilities described in that Order;

4. Preliminary approval of the Settlement Agreements and attached exhibits necessary to effectuate the Settlements, including the Plan of Allocation (Exhibit 4 to the Miller Declaration);

5. Appointment of A.B. Data, Ltd. to serve as notice and claims administrator to assist Class Counsel in disseminating Class Notice;

6. Appointment of Bank Leumi USA as escrow agent to serve as Escrow Agent pursuant to the terms of the Escrow Agreement entered into by all parties in both settlements; and

7. A stay of further litigation between the Plaintiff and the Settling Defendants pending disposition of the anticipated motion for final approval of the Settlements.

## II.   BACKGROUND

### A.   Plaintiff's Claims and Procedural History

Plaintiff is a  health and welfare fund that, as relevant here, has asserted claims on behalf of itself and the absent Class members for damages under antitrust and consumer-protection

statutes of 31 jurisdictions.[2]  In August 2015, Plaintiff filed its class action complaint on behalf of

indirect purchasers, also known as, end payors alleging, *inter alia*, that Defendants violated these

laws by unlawfully delaying the availability of less expensive generic versions of the prescription

pharmaceutical drug Namenda by means of unlawful conduct including "reverse payment"

agreements.[3]

Defendants moved jointly to dismiss that complaint, and after extensive briefing, the Court

largely denied the motion on September 13, 2016 and issued a stay of Plaintiff's action. ECF No.

107.  On September 10, 2018, the Court lifted the stay and ordered that Plaintiff get up to speed,

engage in nonduplicative discovery, and be prepared to participate in global mediation. Plaintiff

received and commenced an intensive review of the documents produced in the parallel Direct

Purchaser class action and reviewed transcripts of depositions in that case. Plaintiff's counsel

retained a consultant to assist in a damages evaluation and were prepared to mediate in late March

and early April 2019, with extensive knowledge of the case.

### B.      Negotiation of the Settlements

After becoming familiar with the relevant facts generated through discovery, the parties

agreed to mediation with Jonathan Marks of Marks ADR.  Before mediation, the parties submitted

comprehensive mediation briefs to Mr. Marks outlining their respective cases. Throughout these

negotiations, Plaintiff's Counsel brought their extensive experience litigating similar delayed

---

[2] They are Commonwealth of Puerto Rico, Arizona, California, Colorado, District of Columbia, Florida, Hawaii, Illinois, Iowa, Kansas, Maine, Massachusetts, Michigan, Minnesota, Mississippi, Missouri, Nebraska, Nevada, New Hampshire, New Mexico, New York, North Carolina, North Dakota, Oregon, Rhode Island, South Dakota, Tennessee, Utah, Vermont, West Virginia, and Wisconsin.

[3] *See FTC v. Actavis, Inc.*, 570 U.S. 136, 133 S. Ct. 2223, 2227 (2013) ("*Actavis*") (holding that "reverse payment agreements" may violate the Sherman Act).

generic entry cases. They did so with an eye on relevant decisions issued by other courts, notably the Supreme Court's decision in *Actavis*, and on the opinions issued by this Court during the course of this litigation. The arm's-length mediation continued for several weeks, both in person and by numerous telephone discussions.

Despite good faith efforts to resolve their differences, Plaintiff and all Defendants were unable to reach a global agreement but the parties did not abandon their efforts. Plaintiff and the Generic Defendants continued throughout the next two months, negotiating directly and often through the mediator, to seek compromise and reach resolution, but those efforts too failed. Ultimately, settlements were achieved with only five Generic Defendants and those are the subject of the present motion. In mid-June and late June 2019, the parties successfully hammered out the key terms of settlements which are now memorialized in the Settlement Agreements.

The proposed Settlement with Amneal Pharmaceuticals, LLC, Sun Pharmaceutical Industries, Ltd., and Upsher-Smith Laboratories, LLC requires them to pay $1,200,000 in cash and the Settlement with Wockhardt Limited and Wockhardt USA LLC requires them to pay $340,000 in cash for the benefit of all Indirect Purchaser Class members in exchange for Plaintiff's and the Class' release of claims against those Defendants (as specified in paragraph 3 of the Amneal Settlement Agreement and Paragraph 7 of the Wockhardt Settlement Agreement) and dismissal of their action with prejudice. Under the terms of the Settlement Agreement, Settling Defendants have not admitted the truth of any of Plaintiff's allegations, nor have they admitted to any wrongdoing or violation of any state or federal law, or conceded liability to any member of the putative class. *See* Miller Ex. 1 at 2 (fourth and fifth "Whereas"), ¶ 19.  The cost of providing notice to the class at this time would represent a significant portion of the Settlement Funds paid

by the Settling Defendants. Therefore, the parties agreed that although preliminary approval is appropriate, Notice and subsequent events to obtain final approval should be deferred.

In addition to the cash component of the settlements, the Settling Defendants have each agreed to provide Plaintiff with extensive cooperation to assist Counsel in further prosecuting the case against the remaining non-settling Defendants.

