**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
—————————————————————x

SERGEANTS BENEVOLENT ASSOCIATION
HEALTH & WELFARE FUND, individually and on
behalf of itself and all others similarly situated,

Plaintiff,

-against-                                                                   15 Civ. 6549 (CM)

ACTAVIS, PLC, and FOREST LABORATORIES,
LLC, MERZ PHARMA GMBH & CO. KGAA, MERZ
GMBH & CO. KGAA, MERZ PHARMACEUTICALS
GMBH, AMNEAL PHARMACEUTICALS, LLC,
TEVA PHARMACEUTICAL INDUSTRIES, LTD.,
BARR PHARMACEUTICALS, INC., COBALT
LABORATORIES, INC., UPSHER-SMITH
LABORATORIES, INC., WOCKHARDT LIMITED,
WOCKHARDT USA LLC, SUN PHARMACEUTICALS
INDUSTRIES, LTD., DR. REDDY'S LABORATORIES
LTD., AND DR. REDDY'S LABORATORIES INC.,

Defendants.
—————————————————————x


**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR**
**LEAVE TO FILE A SECOND AMENDED CLASS ACTION COMPLAINT AND**
**DENYING PLAINTIFF'S LETTER MOTION FOR LEAVE**
**TO FURTHER AMEND ITS PROPOSED AMENDED PLEADING**


McMahon, C.J.:

Plaintiff Sergeants Benevolent Association Health & Welfare Fund ("Plaintiff" or "IPP")

filed this putative class action on August 20, 2015, on behalf indirect purchasers of the

Alzheimer's drug Namenda®, originally manufactured by Defendant Forest Laboratories

("Forest"). Plaintiff alleges that Forest and its patent licensor Merz[1] engaged in two

---

[1] "Merz" refers to three entities, all listed as Defendants in the Amended Complaint and proposed Second Amended Complaint: Merz GmbH & Co. KGaA, Merz Pharma GmbH & Co. KGaA, and Merz Pharmaceuticals GmbH.

anticompetitive maneuvers to artificially extend Forest's monopoly over the Namenda market: first, by attempting to withdraw the old formulation of Namenda IR and replace it with an extended release version, Namenda XR (the "hard switch"); and, second, by entering into patent litigation settlement agreements with generic manufacturers (the "Generics" or "Generic Defendants") to stay out of the generic Namenda market until the exclusivity period for Forest's existing, twice-a-day Namenda IR formulation had nearly expired ("reverse payments").

While only direct purchasers in a monopolized market may bring suit under the federal antitrust law, the United States Supreme Court's decision in *California v. ARC Am. Corp.*, 490 U.S. 93, 105–06 (1989) permits indirect purchasers to sue for similar conduct under analogous state statutes.  Therefore, it is common in private antitrust litigation for two groups of purchasers, direct and indirect, to file separate cases arising out of the same nucleus of operative fact, but to allege different causes of action – direct purchasers under federal law and indirect purchasers under various state laws.

That is what happened in connection with Namenda: while Plaintiff pursued its claims in the IPP action, the direct purchasers of Namenda ("DPP") brought federal claims in the case captioned *In re Namenda Direct Purchaser Antitrust Litigation*, No. 15-cv-7488 (S.D.N.Y.) (the "Direct Purchaser Action"). After consolidation, both the IPP Defendants and DPP Defendants filed motions to dismiss.  While those motions were pending, Plaintiff filed an amended complaint.  (Dkt. No. 96; the "Amended Complaint" or "AC")  The Court ruled on the DPP Defendants' motions on September 13, 2016, allowing the action to proceed to discovery, then severed and stayed the motions in the IPP case.  (Dkt. No. 107.)

Two years later, after a class was certified in the DPP case, this Court lifted the stay in the IPP case and referred discovery matters to the Hon. Robert Lehrburger, U.S.M.J.  (Dkt. No.

122.)  The IPP Defendants' motions to dismiss were still pending. Before this Court ruled on those motions, Plaintiff moved for leave to amend the complaint.  (Dkt. No. 150.)  In the order granting in part and denying in part Defendants' motions to Dismiss, entered December 26, 2018, this Court denied the IPP motion for leave to amend.  (Dkt. No. 186; the "MTD Order.")