## III.   THE REQUIREMENTS FOR CERTIFICATION OF A SETTLEMENT CLASS HAVE BEEN MET.

Plaintiff and the Settling Defendants have agreed, subject to the Court's review and approval, to certification of the Class for purposes of the Settlements. The requirements of Fed. R. Civ. P. 23 apply equally to certification of a class, whether for purposes of settlement or continued litigation, except that "a district court need not inquire whether the case, if tried, would present intractable management problems."[4] Thus, the Court must still assess "whether the proposed class satisfies Rule 23(a)'s four threshold requirements," including: (1) numerosity (whether "the class is so numerous that joinder of all members is impracticable"), (2) commonality (whether "there are questions of law or fact common to the class"), (3) typicality (whether "the claims or defenses of the representative parties are typical of the claims or defenses of the class"), and (4) adequacy of representation (whether "the representative parties will fairly and adequately protect the interests of the class").[5] The Court must also determine whether the Class is appropriate under Fed. R. Civ. P. 23(b)(3).[6] Here, the Settlement Class for the Wockhardt Settling Defendants is defined as:

---

[4] *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997) ("*Amchem*"); *see also In re Am. Int'l Grp. Secs. Litig.*, 689 F.3d 229, 239 (2d Cir. 2012) (quoting *Amchem*); *Tart v. Lions Gate Entm't Corp.*, No. 14-CV-8004 (AJN), 2015 U.S. Dist. LEXIS 139266, at *9 (S.D.N.Y. Oct. 13, 2015).

[5] *In re Am. Int'l Grp. Secs. Litig.*, 689 F.3d at 238 (citing *In re Pet Food Prods. Liab. Litig.*, 629 F.3d 333, 341 (3d Cir. 2010)).

[6] *Id.*

All persons or entities in the United States and its territories who indirectly purchased, paid and/or provided reimbursement for some or all of the purchase price for branded Namenda IR 5 or 10 mg tablets, or Namenda XR capsules, for consumption by themselves, their families, or their members, employees, insureds, participants, or beneficiaries, other than for resale, at any time during the period from April 14, 2010 through the date of execution of this Agreement (the "Class Period").

The following persons or entities are excluded from the End Payor Settlement Class:  (a) Defendants and their respective subsidiaries and affiliates; (b) fully insured health care plans (i.e., health care plans that purchased insurance from a third-party payer covering 100% of a plans reimbursement obligation to its members); (c) all persons or entities that purchased branded Namenda IR 5 or 10 mg tablets, or Namenda XR capsules for purposes of resale or directly from a Defendant; (d) insured individuals covered by plans imposing a flat dollar co-pay that was the same dollar amount for generic as for brand drug purchases; (e) pharmacy benefit managers without capitation contracts; (f) all judges presiding in this case and all counsel of record; and (g) all federal or state governmental entities, excluding cities, towns or municipalities with self-funded prescription drug plans.

The Settlement Class for the Amneal Pharmaceuticals, LLC, Sun Pharmaceutical Industries, Ltd., and Upsher-Smith Laboratories, LLC is defined as:

All persons or entities in the United States and its territories who indirectly purchased, paid and/or provided reimbursement for some or all of the purchase price for branded Namenda IR 5 or 10 mg tablets, or Namenda XR capsules, for consumption by themselves, their families, or their members, employees, insureds, participants, or beneficiaries, other than for resale, at any time during the period from April 14, 2010 and continuing until the anticompetitive effects of [Settling Defendants'] unlawful conduct ceases (the "Class Period").

Excluded from the proposed class are: (a) Defendants and their respective subsidiaries and affiliates; (b) fully insured health care plans (i.e., health care plans that purchased insurance from a third-party payer covering 100% of a plans reimbursement obligation to its members); (c) all persons or entities that purchased branded Namenda IR 5 or 10 mg tablets, or Namenda XR capsules for purposes of resale or directly from a Defendant; (d) insured individuals covered by plans imposing a flat dollar co-pay that was the same dollar amount for generic as for brand drug purchases; (e) pharmacy benefit managers without capitation contracts; (f) all judges presiding in this case and all counsel of record; and (g) all federal or state governmental entities, excluding cities, towns or municipalities with self-funded prescription drug plans.

Courts have certified classes in numerous other antitrust actions alleging delayed entry of generic prescription drugs, including for purposes of litigation as well as settlement.[7]

### A.   Fed. R. Civ. P. 23(a)'s Requirements Are Satisfied.

#### 1.   Numerosity

Fed. R. Civ. P. 23(a)(1) requires that a class be so numerous that joinder of all members is impracticable. To meet this requirement, joinder need not be impossible.[8]  Rather, the court must look at the class as a whole and assess if "the difficulty or inconvenience of joining all members of the class make use of the class action appropriate."[9]  "Relevant considerations include judicial economy arising from the avoidance of a multiplicity of actions, geographic dispersion of class members, financial resources of class members, [and] the ability of claimants to institute individual suits."[10]

---

[7] *See, e.g., In re Lidoderm Antitrust Litig.*, No. 14-md-2521, 2017 WL 679367 (N.D. Cal. Feb. 21, 2017); *In re Nexium (Esomeprazole) Antitrust Litig.*, 297 F.R.D. 168 (D. Mass. 2013); *Teva Pharms. USA, Inc. v. Abbott Labs.*, 252 F.R.D. 213 (D. Del. 2008) ("*TriCor*"); *In re Relafen Antitrust Litig.*, 221 F.R.D. 260 (D. Mass. 2004); *In re Cardizem CD Antitrust Litig.*, 200 F.R.D. 326 (E.D. Mich. 2001); *In re Warfarin Sodium Antitrust Litig.*, 212 F.R.D. 231, 264 (D. Del. 2002), *aff'd, In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516 (3d Cir. 2004); *Nichols v. SmithKline Beecham Corp.*, No. 00-6222, 2005 WL 950616, at \*10 (E.D.Pa. Apr. 22, 2005); *In re Remeron End-Payor Antitrust Litig.*, No. 02-2007, 2005 U.S. Dist. LEXIS 27011, at \*19, 35 (D.N.J. Sep. 13, 2005); *In re Wellbutrin XL Antitrust Litig.*, No. 08-2433, 2011 U.S. Dist. LEXIS 90697, at \*52-53 (E.D. Pa. Aug. 12, 2011); *In re Flonase Antitrust Litig.*, 284 F.R.D. 207 (E.D. Pa. 2012); *In re Lorazepam & Clorazepate Antitrust Litig.*, 205 F.R.D. 369, 374, 396 (D.D.C. 2002); *Vista Healthplan, Inc. v. Warner Holdings Company III, Ltd.*, 246 F.R.D. 349, 357 (D.D.C. 2007); *In re Abbott Labs. Norvir Antitrust Litig.*, No. C 04-1511, 2007 U.S. Dist. LEXIS 44459 at \*22-23, 30-31 (N.D.Cal. June 11, 2007).