Now pending before this Court is Plaintiff's Motion for Leave to File a Second Amended Complaint, filed October 25, 2019, as well as Plaintiff's letter motion to make further amendments to the Second Amended Class Action Complaint, filed November 18, 2019. (Dkt. No 290.)  The former is **GRANTED in part and DENIED in part**; the latter is **DENIED.**

## BACKGROUND

On July 31, 2019, Judge Lehrburger held a case management conference to resolve potential conflicts between the trial schedule in the Direct Purchaser Action and the discovery schedule in this case.  (*See* Dkt No. 281.)  During that conference, he granted Plaintiff's request to file a proposed amended complaint to resolve any "claim issues[s] or technical issues[s]" with the current complaint.  (*Id.* at 13:21-22.) However, Judge Lehrburger expressly barred Plaintiff from amending its complaint to add facts simply to "strengthen a particular point or . . . for the benefit of narrative."  (*Id.* at 13:19-20.)

The next day, Judge Lehrburger entered an order directing Plaintiff to provide Defendants with a copy of the proposed amendment complaint by August 30, 2019 (Dkt. No. 174). Plaintiff complied, providing a draft Second Amended Complaint to the Defendants on August 30.  The parties met and conferred to resolve any disputes about the proposed amendments, but were unable to reach an agreement on three issues:

First, Plaintiff's proposed Second Amended Complaint seeks relief against Defendant Merz, as well as Forest, for injuries related to monopolization under state law.  These allegatations of monopolization arise out of the hard switch and the reverse-payment settlements,

as was the case in the Direct Purchaser action.  (*See* Dkt. No. 290-1, Proposed Second Amended Complaint, or "PSAC," ¶¶ 196-214.)  Plaintiff also pleads new facts regarding Merz's involvement in the alleged hard switch.  (*See id.* ¶¶ 135-36, 216.)

Second, Forest and Merz, as well as the Generic Defendants, object to Plaintiff's pleading of two new theories of liability in connection with the monopolization cause of action (Count One).

Third, Plaintiff proposes to amend the class definition to include indirect purchasers of the generic equivalents of Namenda IR and Namenda XR, in addition to the class of indirect purchasers of Namenda IR and Namenda XR described in the Amended Complaint.  (*See* PSAC ¶ 150.)

After Plaintiff filed its motion, both Merz and Forest wrote letters to this Court outlining several grounds on which the parties proposed to file summary judgment motions.  After seeing those letters, on November 18 – just four days before Defendants' opposition to the motion for leave to amend was due – Plaintiff wrote this Court asking to further amend their proposed pleading.  (Dkt. No. 300.)  Plaintiff's "Second Further Amended Complaint" (which would really be a Third Amended Complaint) is on its face a clear and blatant violation of Judge Lehrburger's order.  Of particular note, it adds numerous factual embellishments to the previously-pleaded claim that the patent litigations were settled anticompetitively – an issue that had been pleaded in more general terms in the earlier pleadings.  (*See, e.g.*, AC ¶¶ 72-83.)

On November 22, the Court received three briefs opposing Plaintiff's motion for leave to amend: one from the Generic Defendants, Teva, Barr, Dr. Reddy's, and Cobalt (Dkt. No. 301; "Gen. Opp."); another from Merz (Dkt. No. 302; "Merz Opp."); and another from Forest (Dkt. No. 303; "Forest Opp").

4

**DISCUSSION**

While Federal Rule of Civil Procedure 15(a)(2) requires a party to obtain leave of the Court or consent of the opposing party before a second amended pleading may be filed, it provides that "The court should freely give leave when justice so requires."  The Second Circuit has directed that a "motion to amend should be denied only for such reasons as 'undue delay, bad faith, futility of the amendment, and perhaps most important, the resulting prejudice to the opposing party.'" *Richardson Greenshields Sec., Inc. v. Lau*, 825 F.2d 647, 653 n.6 (2d Cir. 1987) (quoting *State Teachers Ret. Bd. v. Fluor Corp.*, 654 F.2d 843, 856 (2d Cir. 1981)).  "A proposed amended to a pleading would be futile if it could not withstand a motion to dismiss" for failure to state a claim for which relief may be granted. *Oneida Indian Nation of N.Y. v. City of Sherrill*, 337 F.3d 139, 168 (2d Cir. 2003).