[8] *See Robidoux v. Celani,* 987 F.2d 931, 935 (2d Cir. 1993) ("Impracticable does not mean impossible.").

[9] *Spencer v. Hartford Fin. Servs. Group, Inc.*, 256 F.R.D. 284, 289-90 (D. Conn. 2009) (citing *Robidoux*, 987 F.2d at 935).

[10] *Id.*

The numerosity requirement is easily met here where the Class comprises likely thousands of consumer members, geographically dispersed in jurisdictions throughout the United States.

### 2. Commonality

Rule 23(a)(2) requires that there be questions of law or fact common to the class. "The commonality requirement is met if plaintiffs' grievances share a common question of law or of fact." But "[i]t does not require that all questions of law or fact raised be common."[11]  Rather, Rule 23(a)(2) requires only that common questions exist "at the core of the cause of action alleged." Where the question of law involves "standardized conduct of the defendant towards of the defendant towards members of the proposed class . . . the commonality requirement of Rule 23(a)(2) is usually met."[12]

Commonality may easily be established in this antitrust case where "[a]n allegation of …monopolization [ ] or conspiracy will be viewed as a central or single overriding issue or a common nucleus of operative fact and will establish a common question."[13]  Here, as in all delayed generic entry cases, all of the members of the Class have alleged injury due to the same alleged misconduct.[14]

The numerous common issues here include whether Brand Defendants possessed market power during the relevant time period; whether the conduct alleged in the Complaint constituted a

---

[11]  *Spencer*, 256 F.R.D. at 290 (citing *Marisol A. v. Giuliani*, 126 F.3d 372, 376 (2d Cir.1997)).

[12]  *Spencer*, 256 F.R.D. at 290.

[13] 6 Wm. B. Rubinstein, *Newberg on Class Actions* § 18:5 (4th ed. 2011).

[14] *See, e.g.*, *Louisiana Wholesale Drug Co., Inc. v. Sanofi-Aventis*, 2008 U.S. Dist. LEXIS 123291, at *6 (S.D.N.Y. Apr. 8, 2008) ("*Arava*") (determining "that the foregoing classwide claims, issues, and defenses are questions of law or fact common to the Direct Purchaser Class that satisfy Rule 23(a)(2)."); *In re DDAVP Direct Purchaser Antitrust Litig.*, 2011 U.S. Dist. LEXIS 97487, at *6 (S.D.N.Y. Aug. 15, 2011) (similar); *In re OxyContin Antitrust Litig.*, 2010 U.S. Dist. LEXIS 146003, at *41 (S.D.N.Y. Sept. 27, 2010) (similar); *In re Buspirone Patent Litig.*, 210 F.R.D. 43, 57 (S.D.N.Y. 2002) (similar).

conspiracy in restraint of trade and violated the state-law analogues of Section 1 of the Sherman Act; whether the conduct alleged in the Complaint constituted a conspiracy to monopolize or monopolization in violation of the state-law analogues of Section 2 of the Sherman Act; whether Brand Defendants made large and unjustified payments to Generic Defendants to delay their introductions of less expensive generic versions of Namenda; whether the Generic Defendants were capable of entering, and would have entered, the market earlier but for Brand Defendants' payments; and whether there were any immediate and/or longer term effects on supply and pricing in the relevant market caused by Generic Defendants' purportedly delayed entry, including the extent of overcharges incurred by the EPP Class.

### 3. Typicality

Rule 23(a)(3) requires that "the claims or defenses of the representative parties [be] typical of the claims or defenses of the class." The requirement is satisfied "when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability."[15]  The typicality requirement is satisfied even if some class members have larger damage claims than others because "typicality refers to the nature of the claims of the representative, not the individual characteristics of the plaintiff."[16]

Courts have uniformly found that alleged delayed generic entry satisfies the typicality prong because the class representative seeks recovery from the alleged identically caused overcharges of the same kind for both itself and the other members of the class.[17]  The same finding is appropriate here.

---

[15] *Spencer,* 256 F.R.D. at 291.

[16] *Meijer, Inc. v. Warner Chilcott Holdings Co. III, Ltd.*, 246 F.R.D. 293, 301-02 (D.D.C. 2007) ("*Ovcon*").

[17] *See, e.g.*, *Arava*, 2008 U. S. Dist. LEXIS 123291 at *7 (determining "LWD alleges on behalf of the proposed Direct Purchaser Class the very same manner of injury from the very same course of

### 4.   Adequacy of Representation

Rule 23(a)(4) requires that the class representative "fairly and adequately protect the interests of the class." This inquiry requires a court to consider "whether (1) the plaintiff's interests are antagonistic to the interest of other members of the class and (2) plaintiff's attorneys are qualified, experienced, and able to conduct the litigation."[18]  Plaintiff passes the first test because it shares with all Class members the same financial incentive to prove that they were overcharged as a result of Defendants' conduct and to be compensated for the overcharge. The team of lawyers assembled to represent the interests of the Class members is highly qualified and brings many years of experience litigating complex and antitrust cases arising from unlawful generic suppression. Since the Court lifted the stay in this case, Class Counsel have continued to demonstrate their ability to effectively prosecute this litigation on behalf of the Class.