**I.     PLAINTIFF'S MOTION FOR LEAVE TO FILE A SECOND AMENDED COMPLAINT IS GRANTED IN PART AND DENIED IN PART.**

     **A.     Amended Claims**

          1.     <u>Plaintiff may amend Count One to include Merz as a party defendant.</u>

When I decided the motions to dismiss, this Court found that Count One as then pleaded stated a claim as to both Forest and Merz under the laws of 23 states.  (MTD Order at 59.)  That conclusion was justified by facts pleaded in the then-operative Amended Complaint – such as that "In 2009, Forest *and Merz* ended the [patent] litigation . . . by entering into anticompetitive agreements." (AC ¶ 6 (emphasis added).)  However, Plaintiff had not named Merz as a defendant to Count One in the Amended Complaint – a fact called to my attention almost immediately by Merz, which moved pursuant to Federal Rule of Civil Procedure 60 for an order clarifying "that Count One of Plaintiff's operative complaint does not contain allegations against Merz." (Dkt. No. 198.)  Because the pleading did not name Merz, the Court granted the "clarifying" order – I

did not in any way alter my finding that the facts pleaded actually stated a claim against Merz. (Dkt. No. 202.)

Now Plaintiff seeks to add Merz as a named defendant in an action in which the Court has already ruled that the facts pleaded in Count One state a claim against Merz as if it were named as a defendant.  That motion is granted.  This is precisely the type of "technical issue" that Judge Lehrburger directed Plaintiff to fix in their Second Amended Complaint.  (Dkt. No 281, Tr. 13:22.)  As was true in the Amended Complaint, the PSAC contains facts sufficient to state a claim for monopolization under the relevant state laws as to Merz.

Merz argues that the proposed amendment to Count One is futile because Plaintiff fails to plead a necessary element of monopolization as to Merz: monopoly power.  (Merz. Opp. at 6 (citing *U.S. v. Grinnell Corp.*, 384 U.S. 563, 570,71 (1966).)  Because Forest made 100% of Namenda IR and XR sales, Merz claims it cannot have monopolized a market that it never entered.  *See, e.g.*, *RxUSA Wholesale., Inc. v. Alcon Labs., Inc.*, 661 F. Supp. 2d 218, 227 (2d Cir. 2009) ("It is axiomatic that a firm cannot monopolize a market in which it does not compete.")

Merz is correct that federal law requires monopoly power allegations to sustain a claim under Section 2 of the Sherman Act – which is, no doubt, why Merz only cites federal courts deciding Sherman Act claims in support of this argument.  *See, e.g.*, *Spectrum Sports, Inc. v. McQuillan*, 506 U.S. 447, 454 (1993) (addressing Sherman Act § 2 claims); *In re Zinc Antitrust Litig.*, 155 F. Supp. 3d 337, 343 (S.D.N.Y. 2016) (same).  But the IPP claims are created under the law of 23 states, not under the Sherman Act.  Merz cites no state law that would support dismissal of Plaintiff's state law claims for failure to plead monopoly power.

It is irrelevant that Count One offers no basis "to treat Forest and Merz as a single economic entity" possessing monopoly power.  (Merz Opp. at 7.)  Again, Merz's argument in this regard depends on cases interpreting federal law, which held that "The Second Circuit has specifically rejected monopolization claims **under Section 2** based on a shared monopoly theory of liability."  *RxUSA*, 661 F. Supp. 2d at 235 (emphasis added); *see also In re Wellbutrin XL Antitrust Litig.*, No. 08-2431, 2009 WL 678631, at *8 (E.D. Pa. Mar. 13, 2009) (dismissing monopolization claim against licensor in Hatch-Waxman antitrust case).