### B.   The Requirements of Fed. R. Civ. P. 23(b)(3) Are Also Satisfied.

Plaintiff also satisfies both prongs of Rule 23(b)(3), which requires (1) that the Court find that common questions of law or fact predominate over individual questions (the "predominance" requirement); and (2) that a class action is superior to other available methods of adjudication (the "superiority" requirement).

### 1.   Common Questions of Law and Fact Predominate.

Predominance is "'a test readily met in certain cases alleging . . . violations of the antitrust laws.'"[19]  Predominance requires that "questions common to the class predominate, not that those

---

conduct that it complains of for itself, and LWD asserts on its own behalf the same legal theory that it asserts for the Class."); *DDAVP*, 2011 U.S. Dist. LEXIS 97487, at *6 (similar); *Oxycontin*, 2010 U.S. Dist. LEXIS 146003, at *42 (similar); *Buspirone*, 210 F.R.D. at 57 (similar).

[18] *Spencer*, 256 F.R.D. at 292 (quoting *Cordes & Co. Fin. Servs., Inc. v. A.G. Edwards & Sons, Inc.*, 502 F.3d 91, 99 (2d Cir. 2007) (citation omitted).

[19] *Cordes*, 502 F.3d at 108.

questions will be answered, on the merits, in favor of the class."[20] "[T]he office of a Rule 23(b)(3) certification ruling is not to adjudicate the case; rather, it is to select the 'metho[d]' best suited to adjudication of the controversy 'fairly and efficiently.'"[21] In *Amgen*, the Supreme Court explained that "Rule 23(b)(3) . . . does not require a plaintiff seeking class certification to prove that each "elemen[t] of [her] claim [is] susceptible to classwide proof" but rather that common questions 'predominate over any questions affecting only individual [class] members.'"[22] As the Supreme Court recently explained, "[t]he predominance inquiry 'asks whether the common, aggregation-enabling issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues.'"[23] "[T]he inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation."[24] So long as common issues and evidence carry greater significance for the case as a whole, the presence of individual issues will not defeat predominance.[25] Rather, the plaintiff need only "demonstrate that the element of antitrust impact

---

[20] *Amgen Inc. v. Conn. Ret. Plans & Trust Funds,* 133 S. Ct. 1184, 1196 (2013).

[21] *Id.*

[22] *Id.* at 1196.

[23] *Tyson Foods, Inc. v. Bouaphakeo*. 136 S. Ct. 1036, 1045 (2016) (quoting 2 W. Rubenstein, *Newberg on Class Actions* § 4:49, pp. 195–196 (5th ed. 2012)).

[24] *Tyson Foods, Inc.*, 136 S. Ct. at 1045 (quoting *Amchem*, 521 U.S. at 623).

[25] *Sykes v. Mel S. Harris & Assocs. LLC*, 780 F.3d 70, 87 (2d Cir. 2015) ("The mere existence of individual issues will not be sufficient to defeat certification. Rather, the balance must tip such that these individual issues predominate."); *United States v. City of N.Y.*, 276 F.R.D. 22, 48 (E.D.N.Y. 2011) ("The mere fact that there are a great many people with plausible claims that the City has discriminated against them is hardly a reason to conclude that the individual issues that will arise in their claims will diminish the economies achieved by resolving those issues common to the claims of all the City's victims in a single class proceeding."); *Ackerman v. Coca- Cola Co*., No. 09 CV 395 (DLI)(RML), 2013 U.S. Dist. LEXIS 184232, at *88 n.35 (E.D.N.Y. July 17, 2013) ("'[A]s long as a sufficient constellation of common issues binds class members together, variations in the sources and application of [a defense] will not automatically foreclose class certification under Rule 23(b)(3)'") (quoting *In re Visa Check/Mastermoney Antitrust Litig. v. Visa, United States*, 280 F.3d 124, 138 (2d Cir. 2001).

is capable of proof at trial through evidence that is common to the class rather than individual to its members."[26]

Here, a close look reveals that, just as in earlier cases alleging suppression of generic drug competition,[27] the predominance standard is satisfied. With respect  to proving liability, common issues predominate because, any evidence of unlawful conduct causing antitrust injury "will not vary among class members."[28]  Were Class members to pursue their cases individually, each would have to establish the identical course of conduct, using the same documents and witnesses as their supporting  evidence.  As  for  proving  antitrust  violations,  then,  common  issues  not  only predominate but are virtually exclusive.[29]

---

[26] *In re Processed Egg Prod. Antitrust Litig.*, 312 F.R.D. 171, 183 (E.D. Pa. 2015) (citing *In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 311-12 (3d Cir. 2008)); *Allen v. Dairy Farmers of Am., Inc.*, No. 5:09-cv-230, 2012 U.S. Dist. LEXIS 164718, at *32 (D. Vt. Nov. 19, 2012) (citing *Hydrogen Peroxide*, 552 F.3d at 311-312).

[27] *See supra* n.14.

[28] *In re NASDAQ Market Makers Antitrust Litig.*, 169 F.R.D. 493, 518 (S.D.N.Y. 1996).

[29] *Lidoderm*, 2017 WL 679367, at *13; *TriCor*, 252 F.R.D. at 232 ("[i]n the case at bar, denying certification would require each individual plaintiff to file suit individually, at the expense of judicial economy and litigation costs for each party. This action involves the resolution of numerous complex issues of law and fact common to all putative class members. As class certification provides an opportunity for the efficient resolution of the entire class in a single forum, the court concludes that the class action mechanism is a superior litigation approach"); *Relafen*, 221 F.R.D. at 287 ("resolution of the end payor plaintiffs' numerous claims by class action would provide substantial savings in time, effort, and expense") (quoting 7B FEDERAL PRACTICE AND PROCEDURE § 1781 ("since antitrust actions typically present many complicated issues, the courts should utilize these … provisions to settle the common issues on a representational basis to avoid congesting the courts with separate actions requiring the repetitive adjudication of the same matters")); *Flonase*, 284 F.R.D. at 232-34 ("[B]oth fairness and efficiency dictate that I certify the class in this case; otherwise, the numerous individual class members would be forced to file suit individually, producing numerous identical issues in each case that would waste judicial resources and leave all parties vulnerable to unfair inconsistencies.").