But the *Wellbutrin* plaintiffs brought their claims under federal law, which adhere to a "single firm" rule for monopolization claims.  *Spectrum Sports*, 506 U.S. at 554.  Here, the various state laws on which Count One relies permit Plaintiff to pursue monopolization claims for anticompetitive schemes orchestrated by multiple firms – *i.e.* Forest and Merz – without requiring Plaintiff to establish market share for each alleged monopolist.  *See, e.g.*,  N.Y. Gen. Bus. Law § 340(1) (prohibiting "Every contract, agreement, arrangement or combination whereby [a] monopoly . . . is or may be established"); Haw. Rev. State § 480-9 ("No person shall monopolize . . . or combine . . . with any other person to monopolize . . . .").

Accordingly, Plaintiff's motion for leave to amend Count One to plead a claim for monopolization and unlawful maintenance of monopoly power under state law as to Merz is **GRANTED.**  We can determine which states are like New York and Hawaii (in that they allow multiple-firm monopolization claims) and which are not are a later date.

        2.    <u>Plaintiff may not amend Count One to include sham patent litigation and Orange Book fraud theories.</u>

Plaintiff also asks to amend Count One to include two new theories of antitrust liability never raised before Judge Lehrburger or this Court: that Forest and Merz maintained their monopoly over the Namenda patent through sham patent litigation and so-called "Orange Book"

fraud. (PSAC ¶¶ 200(a), (b).) Merz argues that these amendments would be futile, insofar as they are unsupported by factual allegations sufficient to survive a motion to dismiss. (Merz Opp. at 9.)

Merz is correct. Indeed, the Plaintiff's motion on these points can fairly be characterized as having been made in bad faith.

Under the *Noerr–Pennington* doctrine, filing a lawsuit is protected activity under the First Amendment, and may not give rise to antitrust liability, unless the lawsuit is a "sham." *Prof'l Real Estate Investors, Inc. v. Columbia Pictures Indus., Inc.,* 508 U.S. 49, 56, 60–61 (1993). To plead the sham litigation exception, a plaintiff must allege that the lawsuit was (1) "objectively baseless in the sense that no reasonable litigant could realistically expect success on the merits"; and (2) subjectively motivated by a desire to "interfere *directly* with the business relationships of a competitor, through the use of the governmental *process*—as opposed to the *outcome* of that process—as an anticompetitive weapon.' " *Id.* at 60–61 (internal citations and quotation marks omitted) (emphases in original).

Unlike the federal antitrust arguments addressed in Seciton I.A.1, *supra*, the *Noerr-Pennington* doctrine arises from constitutional guarantees that bind the states through the Fourteenth Amendment, and therefore applies to antitrust claims brought under state law and federal law alike. *See In re Buspirone Patent Litig.*, 185 F. Supp. 2d 363, 369 (S.D.N.Y. 2002).

Allowing Plaintiff to amend the complaint to state a claim for sham litigation under *Noerr–Pennington* would be futile, because Plaintiff has not plausibly alleged that the Namenda patent litigation was objectively baseless. In fact, other than the single line conclusory phrase added to Count One – accusing Forest and Merz of "asserting a patent in sham lawsuits against generic Namenda manufacturers to delay generic competition" (PSAC ¶ 200(b)) – the

PSAC contains no facts whatsoever with respect to the sham litigation theory, let alone facts suggesting that Forest and Merz knew the memantine patent was "obviously invalid" at the time they first initiated litigation against the generics. *Cf. In re Fresh Del Monte Pineapples Antitrust Litig.*, No. 04-md-1628, 2009 WL 3241401, at *15 (S.D.N.Y. Sept. 30. 2009) (discussing *Noerr-Pennington* standard for patent litigation).