Second, demonstrating antitrust injury similarly presents predominantly common issues, some of which are mentioned above.[30]  Antitrust injury, or impact, requires only a showing of "some damage" due to a defendant's antitrust violation.[31]  When applying the predominance requirement of Rule 23(b)(3), the Court "need only determine whether the element of injury-in-fact can be proven by evidence common to the class."[32]  A plaintiff need only show "widespread injury to the class."[33]  The fact that some class members may ultimately be shown to have sustained no injury does not preclude certification.[34]

---

[30] *In re Ethylene Propylene Diene Monomer (EPDM) Antitrust Litig.*, 256 F.R.D. 82, 86-87 (D. Conn. 2009) (citing *Cordes*, 502 F.3d at 105); *Ross v. Am. Express Co. (In re Currency Conversion Fee Antitrust Litig.)*, 264 F.R.D. 100, 114 (S.D.N.Y. 2010) (same); *Freeland v. AT&T Corp.*, 238 F.R.D. 130, 149 (S.D.N.Y. 2006) ("To establish antitrust injury, "a plaintiff must show (1) an injury-in-fact; (2) that has been caused by the violation; and (3) that is the type of injury contemplated by the statute.") (citing *Blue Tree Hotels Inv. (Canada), Ltd. v. Starwood Hotels & Resorts Worldwide, Inc.*, 369 F.3d 212, 220 (2d Cir. 2004)); *Sullivan v. Barclays* PLC, No. 13-cv-2811 (PKC), 2017 U.S. Dist. LEXIS 25756, at *45 (S.D.N.Y. Feb. 21, 2017) (citing *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 489 (1977) ("A plaintiff 'must prove antitrust injury, which is to say injury of the type the antitrust laws were intended to prevent and that flows from that which makes defendants' acts unlawful.'").

[31] *See Ross,* 264 F.R.D. at 115-16 (quoting *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 395 U.S. 100, 114 n.9 (1969) ("'plaintiff's burden of proving the fact of damage under § 4 of the Clayton Act is satisfied by its proof of some damage flowing from the unlawful conspiracy; inquiry beyond this minimum point goes only to the amount and not the fact of damage'").

[32] *In re Ethylene Propylene Diene Monomer (EPDM) Antitrust Litig.*, 256 F.R.D. at 90. *Comcast* presents no problem to plaintiffs. They have one theory of injury and one consistent theory of damages. *See also In re Nexium Antitrust Litig.*, 777 F.3d 9, 19 (1st Cir. 2015) (in affirming certification of similar end-payor class, rejecting challenge under *Comcast* where "the plaintiffs' theory and model for damages would only require that the defendants pay aggregate damages equivalent to the injury that they caused.").

[33] *In re Warfarin Sodium Antitrust Litig.*, 212 F.R.D. at 252 (quoting *NASDAQ*, 169 F.R.D. at 523); *In re Neurontin Antitrust Litig.*, No. 02-1390, 2011 WL 286118, at *8 n. 23 (D.N.J. Jan. 25, 2011) ("widespread injury to the class" sufficient).

[34] *In re Air Cargo Shipping Servs. Antitrust Litig.*, No. MDL No. 1775, 2014 U.S. Dist. LEXIS 180914, at *219-21 (E.D.N.Y. Oct. 15, 2014) (citing *Kohen v. Pac. Inv. Mgmt. Co. LLC,* 571 F.3d 672, 677 (7th Cir. 2009)) ("Nothing in our class certification jurisprudence requires that every single class member suffer an impact or damages, regardless of the size of the class. To the contrary, courts have routinely recognized what an unrealistic burden this would put on plaintiffs"); *In re Elec. Books Antitrust Litig.*, No. 11 MD 2293 (DLC), No. 11 MD 2293 DLC,

Any minor variations among the state laws invoked by Plaintiff are not material enough to defeat certification. Because the core elements of these laws are substantially identical and generally interpreted consistently with federal antitrust law, numerous courts have certified indirect purchaser claims brought under different state laws. These decisions include delayed entry claims. *See, e.g., In re Lidoderm Antitrust Litig.*, No. 14-md-02521-WHO, 2017 WL 679367, at *27 (N.D. Cal. Feb. 21, 2017) (finding that "[t]he differences in the applicable state laws identified by defendants do not appear to be material or even significant" and collecting cases); *In re Nexium (Esomeprazole) Antitrust Litig.*, 297 F.R.D. 168, 176 (D. Mass. 2013), *aff'd sub nom. In re Nexium Antitrust Litig.*, 777 F.3d 9 (1st Cir. 2015) (holding that variance in state laws did not bar class certification under Rule 23(b)(3)). Moreover, in the case of classes certified for litigation purposes, courts have recognized that any significant differences that might emerge "can be readily accommodated on a special verdict form or through other mechanisms routinely employed in complex litigations," *Lidoderm*, 2017 WL 679367, at *27, and "are insufficient to overcome the innumerable advantages that class treatment will afford." *In re Terazosin Hydrochloride Antitrust Litig.* 220 F.R.D. 672, 701 (S.D. Fla. 2004). Of course, no such issues are implicated for certification of a settlement class.