Plaintiff does not support its amendment with any evidence adduced during discovery (either in this case or in the Direct Purchaser action) that would support a "sham" litigation theory. Notably, the Direct Purchaser action, which was actively litigated until the eve of trial, included in its record considerable evidence about the Namenda patent litigation. The Namenda patent was actively litigated in Delaware for several years and Forest obtained favorable rulings from a respected Delaware judge with considerable patent expertise on its proposed claim construction – placing it in an advantageous litigation position – after which the Generics settled. (*See* MTD Order at 38.) Experts in the Direct Purchase action testified (indeed, they filed reports under oath in connection with the motions for summary judgment) opining on the likelihood that Forest would prevail in the Delaware lawsuits. No one – not even the DPP plaintiffs' expert – suggested for a minute that Forest had zero chance of prevailing, or that the patent lawsuits were so utterly lacking in merit as to qualify as a "sham" for *Noerr-Pennington* purposes. It is, frankly, frivolous for Plaintiff to make that argument.

After four years of litigation and over one year of discovery, that shortcoming is fatal to Plaintiff's request to amend Count One to include a sham litigation theory. Given its intimate familiarity with the Delaware cases, this Court will not allow Plaintiff to proceed on "labels and conclusions" grounds alone. The sham litigation amendment to Count One is disallowed as futile. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

Lack of plausible factual allegations also dooms Plaintiff's request to amend Count One to include a so-called theory of "Orange Book" fraud, another exception to *Noerr-Pennington* immunity.  Courts have held that antitrust suits may proceed based on allegations that defendants fraudulently listed a patent in the FDA publication entitled "Approved Drug Products with Therapeutic Equivalence Evaluations," or the "Orange Book."  *See, e.g.*, *In re Ciprofloxacin Hydrochloride Antitrust Litig.*, 363 F. Supp. 2d 514, 545-46 (E.D.N.Y. 2005).  But to allege plausibly that an Orange Book listing was fraudulent, a complaint must demonstrate that the "the patent was obtained through fraud or was 'objectively baseless'," – the same *Noerr-Pennington* sham litigation standard that the PSAC fails to meet.  *See United Food & Commercial Workers Unions & Employers Midwest Health Benefits Fund v. Novartis Pharm. Corp.*, No. 15-CV-12732, 2017 WL 2837002, at \*15 (D. Mass. June 30, 2017), *aff'd,* 902 F.3d 1 (1st Cir. 2018) ("*UFCW*"); *Daiichi Sankyo, Inc. v. Apotex, Inc.*, No. 030937, 2009 WL 1437815, at \*9 (D.N.J. May 19, 2009).   A complaint offering no facts to support a sham litigation theory does not support a claim for "Orange Book" fraud, either.  *See UFCW*, at \*15.  The Proposed Second Complaint therefore fails to state a claim under either theory.

Because amending the Second Amended Complaint to include the sham litigation and Orange Book fraud theories would be futile, Plaintiff's motion for leave to amend the complaint to include these theories is **DENIED**.

        3.     <u>Plaintiff may amend Count Two to allege a conspiracy to monopolize between Forest and Merz in connection with the hard switch.</u>

The proposed Second Amended Complaint also alleges that Merz is liable under Count Two, Conspiracy to Monopolize under the laws of those states that recognize such a claim.[2]

---

[2] Not all states recognize claims of conspiracy to monopolize.  (*See* MTD Order at 59-67 (finding sufficient allegations to support claims of conspiracy to monopolize under the laws of 25 states).)

(PSAC ¶¶ 215-222.)  In the original pleading, Merz was listed as a co-conspirator with Forest only on the "reverse payment" monopolization claim.  Plaintiff now proposes to add Merz as a co-conspirator on the hard switch claims as well.

Specifically, Plaintiff allege that Forest "lowered any immediate financial burden . . . from the hard switch by soliciting Merz to accept a reduced royalty rate" on Merz's memantine patent.  (*Id.* ¶ 135.)  Merz, for its part, "agreed to a lesser and revised royalty in order to share in the extra profit form the hard switch . . . knowing that Forest was predicting that Namenda XR net sales would double from the hard switch."  (*Id.* ¶ 136.)

Merz offers several reasons why these allegations are insufficient to state a claim against it for conspiracy to monopolize, and therefore why amending the complaint to include these two allegations would be futile.  (Merz. Opp. at 11-17.)  Merz claims that its agreements with Forest were lawful; that it never agreed to assist with the hard switch; and that "Merz was acting in its own self-interest when it purportedly adjusted the royalty rate to maximize its own profits."  (*Id.* at 16.)