---

2014 WL 1282293, at *22 (S.D.N.Y. Mar. 28, 2014) (citing *Kohen,* 571 F.3d at 677) ("[I]t is widely recognized that 'a class will often include persons who have not been injured by the defendant's conduct . . . Such a possibility or indeed inevitability does not preclude class certification"); *In re K-Dur Antitrust Litig.*, 686 F.3d 197, 221-22 (3d Cir. 2012) (that some class members have "zero" or "negative" damages does not defeat certification if "all (or virtually all) members of the proposed class" were harmed); *Sullivan v. DB Invs, Inc.*, 667 F.3d 273, 306 (3d Cir. 2011) (*en banc*) (rejecting argument that would require "each class member possess[] a valid claim under the applicable substantive laws"); *DG ex rel. Stricklin v. Devaughn*, 594 F.3d 1188, 1198 (10th Cir. 2010); *Mims v. Stewart Title Guar. Co.*, 590 F.3d 298, 308 (5th Cir. 2009); *Nexium*, 296 F.R.D. at 58 (same).

### 2.   A Class Action Is Superior to Other Methods of Adjudicating the Class Claims.

To assess the superiority of the class action mechanism to the alternative of numerous individual actions, Fed. R. Civ. P. 23(b)(3) allows the Court to weigh factors such as any interest Class members might have in pursuing separate actions, the extent of any independent litigation already commenced by Class members, the risk of conflicting orders and judgments, the desirability of concentrating the litigation in this forum, and the difficulties likely to be encountered managing a class action.[35]  These factors militate strongly in favor of certification of the Class.

Class treatment for purposes of the Settlement obviously will not raise any significant manageability concerns, because litigation on the merits will cease.[36]  Further, class treatment is superior to resolving Class members' claims on an individual basis for a number of compelling reasons. [37] There has been significant fact discovery in this matter, and the Court's prior rulings have shaped the contours of the case.  Given this progress, the case is ideally situated for class treatment, a manner of disposing of Plaintiff's claims that is vastly superior to individualized adjudication of the many Class members' claims, whether here or in multiple courts around the

---

[35] Fed. R. Civ. P. 23(b)(3); *see also Amchem*, 521 U.S. at 615 (the requirement of superiority ensures that resolution by class action will "achieve economies of time, effort, and expense, and promote . . . uniformity of decisions as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results.").

[36] *Amchem*, 521 U.S. at 620; *O'Keefe v. Mercedes-Benz USA, LLC*, 214 F.R.D. 266, 291 (E.D. Pa. 2003).

[37] *See, e.g., Arava*, 2008 U.S. Dist. LEXIS 123291 at *10; *Buspirone*, 210 F.R.D. at 58; *DDAVP*, 2011 U.S. Dist. LEXIS 97487 at *8; *OxyContin*, 2010 U.S. Dist. LEXIS 146003 at *44.

country. Among other benefits, class certification promises to conserve judicial resources, reduce costs, achieve efficiencies of scale, and eliminate the possibility of inconsistent rulings.[38]

This case is also amenable to class treatment because the Class members are ascertainable.[39]   As is the case for all pharmaceuticals, the marketing of Namenda generates detailed data that can be accessed from multiple industry sources, which allows the identification of Class members and relevant transactional information. This data can be sorted by state to the extent necessary for Plaintiff's state law claims. Certification of the Class is the best way for Class members to obtain the relief they seek.

### 3.  Class Counsel Meet the Requirements for Appointment Under Fed. R. Civ. P. 23(g).

Under Rule 23(g), a court that certifies a class must appoint class counsel. Class counsel is charged with fairly and adequately representing the interests of the class.[40]   When appointing class counsel, the Court must consider: (1) the work counsel has done in identifying or investigating potential claims; (2) counsel's experience in handling class actions, other complex litigation, and similar claims; (3) counsel's knowledge of the applicable law; and (4) the resources counsel will commit to representing the class.[41]57

---

[38] *See Relafen*, 218 F.R.D. at 347 ("Resolution by class action would instead promote uniform treatment of class members-similarly situated direct purchasers who allege similar injuries resulting from the same conduct.").

[39] For a class to be sufficiently ascertainable, its members need only be identified using "objective criteria that establish a membership with definite boundaries," a "modest threshold requirement [that] will only preclude certification if a proposed class definition is indeterminate in some fundamental way." *In re Petrobras Securities,* 862 F.3d 250, 257 (2d Cir. 2017).

[40] *See* Fed. R. Civ. P. 23(g)(1)(B).

[41] *See* Fed. R. Civ. P. 23(g)(1)(A)(i-iv); *see also Noble v. 93 Univ. Place Corp.,* 224 F.R.D. 330, 339-40 (S.D.N.Y. 2004).

When Plaintiff moved for appointment of interim class counsel, they presented the firm and individual credentials of the attorneys who would be responsible for the prosecution of this case and to represent the interests of the Class.  Having considered those credentials, the Court appointed Class Counsel on an interim basis because their demonstrated ability to effectively prosecute this action and achieve the settlements now before this Court. Plaintiff requests that the Court reaffirm the appointments of Class Counsel. Armed with their years of experience prosecuting complex and antitrust class actions arising from unlawful generic suppression, Class Counsel are more than capable of continuing to capably represent the Class until completion of this litigation.

## IV.   THE PROPOSED SETTLEMENTS MEET THE STANDARD FOR PRELIMINARY APPROVAL.

Preliminary approval of the Settlements is warranted if the Court determines that they are the product of serious, informed, and non-collusive negotiations, there is no reason to doubt its fairness, they have no obvious deficiencies, and they appear to fall within the range of possible approval.[42]

Preliminary approval does not require the Court to reach any ultimate conclusions on the fairness and reasonableness of the Settlements.[43]  Rather, a court "need only determine that there is probable cause to submit the agreement to the proposed class members and to hold a fairness hearing, at which time the court will have the opportunity to closely examine the intricacies of the settlement terms and to assess their fairness."[44]

---

[42] *See Elkind v. Revlon Consumer Prods. Corp.*, No. CV 14-2484 (JS) (AKT), 2017 U.S. Dist. LEXIS 24512, at *46 (E.D.N.Y. Feb. 17, 2017).