None of this establishes that Plaintiff's proposed amendment would be futile.  Each of Merz's arguments raises a genuine issue of fact concerning Merz's knowledge of the hard switch and its subjective intent when entering into the revised royalty agreement with Forest.  Since subjective intent is a factual question that cannot be resolved on a motion to dismiss, either as matter of antitrust law, *see, e.g.*, *Metro. Intercollegiate Basketball Ass'n v. Nat'l Collegiate Athletic Ass'n*, 337 F. Supp. 2d 563, 573 (S.D.N.Y. 2004), or contract law, *see, e.g.*, *Spinelli v. Nat'l Football League*, 903 F.3d 185, 200 (2d Cir. 2018), Plaintiff's proposed amendment to Count Two is not futile.

Besides, Plaintiff not only alleges that Merz profited from the hard switch, but also states that Merz accepted a lower royalty rate from Forest in the short term, so that Forest could execute the hard switch and allow both parties to recognize monopoly profits beyond the valid patent term.  That is a quintessential monopolization allegation.  In *Aspen Skiing Co. v. Aspen Highlands Skiing Corp.*, 472 U.S. 585 (1985), the Supreme Court affirmed a jury verdict finding anticompetitive intent based on a company's decision to "PSACrifice short-run benefits . . . in exchange for a perceived long-run impact on its smaller rival." *Id.* at 610-11.   Plaintiff here alleges a similar scheme: Merz agreed to lower its royalty rate so that Forest could afford the marketing efforts necessary to pull off the hard switch, which, in the long run, would increase the value of Merz's patent.

Because I cannot, as a matter of law, say that Plaintiff's proposed amendment would be futile, Plaintiff's motion for leave to file a Second Amended Complaint alleging conspiracy to monopolize against Merz in connection with the hard switch is **GRANTED.**

### B.    Amended Class Definition

I now turn to Plaintiff's proposed amended class definition, which would include not only the indirect purchasers of Namenda IR and Namenda XR, but also the indirect purchasers of the generic versions of those two drugs.

It is black-letter law in this Circuit that a district court considering a motion for class certification "is not bound by the class definition proposed in the complaint." *Robidoux v. Celani*, 987 F.2d 937 (2d Cir. 1993).  Courts often recite that rule when a new class definition first appears in a class representative's moving papers, causing the defendant to complain of lack of notice.  *See, e.g.*, *Menking ex rel. Menking v. Daines*, 287 F.R.D. 174, 181 (S.D.N.Y. 2012); *Kalow & Springut, LLP v. Commence Corp.*, 272 F.R.D. 397, 401 (D.N.J. 2011).

Defendants cannot reasonably complain of lack of notice.  Plaintiff has yet to file a motion for class certification; the deadline for filing such a motion under the current case management order is not until June 19, 2020.  (Dkt. No. 275.)  If a court has the inherent power to alter the scope of a class action upon certification, surely this Court may grant Plaintiff's request to amend the class definition to include purchasers of Namenda's generic equivalents. Defendants have six months before the close of fact discovery – currently scheduled for May 22, 2020 (*id.*) – to collect information related to the new proposed class definition in order to oppose Plaintiff's certification motion.

Merz and the Generics argue that Second Circuit precedent does not permit Plaintiff to "add an entirely new set of putative class members."  (Merz Opp. at 23; *see also* Gen. Opp. at 4.) For example, in *Wilder v. News Corp.*, No. 11 cv 4947, 2015 WL 5853763, at *16–17 (S.D.N.Y. Oct. 7, 2015) and *Levy v. U.S. GAO*, 175 F.3d 254, 255 (2d Cir. 1999), courts did not allow amendments adding new plaintiffs, because the claims of the new plaintiffs would have been time-barred on the day the original complaints were filed, and remained time barred.  That rationale does not apply to the generic IR purchasers or the generic XR purchasers; generic IR had only been on the market for a few months when the original complaint was filed, and generic XR would not "enter the market until 2018" – as Merz admits. (Merz. Opp. at 18.)  Therefore, neither group's claims were time-barred when Plaintiff filed the original complaint in this matter.