[43] *See Detroit v. Grinnell Corp.*, 495 F.2d 448, 456 (2d Cir. 1974).

[44] *See Elkind v. Revlon Consumer Prods. Corp.,* 2017 U.S. Dist. LEXIS 24512, at *45-46 (citing *In re Traffic Exec. Ass'n E.R.Rs.*, 627 F.2d 631, 634 (2d Cir. 1980)).

18

As the Court evaluates the Settlements according to that standard, the "professional judgment of counsel involved in the litigation is entitled to great weight."[45]   A hearing is not necessary or required under Rule 23(e) at the preliminary approval stage. As explained in the *Manual for Complex Litigation* (the "*Manual*"), "[i]n some cases, this initial evaluation can be made on the basis of information already known, supplemented as necessary by briefs, motions, or informal presentations by parties."[46]   Of course, the EPPs and Class Counsel are available should the Court wish to hold a hearing at this preliminary approval stage.

### A.   The Proposed Settlements Were the Result of Serious and Informed Negotiations by Experienced Counsel.

If the Court finds that the Settlements are the result of good faith, serious, "arm's-length negotiations between experienced, capable counsel after meaningful discovery," they are entitled to a presumption of fairness.[47]   Moreover, participation in the negotiation process by a neutral third party, as was the case here, supports a finding that a settlement is not collusive.[48]

---

[45] *In re Metlife Demutualization Litig.,* 689 F. Supp. 2d 297, 330 (E.D.N.Y. 2010) (quoting *In re Telik, Inc. Sec. Litig.,* 576 F. Supp. 2d 570, 576 (S.D.N.Y. 2008)); *see also Wilson v. DirectBuy Inc.,* No. 3:09-CV-590 (JCH), 2011 U.S. Dist. LEXIS 51874, at *15 (D. Conn. May 16, 2011) ("A presumption of fairness will arise, where 'a class settlement [is] reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery.'") (quoting *McReynolds v. Richards-Cantave*, 588 F.3d 790, 803 (2d Cir. 2009)).

[46] *Manual for Complex Litigation*, § 21.632 at 382 (4th ed. 2005); *see also Hernandez v. Merrill Lynch & Co.,* 2012 U.S. Dist. LEXIS 165771, at *4 (S.D.N.Y. Nov. 15, 2012) (citing *Palacio v. E*TRADE Fin. Corp.*, No. 10 Civ. 4030, 2012 WL 1058409, at *1 (S.D.N.Y. Mar. 12, 2012)); *Capsolas v. Pasta Res. Inc.*, No. 10 Civ. 5595 2012 WL 1656920, at *1 (S.D.N.Y. May 9, 2012) ("Courts often grant preliminary settlement approval without requiring a hearing or a court appearance.").

[47] *See Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.,* 396 F.3d 96, 116-17 (2d Cir. 2005); *see also In re Telik, Inc. Sec. Litig.,* 576 F. Supp. 2d 570 at 575 (citing *In re Union Carbide Corp. Consumer Prods. Bus. Sec. Litig.*, 718 F. Supp. 1099, 1103 (S.D.N.Y. 1989) ("a class action settlement enjoys a "presumption of correctness" where it is the product of arm's-length negotiations conducted by experienced, capable counsel.").

[48] *Hernandez v. Anjost Corp.*, No. 11 CIV. 1531 AT, 2013 WL 4145952, at *2 (S.D.N.Y. Aug. 14, 2013).

These Settlements were achieved after the Court denied Defendants' motion to dismiss, lifted the stay, and after Class Counsel's intense review of the numerous documents, transcripts and materials garnered from the New York Attorney General's case and the DPP case; and were successfully mediated. The voluminous documentary discovery and the depositions enabled the parties to scrutinize the strengths and weaknesses of their respective claims and defenses in light of a developed factual record. Equipped with this knowledge, the parties engaged in intensive settlement discussions through two separate sessions of mediation facilitated by Jonathan Marks. As noted above, the negotiations were detailed, time-consuming, and hard-fought.  Even after the dollar amounts were agreed to in principle, it took more than two months to complete the ultimate written agreements as the remaining terms of, for example, cooperation and other matters were hard fought.

### B.      Class Counsel Are Highly Experienced in Antitrust Litigation Alleging Delayed Generic Drug Competition.

In approving class action settlements, courts often rely to a significant degree on the judgment of experienced counsel who have previously engaged in arm's-length negotiations to resolve complex litigation.[49]  This reliance reflects courts' recognition that vigorous negotiation by highly skilled counsel is likely to generate fair and reasonable settlements.

---

[49]  *See, e.g., Elkind v. Revlon Consumer Prods. Corp.*, No. 2017 U.S. Dist. LEXIS 24512*, at * 46-48 (citing *Reade-Alvarez v. Eltman, Eltman & Cooper, P.C.*, 237 F.R.D. 26, 33 (E.D.N.Y. 2006))(settlement found to be the result of "serious, informed, and non-collusive negotiations "[b]ased on counsel's representations, the agreement is the product of vigorously fought litigation and months of arm's-length negotiations between seasoned attorneys"); *see also In re Initial Pub. Offering Sec. Litig.*, 226 F.R.D. 186, 194 (S.D.N.Y. 2005) (proposed settlement clearly the product of "serious, informed, non-collusive negotiations'" where the parties were "represented by experienced and talented counsel that share expertise in this field and an extensive knowledge of the details of this case.") (quoting *In re NASDAQ Market-Makers Antitrust Litig.*, 176 F.R.D. 99, 102 (S.D.N.Y. 1997)).