Nor are the new class members' claims time-barred now.  Rule 15(c)(1)(C) allows for an amended pleading to relate back to the date of the original pleading if four conditions are met: "(1) the claim must have arisen out of conduct set out in the original pleading; (2) the party to be brought in must have received such notice that it will not be prejudiced in maintaining its defense; (3) that party [knew or] should have known that, but for a mistake of identity, the

original action would have been brought against it; and ... [4] the second and third criteria are fulfilled within [the period provided by Rule 4(m) for serving the summons and complaint], and ... the original complaint [was] filed within the limitations period." *Hogan v. Fischer*, 738 F.3d 509, 517 (2d Cir. 2013).  The Proposed Second Amended Complaint meets that test: the claims arise out of the same conduct described in the original pleading; the defendants are the same named in the original pleading; the defendants were aware that the new class members' claims were being brought against it, since they are identical to the causes of action set out in the original complaint by the originally-identified class; and the original complaint was filed and served properly within the statute of limitations.

Merz and the Generics further argue that the proposed Second Amended Complaint fails to state a claim on behalf of the generic XR purchasers for lack of facts demonstrating that the generic XR purchasers suffered antitrust injury.  (*See, e.g.*, Merz Opp. at 18.)  The Generics maintain, "There is good reason to think that IPP cannot plausibly" allege such injury, based on the structure of prescription drug payment mechanisms: for example, many consumers may have paid an identical copay for the brand and generic versions of Namenda XR.  (Gen. Opp. at 5; *see also* Merz. Opp. at 20.)

But this Court has already ruled that federal antitrust injury doctrine provides no basis to dismiss Plaintiff's claims based on state law monopolization theories.  (MTD Order at 31-32.) Plaintiffs' motion for leave to amend is not the appropriate occasion for this court to rule on the validity of the Generics' identical co-pay defense under each of the many state laws involved here.  That issue will likely be taken up letter.

Even if the proposed class members' insurers shouldered the increased generic price instead of passing it on to the insured end payors, and even if that were a bar to recovery for

some of the class members under some of the state law claims alleged, that does not preclude Plaintiff from adding the generic XR purchasers to the class definition at this time.  Whether the insurer or insured shouldered the increased price only affects the damages analysis, and the existence of "some individualized damages issues" is not even grounds for denying class certification, let alone denying leave to amend the complaint.  *In re Namenda Direct Purchaser Antitrust Litig.*, 331 F. Supp. 3d 152, 204 (S.D.N.Y. 2018) (citing *Sykes v. Mel S. Harris & Assocs. LLC*, 780 F.3d 70, 81 (2d Cir. 2015)).

 Allowing the proposed amendment also comports with fundamental fairness.  In the direct purchaser action, this Court granted the plaintiffs' request to expand the class definition to include purchasers of its generic equivalent.  *In re Namenda Direct Purchaser Antitrust Litig.*, 331 F. Supp. 3d 152, 211-12 (S.D.N.Y. 2018).  I reasoned that because the direct purchasers' complaint specifically alleged that class members "would have paid less for memantine by purchasing generic Namenda IR at lower prices sooner," *id.* at 211 (internal quotation marks omitted), defendants had reason to anticipate discovery regarding generic purchasers, and, thus, the proposed amendment carried no risk of prejudice.

 That rationale applies the second time around:  Defendants in this case have long known that Plaintiff alleged in the Amended Complaint that class members "would have paid less for Namenda IR by substituting purchases of less-expensive AB generic equivalents."  (Dkt. 96 ¶ 174.)  Therefore, the facts relating to the sales of Namenda's generic equivalents, as well as the end-payors making those purchases, have long been relevant to the claims and defenses in this case.  Defendants have months left for discovery to remedy any perceived prejudice.

 I also reject Merz's final argument for not permitting Plaintiff to amend the class definition; that "There is no plausible connection between the conduct alleged – reverse

payments to delay generic *IR* entry and an alleged hard switch to *branded XR* – and purchases of *generic XR*." (Merz. Opp. at 20.) Merz recognizes that delayed entry of a generic drug allows a brand manufacturer to realize inflated profits, but argues that the "hard switch" was not an attempt to cause that sort of delay, so the purchasers of generic XR sustained no injury.