Here, putative Class Counsel believe that the Settlements are fair and reasonable, and serve well the best interests of the Class. Putative Class Counsel base this evaluation on their familiarity with the facts and circumstances of this case as well as their broad experience representing indirect purchaser plaintiffs in similar delayed generic entry cases.[50] Additionally, Putative Class Counsel had the benefit of a neutral mediator, Jonathan Marks, a nationally recognized mediator, who provided valuable insight and guidance which enabled the Settling Parties to reach resolution of the issues.

### C.   The Proposed Settlements Are Well Within the Realm of Possible Approval.

The test to be applied at this preliminary approval stage is whether the Settlements fall "within the range of" settlements that could "possibly" be worthy of final approval as fair, reasonable, and adequate.[51] Whether the Settlements ultimately merit final approval from the Court will be determined at the final fairness stage in accordance with *City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974), which enumerates nine factors to be considered by courts assessing the fairness of a settlement under Rule 23(e).[52] For now, the Court need only determine whether

---

[50] *See e.g. In re Flonase Antitrust Litig.*, No. 08-3301 (E.D. Pa.) ($46 million settlement - Co-Lead Counsel for End Payors); *In re Aggrenox Antitrust Litig.*, 14-md-2516 (D. Conn.) ($54m settlement approved July 19, 2018 – Co-Lead Counsel for End Payors); *In re Relafen Antitrust Litig.*, Master File No. 01-12222-WGY (D. Mass. 2001) (Co-Lead Counsel for End Payors - $75 million settlement); *In re Cardizem CD Antitrust Litig.*, No. 99-md-1278 (E.D. Mich.) (Edmunds, J.) (November 25, 2002).

[51] *True v. Am. Honda Motor Co.*, 749 F.Supp.2d 1052, 1063 (C.D. Cal. 2010) (quoting *In re Corrugated Container Antitrust Litig.*, 643 F.2d 195, 205 (5th Cir. 1981)).

[52] These factors are: (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation. *See Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.,* 396 F.3d at 117 (citing *Grinnell*, 495 F.2d at 463).

the Settlements potentially merit approval in light of the *Grinnell* criteria.[53]

Each of these Settlements fits comfortably within the zone of possible approval. It serves the best interests of the Class by securing an immediate cash recovery of $1,540,000 million while avoiding delay, risks and uncertainties, including the vagaries of juries tasked with rendering a verdict in cases as complex as this one, and the potential appeal of any favorable verdict the Class might be awarded.  Compared to litigating to a final resolution, the certain, immediate receipt of the settlement proceeds establishes an initial presumption that the settlement is "fair, adequate, and reasonable."[54]

> **D.     The Court Should Appoint Bank Leumi USA as Escrow Agent.**

As the parties have agreed, the Court should approve Bank Leumi USA to serve as escrow agent.

> **E.     The Court Should Stay Further Litigation Between the Parties.**

Pursuant to the Settlement Agreements (Amneal, Sun, Upsher Settlement Agreement, ¶15; Wockhardt Settlement Agreement, ¶15), except as required to implement the Settlement Agreements, the Court should stay further litigation between these parties pending disposition of the potential final approval of the Settlements.

---

[53] *See Elkind v. Revlon Consumer Prods. Corp.* 2017 U.S. Dist. LEXIS 24512 at *52-53 (citing *Bourlas v. Davis Law Assocs.*, 237 F.R.D. 345, 355 n.7 (E.D.N.Y. 2006) ("Fleshing out these nine factors at this stage of the settlement approval process is premature. Such a review is reserved for the final stage of approval"); *see also Reade-Alvarez* 237 F.R.D. at 34 ("Clearly, some of these factors, particularly the reaction of the class to the settlement, are impossible to weigh prior to notice and a hearing.")

[54] *Elkind v. Revlon Consumer Prods Corp.,* 2017 U.S. Dist. LEXIS 24512 at *18-19) (quoting *In re Traffic Exec. Asso.--E. R.Rs.*, 627 F. 2d at 634) ("Preliminary approval 'is at most a determination that there is what might be termed 'probable cause' to submit the proposal to class members and hold a full-scale hearing as to its fairness.'").

## V.       CONCLUSION

For the foregoing reasons, Plaintiff requests that the Court enter its Order granting preliminary approval of the Settlements, reaffirming the appointment of Class Counsel and Class representative, appointing A.B. Data, Ltd. notice and Claims Administrator, appointing Bank Leumi USA as Escrow Agent and Staying further litigation between the Settling Parties (see proposed Preliminary Approval Order).

Dated: August 16, 2019                              Respectfully submitted,

                                                    */s/Marvin A. Miller*
                                                    Marvin A. Miller
                                                    Lori A. Fanning
                                                    **MILLER LAW LLC**
                                                    115 South LaSalle Street, Suite 2910
                                                    Chicago, IL 60603
                                                    Telephone: (312) 332-3400
                                                    MMiller@millerlawllc.com
                                                    LFanning@millerlawllc.com

                                                    Peter Safirstein
                                                    Elizabeth Metcalf
                                                    **SAFIRSTEIN METCALF LLP**
                                                    The Empire State Building
                                                    350 Fifth Avenue, Suite 5960
                                                    New York, NY 10118
                                                    Telephone: (212) 201-2845
                                                    PSafirstein@SafirsteinMetcalf.com
                                                    EMetcalf@Safirsteinmetcalf.com

                                                    ***Counsel for End-Payor Plaintiff
                                                    and the EPP Class***