That position is flatly contrary to the allegations in both the Amended and Second Amended Complaints, which offer numerous facts to support the conclusion that the hard switch delayed and impeded the sale of all forms of generic Namenda, without differentiating between the IR and XR versions. (*See, e.g.*, PSAC ¶ 145.) As Plaintiff alleges, Forest and Merz entered into unlawful reverse payments to quiet generic challenges to the Namenda IR patent (*id.* ¶¶ 77-85), which bought them time to formulate Namenda XR (*id.* ¶ 86), then more time to hold XR back from the market several years after it gained FDA approval (*id.* ¶¶ 101, 103), thus delaying the entry of generic versions of XR. Drawing all inferences in favor of the Plaintiff, it is plausible that class members who purchased generic XR in 2018 and beyond paid prices in excess of what they would have paid at that same time if not for the Defendants' alleged anticompetitive conduct.

Given the relevance of the generic-substitute purchasers, and the lengthy discovery window still available to Defendants to investigate their claims, Plaintiff's proposed amendment to the class definition is **GRANTED.**

### C.    New Hampshire Antitrust Claims

In the Second Amended Complaint, Plaintiff repeats the allegation in Count One that Forest and Merz "have intentionally and unlawfully maintained its monopoly power in the relevant market in violation of N.H. Rev. Stat. Ann. §§ 356, 356:2, 356:3, *et seq.* with respect to purchases of Namenda . . . in New Hampshire." (PSAC ¶ 212(m).) However, the New Hampshire Supreme Court has interpreted the state's antitrust laws consistent with the rule in

*Illinois Brick Co. v. Illinois*, 431 U.S. 720 (1977) to bar actions by indirect purchasers. *See Minuteman, LLC v. Microsoft Corp.*, 795 A.2d 833, 839 (2002); *see also In re Keurig Green Mt. Singleserve Coffee Antitrust Litig.*, 383 F. Supp. 3d 187, 263-64 (S.D.N.Y. 2019).

Plaintiff's motion for leave to submit a Second Amended Complaint containing a cause of action for monopolization under New Hampshire's antitrust statutes is **DENIED.**

## II.   PLAINTIFF'S LETTER MOTION TO FILE A SECOND FURTHER AMENDED COMPLAINT IS DENIED.

Plaintiff's attempt to amend its proposed amendments with extensive allegations that respond to the proposed motions for summary judgment is both procedurally and substantively improper.  Judge Lehrburger's orders required Plaintiff to (i) submit any and all proposed amendments to the Defendants by August 30; and (ii) submit their final proposed amended complaint to this Court by October 25.  The November 18 letter motion complies with neither requirement.  For that reason alone I deny it.

Furthermore, Judge Lehrburger warned Plaintiff not to amend their complaint to add facts beyond those necessary to state valid claims or fix technical issues.  Yet the proposed further amendments do just that:  Plaintiff seeks to add additional detail at the same time it recognizes to do so is unnecessary, because the Second Amended Class Action Complaint "contains sufficient allegation to put the defendants on notice of the claims." (Dkt. No. 300 at 2-3; *see* PSAC ¶¶ 74-88.)  It is obvious that all Plaintiff is trying to do is "poison the well;" it may present its evidence about allegations that already exist at a later date.

The letter motion for leave to file a "Second Further Amended Complaint" is DENIED.

### CONCLUSION

Plaintiff is thus directed to submit a final Second Amended Complaint reflecting the above rulings:

Amending Count One to state a claim for monopolization against Merz;

Omitting PSAC ¶¶ 200(a), (b);

Amending Count Two to include allegations related to the hard switch;

Omitting PSAC ¶ 212(m) consistent with New Hampshire law; and

Amending the class definition as set forth in PSAC ¶ 150.

This shall constitute the written opinion of the Court.  The clerk is directed to close Docket Numbers 290 and 300.

Dated: December 2, 2019

_____
Chief Judge

BY ECF TO ALL PARTIES