**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **IN RE NAMENDA INDIRECT PURCHASER ANTITRUST LITIGATION**<br><br>[SBF Action] | **C.A. No. 15-cv-6549-CM-RWL** |

**MEMORANDUM OF LAW IN SUPPORT OF**
**DEFENDANTS' MOTION SEEKING CLARIFICATION OF**
**THE COURT'S DECISION AND ORDER GRANTING IN PART DEFENDANTS'**
**_DAUBERT_ MOTION TO EXCLUDE THE TESTIMONY OF SUSAN MARCHETTI**

## TABLE OF CONTENTS

**Page**

BACKGROUND ........................................................................................................... 2

    A.    Dr. Vogt's Reliance On Ms. Marchetti And The Parties' Communications Leading To This Motion ............................................................................. 3

    B.    The *Daubert* Rulings................................................................................ 5

LEGAL STANDARD .................................................................................................... 7

ARGUMENT ................................................................................................................ 10

    I.    Clarification Is Warranted That The Court's February 2021 *Daubert* Ruling Does Not Mean Dr. Vogt Can Rely On Opinions That Were Later Excluded ................................................................................................. 10

    II.    Clarification Is Warranted That Dr. Vogt's November 2012 Entry-Date Opinions Are Also Excluded Because They Rely On The Excluded Opinions Of Ms. Marchetti ....................................................................... 12

CONCLUSION ............................................................................................................. 17

## <u>TABLE OF AUTHORITIES</u>

### CASES

**Page(s)**

*CCM Rochester v. Federated Inv'rs, Inc.*,
No. 14-CV-3600 (VEC), 2016 WL 11617452 (S.D.N.Y. Aug. 31, 2016) ..........................8, 16

*Fed. Hous. Fin. Agency v. Nomura Holding Am., Inc.*,
No. 11-CV-6201 (DLC), 2015 WL 539489 (S.D.N.Y. Feb. 10, 2015) ....................................8

*Foster v. USIC Locating Servs., LLC*,
No. 16-2174-CM, 2018 WL 3757577 (D. Kan. Aug. 8, 2018) ................................................9

*Gilbert v. King*,
No. 16-CV-06235-JCS, 2018 WL 1050161 (N.D. Cal. Feb. 26, 2018) ...................................9

*Hanson v. Colgate-Palmolive Co.*,
353 F. Supp. 3d 1273 (S.D. Ga. 2018)....................................................................................9

*In re LIBOR-Based Fin. Instruments Antitrust Litig.*,
299 F. Supp. 3d 430 (S.D.N.Y. 2018).............................................................................1, 8, 11

*Israel v. Spring Indus., Inc.*,
No. 98 CV 5106 (ENV)(RML), 2006 WL 3196956 (E.D.N.Y. Nov. 3, 2006) ..................9, 11

*Johnson v. Samsung Elecs. Am., Inc.*,
277 F.R.D. 161 (E.D. La. 2011)...........................................................................................8, 9

*Jung v. Neschis*,
No. 01 CIV. 6993 (RMB)(THK), 2007 WL 5256966 (S.D.N.Y. Oct. 23, 2007)...............9, 11

*L.I. Head Start Child Dev. Servs., Inc. v. Econ. Opportunity Comm'n of Nassau Cty., Inc.*,
956 F. Supp. 2d 402 (E.D.N.Y. 2013) ....................................................................................8

*N.A. Sales Co. v. Chapman Indus.*,
736 F.2d 854 (2d Cir. 1984)....................................................................................................8

*Owens v. Ford Motor Co.*,
297 F. Supp. 2d 1099 (S.D. Ind. 2003)....................................................................................9

*Rink v. Cheminova, Inc.*,
400 F.3d 1286 (11th Cir. 2005) ...............................................................................................9

*Shea v. Long Island R. Co.*,
No. 05 CIV. 9768 (LLS), 2009 WL 1424115 (S.D.N.Y. May 21, 2009).................................8

*Slupinski v. First Unum Life Ins. Co.*,
    No. 99 CV 0616 (TPG), 2006 WL 2266569 (S.D.N.Y. Aug. 7, 2006) ...................................7

*U.S. ex rel. Mikes v. Straus*,
    78 F. Supp. 2d 223 (S.D.N.Y. 1999).................................................................................10, 11

## STATUTES AND RULES

Fed. R. Civ. P. 26(a)(2).......................................................................................................16

Fed. R. Civ. P. 60................................................................................................................7

Fed. R. Evid. 702 ............................................................................................................8, 9

Trial preparation has made clear that the parties dispute the impact of the Court's June 2021 *Daubert* ruling on its earlier February 2021 *Daubert* ruling. In February 2021, the Court denied Defendants' *Daubert* motion seeking to exclude opinions of Plaintiff's damages expert Dr. William Vogt. In June 2021, however, the Court excluded the "fair value" opinion of Plaintiff's expert Ms. Susan Marchetti. Plaintiff argues that Dr. Vogt is free to offer all his opinions — ***even those that rely on Ms. Marchetti's now excluded opinion***.

Defendants disagree. An expert is "not entitled to rely on [another expert's] unreliable opinions for support." *In re LIBOR-Based Fin. Instruments Antitrust Litig.*, 299 F. Supp. 3d 430, 494 (S.D.N.Y. 2018). Because this Court deemed Ms. Marchetti's "fair value" opinion "to be unreliable" under *Daubert*, Dr. Vogt's opinions relying on that excluded opinion "are therefore insufficiently supported and are therefore inadmissible as well." *Id.* Specifically, Dr. Vogt opined that a November 2012 "generic entry date" might have resulted if "Forest and Mylan would have negotiated a settlement agreement which did not involve" the allegedly unfair "pay-for-delay" conduct. But his "but-for" entry date of November 2012 was derived from and relied upon Ms. Marchetti's excluded opinion. Dr. Vogt's reports offer no basis for that date absent her excluded testimony. It should, therefore, be excluded too.

Plaintiff has not disputed the well-known principle that excluded expert opinions result in exclusion of the opinions that rely on them. Plaintiff's theory is that, merely because all of the *Daubert* briefing had been **filed** before the Court's denied Defendant's motion on Dr. Vogt, "all of [Defendants'] arguments regarding Dr. Vogt were before the Court at the time of that denial" in February 2021. Ex.[1] 2 (May 19, 2022 Letter from M. Miller to J. Hurst) at 1. Plaintiff says,

---

[1] All exhibits cited in this brief are appended to the Declaration of Candice A. Andalia in Support of this Motion.

therefore, that even though the Court's exclusion of Ms. Marchetti's opinion did not happen until June 2021—**four months later**—that "subsequent ruling . . . did not affect Dr. Vogt's analysis or opinions." *Id*.  But just because all *Daubert* briefing had been **filed** before the Court issued its *Daubert* opinion on Dr. Vogt does not mean that the Court had already **decided** to exclude Ms. Marchetti's fair value opinion.  Plaintiff has pointed to no statement so sweeping in this Court's February 2021 opinion.  Nor has it identified anything suggesting that by February 2021, the Court had **already** decided to exclude Ms. Marchetti's testimony or that it intended to allow Dr. Vogt to rely on the excluded opinions of other experts.

Given the importance of this issue to preparation for and the scope of trial, Defendants seek clarification that Dr. Vogt may not rely on the excluded opinion of Ms. Marchetti and, therefore, may not offer an opinion about a November 2012 entry date.[2]

## BACKGROUND

In this case, Plaintiff argues Forest's "Amended Lexapro Agreement" contained a payment to Mylan to delay generic Namenda.  But for this payment, Plaintiff contends generic Namenda would have entered the market earlier:  either in June 2012 or November 2012.[3]  This motion relates to the November 2012 entry date, which comes from Plaintiff's damages expert, Dr. Vogt, and is the result of his reliance on an opinion by Ms. Marchetti that this Court excluded in its June 2021 *Daubert* opinion.

---

[2] Likewise, no other expert, including Professor Thomas McGuire, can rely on Ms. Marchetti's excluded opinions.

[3] Plaintiff represented to the Court that it does "not intend to argue for alternative entry dates other than June 2012 and November 2012."  Dkt. 807 (Memorandum of Law in Opposition to the Defendants' Motion *in Limine* No. 3 to Preclude Testimony Regarding Purportedly Undisclosed Damage Opinions) at 4.

### A. Dr. Vogt's Reliance On Ms. Marchetti And The Parties' Communications Leading To This Motion

In her expert report, Ms. Marchetti, a former pharmaceutical executive, opined that the Lexapro Amendment gave Mylan "$30.9 million in excess of fair value" for its services under that agreement. Dkt. 553-5 (Susan Marchetti's Expert Report) at ¶ 31; *see also id*. at ¶¶ 49, 119, 121. Plaintiff's counsel communicated Ms. Marchetti's opinion of "an overpayment to Mylan of $30.9 million," Dkt. 553-9 (Dr. William Vogt's Expert Report) at ¶ 119, to Dr. Vogt, who expressly states: "I rely on this opinion, though I modify her calculations slightly." *Id*. at ¶ 18.

To determine what "generic entry date[s]" might have resulted if "Forest and Mylan would have negotiated a settlement agreement which did not involve" the allegedly unfairly large payment through the Lexapro Amendment, Dr. Vogt plugged Ms. Marchetti's $30.9 million unfair-value opinion (the alleged "overpayment"), slightly adjusted for time, into a "bargaining model." *Id*. at ¶¶ 98, 119; *see also id.* at ¶¶ 22.d, 102. By inputting this excluded opinion into his bargaining model, Dr. Vogt determined that in the "actual world," "Forest achieved 97.5% of the gains from the agreement" and Mylan achieved "2.5%." *Id*. at ¶ 122 & n.74. He then selected a "generic entry date which most closely approximates the [97.5% to 2.5% share of profits] achieved in the actual world." *Id.* at ¶ 126. That date is November 2012. *Id*.

But in June 2021, the Court excluded Ms. Marchetti's opinion that "the 'Amended Lexapro Agreement did not represent 'fair value' to Forest'" under *Daubert* because Ms. Marchetti's assessment of the gains and benefits of the Lexapro Amendment "is not based on the proper standard for measuring benefits to a reverse payor when applying *Actavis*." Dkt. 689 (Decision and Order Granting in Part and Denying in Part Plaintiff's and Defendants' *Daubert* Motions ("June 11 *Daubert* Ruling")) at 21, 23. The Court should preclude Dr. Vogt from offering his November 2012 entry-date opinion, which was derivative of Ms. Marchetti's excluded opinion

and finds no basis anywhere in Dr. Vogt's reports other than in her excluded testimony.

Shortly after the Court issued an order on May 10, 2022 scheduling trial to begin October 19, 2022 (Dkt. 860), lead trial counsel for Defendants asked Plaintiff's counsel to confirm they would not be introducing at trial Dr. Vogt's November 2012 opinion, given the Court's *Daubert* ruling excluding the underlying basis for that opinion.  *See* Ex. 1 (May 16, 2022 Letter from J. Hurst to M. Miller).  In their letter, Defendants quoted several passages from Dr. Vogt's report establishing his reliance on Ms. Marchetti's excluded opinion for his November 2012 entry date opinion.  *Id.* at 2.  Defendants also noted that the February 2021 *Daubert* Ruling denying their motion to exclude Dr. Vogt came months before the June 2021 order excluding Ms. Marchetti's opinion.  *Id*.

Plaintiff responded on May 19, 2022, stating, "We intend to present . . . Dr. Vogt's opinions regarding a November 2012 but-for generic entry date."  Ex. 2 (May 19, 2022 Letter from M. Miller to J. Hurst) at 1.  Plaintiff did not dispute that expert opinions relying on excluded opinions should also be excluded.  Plaintiff argued instead that because the Court denied Defendants' motion to exclude Dr. Vogt's opinions in February 2021, and because Defendants' motion to exclude Ms. Marchetti was on file at the time, "the Court's . . . ruling partially limiting the admissibility of Ms. Marchetti's opinions did not affect Dr. Vogt's analysis or opinions."  *Id.* at 1.  Plaintiff further argued that "Dr. Vogt relied only on the portions of Ms. Marchetti's opinions which were found admissible, such as the value of what Forest received in return for its payments to Mylan.  Dr. Vogt did not rely upon any statement by Ms. Marchetti that the Lexapro Amendment was not for 'fair value' under *FTC v. Actavis*."  *Id*. at 2.  Plaintiff also faulted Defendants for not filing a motion *in limine* on this topic and argued that Defendants' Motion *in Limine* No. 3 "concedes that Dr. Vogt will be allowed to testify about a November 2012 entry date."  *Id*.

In their June 3, 2022 reply, Defendants addressed each of Plaintiff's arguments, stating that "just because *Daubert* briefing was **filed** by February 11, 2021 does not mean that 'all of [Forest's] arguments' in that briefing had already been **decided**." Ex. 3 (June 3, 2022 Response from J. Hurst to M. Miller) at 1 (emphasis in original).  Additionally, Defendants noted that Plaintiff "offer[s] no support" for its views that Dr. Vogt relied only on the portions of Ms. Marchetti's opinions which were found admissible—not even "a single citation to Dr. Vogt's report"—or any response to any of "the many quotes and citations to Dr. Vogt's report in [Defendants'] May 19 letter establishing" the opposite. *Id.* at 2.

Plaintiff's letter also "includes no quote or cite for [the] alleged 'concession'" in Defendants' Motion *in Limine* No. 3 that "Dr. Vogt will be allowed to testify about a November 2012 entry date." *Id.*  Defendants "plainly made no blanket concession that Dr. Vogt's November 2012 opinion could be admitted at trial or that we would not object to it." *Id.*  Rather, "MIL No. 3" merely seeks to exclude **undisclosed** opinions and simply acknowledges that the "November 2012 entry date" was "disclosed." *Id.* at 2–3.  But "[t]o the extent [Plaintiff] came away with a different impression, this letter corrects it." *Id.* at 3.  Defendants also quoted case law for the settled proposition that there is no requirement that Forest had to file a motion *in limine*. *Id.*  Finally, Defendants proposed that the parties jointly ask the Court to resolve the issue in advance of trial to allow both sides to prepare appropriately.  As of today, Plaintiff has not responded to Defendants' June 3 letter.

### B.  The *Daubert* Rulings

On July 20, 2020, Plaintiff moved to certify a class of third-party payors that reimbursed insureds for Namenda and its generic equivalents in several states between June 1, 2012, and December 31, 2017.  *See* Dkt. 444.

On November 23, 2020, Defendants filed motions to exclude opinions offered by Ms. Susan Marchetti (Dkt. 548) and Dr. William Vogt (Dkt. 550).  With respect to Ms. Marchetti, Defendants argued that her opinions regarding the value of the Lexapro Amendment were unreliable in part because her methodology relied on a definition of "fair value" that was legally deficient.  *See* Dkt. 548 at 5–10.  Ms. Marchetti's estimate of the compensation Forest provided to Mylan excluded the value Forest expected to receive from the Lexapro Amendment, including from Medicaid Best Price savings.  *Id*. at 6–7.  This approach conflicts with *Actavis* and this Court's prior rulings require the jury to consider evidence of *all* of the value Forest expected from the Lexapro Amendment at the time the agreement was executed.  *See id*. at 6, 10 (citing Marchetti Rep. at ¶¶ 111, 113).  Thus, Defendants argued that Ms. Marchetti's opinion that "Mylan received approximately $30.9 million in excess of fair value" should be excluded.  *Id*. at 2–10.

With respect to Dr. Vogt, Plaintiff's damages expert, Defendants argued that his opinions pertaining to his bargaining model and the November 2012 entry date were unreliable in part because they relied on the impermissible opinion from Ms. Marchetti.  *See* Dkt. 550 at 1, 4, 6–7.

On February 11, 2021, the Court issued a "Decision and Order Granting In Part And Denying In Part Plaintiff's Motion For Class Certification."  *See* Dkt. 656 (hereinafter "February 2021 *Daubert* Ruling").  In the February 2021 *Daubert* Ruling, the Court stated that "[p]resently before the Court is Plaintiff's motion for certification."  *Id*. at 1.  But "since SBA also offers Dr. Vogt's report to support certification," the Court said it would consider Defendants' "*Daubert* motion to exclude the opinions of SBA's expert Dr. William Vogt."  *Id*. at 11.  The Court denied Defendants' *Daubert* motion to exclude Dr. Vogt and ruled that Dr. Vogt may testify about his "bargaining model" to support his but-for November 2012 entry date.  *Id.* at 17–19.  The Court explained that "Defendants will be able to cross-examine Vogt about his conclusions and

assumptions when he testifies, and the jury will be free to accept or reject his estimates of the but-for date of entry." *Id.* at 18–19.  Because the February 2021 *Daubert* Ruling issued **before** the Court excluded Ms. Marchetti's "fair value" opinion, the opinion made no mention of Ms. Marchetti's opinions or of Defendants' motion to exclude Ms. Marchetti.

The Court issued its Decision and Order on Defendants' motion to exclude Ms. Marchetti's opinions **four months later** — on June 11, 2021.  *See* Dkt. 689 (*Daubert* Ruling).  In relevant part, the Court precluded Ms. Marchetti from opining on "fair value," because Ms. Marchetti's opinion is legally deficient.  *Id*. at 21, 23.  According to the Court, "[t]he core flaw" of Ms. Marchetti's "fair value" calculation is that she has "essentially given no opinion about some of Forest's other stated sources of 'benefit.' (i.e., Medicaid Savings)."  *Id.* at 23.  But under the applicable law, Ms. Marchetti "cannot simply dismiss [the benefits to Forest] out of hand."  *Id.*

The Court further concluded that "Marchetti's opinion on what is essentially the ultimate issue in the case—that the Amended Lexapro Agreement did not represent 'fair value' to Forest since effectively all of the gains from the agreement benefitted Mylan—not Forest—is unlikely to be of assistance to the trier of fact, because that is not based on the proper standard for measuring benefits to a reverse payor when applying *Actavis*."  *Id.* (internal quotations omitted).  "Marchetti's opinion that the Lexapro Amendment was not 'fair value' thus cannot be accepted into evidence."  *Id*.

## LEGAL STANDARD

Defendants believe that this motion for clarification under Rule 60 is the most appropriate vehicle for resolving the parties' dispute about the impact of the Court's June 2021 *Daubert* Ruling on its earlier February 2021 *Daubert* Ruling.  Rule 60 empowers federal courts to clarify orders "to ensure that the record reflects the actual intentions of the court."  *Slupinski v. First Unum Life*

*Ins. Co.*, No. 99 CV 0616 (TPG), 2006 WL 2266569, at *2 (S.D.N.Y. Aug. 7, 2006) (citing *Emp'rs Mut. Cas. Co. v. Key Pharms.*, 886 F. Supp. 360, 363 (S.D.N.Y. 1995)).  Clarification of prior orders "add[s] certainty to an implicated party's efforts to comply with the order and provide fair warning as to what future conduct may be found contemptuous."  *N.A. Sales Co. v. Chapman Indus.*, 736 F.2d 854, 858 (2d Cir. 1984).  There is no time limitation on when a party can make the request to clarify a prior order.  *L.I. Head Start Child Dev. Servs., Inc. v. Econ. Opportunity Comm'n of Nassau Cty., Inc.*, 956 F. Supp. 2d 402, 408 (E.D.N.Y. 2013) (citing *Truskoski v. ESPN, Inc.*, 60 F.3d 74, 77 (2d Cir. 1995)).

"An expert may rely on the ***reliable*** opinion of another expert in forming his own opinion." *Johnson v. Samsung Elecs. Am., Inc.*, 277 F.R.D. 161, 166 (E.D. La. 2011) (emphasis added); *see also Shea v. Long Island R. Co.*, No. 05 CIV. 9768 (LLS), 2009 WL 1424115, at *6 (S.D.N.Y. May 21, 2009) ("Since Dr. Vickers's opinions based on the MMPI–2 are sufficiently reliable, Dr. Head could properly rely on them as support for his own opinions."); Fed. R. Evid. 702 advisory committee's note to 2000 amendment ("The term 'data' is intended to encompass the reliable opinions of other experts.").

However, an expert is "not entitled to rely on [another expert's] unreliable opinions for support." *In re LIBOR-Based Fin. Instruments Antitrust Litig.*, 299 F. Supp. 3d at 494 (holding that "[b]ecause we determine [the underlying] opinions to be unreliable" under *Daubert*, the opinions of the damages expert relying on the excluded opinions "are therefore insufficiently supported and are therefore inadmissible as well"); *see also CCM Rochester v. Federated Inv'rs, Inc.*, No. 14-CV-3600 (VEC), 2016 WL 11617452, at *7 (S.D.N.Y. Aug. 31, 2016) (excluding as unreliable one expert's asset allocation opinion and the opinions of damages expert which relied on the excluded asset allocation opinion); *Fed. Hous. Fin. Agency v. Nomura Holding Am., Inc.*,

No. 11-CV-6201 (DLC), 2015 WL 539489, at *11 (S.D.N.Y. Feb. 10, 2015) ("In light of the conclusion that Vandell's testimony must be excluded under Rule 702 and *Daubert*, any testimony of Riddiough's that relies on any of Vandell's analysis must also be excluded."); *Jung v. Neschis*, No. 01 CIV. 6993 (RMB)(THK), 2007 WL 5256966, at *16 (S.D.N.Y. Oct. 23, 2007), *report and recommendation adopted* (Sept. 21, 2007) (precluding experts from relying on the the conclusions of another expert which were excluded for being "incurably in doubt"); *Rink v. Cheminova, Inc.*, 400 F.3d 1286, 1294 (11th Cir. 2005) (affirming exclusion of experts who "relied on [another expert]'s findings, which we have found to be unreliable"); *Hanson v. Colgate-Palmolive Co.*, 353 F. Supp. 3d 1273, 1277 (S.D. Ga. 2018) ("EXCLUD[ING]" the "opinions of Plaintiff's experts . . . because of their reliance on [a] now excluded opinion"); *Foster v. USIC Locating Servs., LLC*, No. 16-2174-CM, 2018 WL 3757577, at *3 (D. Kan. Aug. 8, 2018) (holding that one expert's "opinion cannot be reliable because the basis of his opinion was reached by relying on an unreliable opinion"); *Gilbert v. King*, No. 16-CV-06235-JCS, 2018 WL 1050161, at *4 (N.D. Cal. Feb. 26, 2018) (granting a motion to exclude an expert in part because they "relie[d] heavily on [another expert's] (unreliable) opinion"); *Johnson*, 277 F.R.D. at 166 (holding that if "an expert relies on expert opinions . . . which the Court may later exclude after reviewing the pending motions . . . as to their testimony," that expert testimony "relying on any stricken opinions will be excluded"); *Israel v. Spring Indus., Inc.*, No. 98 CV 5106 (ENV)(RML), 2006 WL 3196956, at *13 (E.D.N.Y. Nov. 3, 2006), *aff'd sub nom. Israel v. Springs Indus., Inc.*, No. 1:98 CV 05106 (ENV)(RML), 2007 WL 9724896 (E.D.N.Y. July 30, 2007) (excluding portions of damages expert's opinion that were "based entirely" on another expert's excluded opinion); *Owens v. Ford Motor Co.*, 297 F. Supp. 2d 1099, 1108 (S.D. Ind. 2003) (explaining that "[a]lthough a testifying expert may rely on another expert's opinion, the testifying expert's opinion should be rejected if

9

the underlying basis is unreliable" and holding one expert's opinion inadmissible to the extent it relied on another inadmissible expert opinion).

## ARGUMENT

### I.  Clarification Is Warranted That The Court's February 2021 *Daubert* Ruling Does Not Mean Dr. Vogt Can Rely On Opinions That Were Later Excluded

Plaintiff asserts that because Defendants' motions to exclude Ms. Marchetti and Dr. Vogt were briefed at the same time and the motion to exclude Dr. Vogt's opinions was denied, the Court's later exclusion of Ms. Marchetti's opinions has no impact on the admissibility of any of Dr. Vogt's opinions.  But the latter does not follow from the former.  Briefing filed does not mean briefing decided.  The Court's order said nothing at all about Defendants' motion to exclude Ms. Marchetti's opinions.  Rather, the Court's only order addressing the unreliability of her opinion issued four months later.

Instead, the opinions show that the Court first decided Defendants' motion to exclude Dr. Vogt in the context of Plaintiff's motion for class certification because Dr. Vogt authored a report detailing his opinions on the level of damages pertaining to each of SBA's antitrust theories.  The Court denied the motion on the grounds that experts like Dr. Vogt routinely use Nash economic bargaining models to derive their opinions in antitrust cases.  Dkt. 656 at 18.  At no point in the February 2021 *Daubert* Ruling did the Court address Defendants' arguments that Ms. Marchetti's valuation of the Lexapro Amendment should be excluded, much less offer an advisory opinion on what would happen if it excluded those underlying opinions.

Only four months later did the Court issue its decision excluding Ms. Marchetti's "fair value" opinions.  When the Court did later address Defendants' arguments, the Court agreed that the methodology underlying Ms. Marchetti's opinion that Forest's payment to Mylan conferred

"$30.9 million in excess of fair value" was contrary to the applicable legal standard.  *See* Dkt. 689 at 23.  Specifically, the Court found that Ms. Marchetti's valuation was "unlikely to be of assistance to the trier of fact, because [it] is not based on the proper standard for measuring benefits to a reverse payor when applying *Actavis*."  *Id.*  Accordingly, the Court determined that her opinion "cannot be accepted into evidence" and precluded Ms. Marchetti from presenting her valuation to the jury.  *Id.*

It is obvious that if the opinion of one expert "cannot be accepted into evidence" under *Daubert*, another expert cannot rely on that opinion.  Expert witnesses are simply "not entitled to rely on [another expert's] unreliable opinions for support."  *In re LIBOR-Based Fin. Instruments Antitrust Litig.*, 299 F. Supp. 3d at 494.  Instead, expert opinions which rely on the precluded opinions of other experts are themselves excluded.  *Id.* (holding that "[b]ecause we determine [the underlying] opinions to be unreliable," under *Daubert*, the opinions of the damages expert relying on the excluded opinions "are therefore insufficiently supported and are therefore inadmissible as well"); *Jung*, 2007 WL 5256966, at *16 (precluding experts from relying on the the conclusions of another expert which were excluded for being "incurably in doubt"); *Israel*, 2006 WL 3196956, at *13 (excluding portions of damages expert's opinion that were "based entirely" on another expert's excluded opinion); *see also supra* at 8–10.

Nothing in either of the Court's *Daubert* rulings is contrary to this principle.  Nor did Plaintiff disagree with this principle when confronted with it, despite the opportunity to do so.  Nevertheless, Plaintiff continues to insist on a reading of those rulings, based merely on its flawed reasoning about the time briefs were filed, that would permit Dr. Vogt to offer opinions at trial even if they rely on opinions that were subsequently excluded.  Accordingly, to provide certainty for the parties' efforts to comply with the Court's *Daubert* rulings, the Court should clarify that its

*Daubert* rulings do not permit Dr. Vogt to offer opinions at trial that rely on opinions that were subsequently excluded.

## II. Clarification Is Warranted That Dr. Vogt's November 2012 Entry-Date Opinions Are Also Excluded Because They Rely On The Excluded Opinions Of Ms. Marchetti

Plaintiff also asserts that "Dr. Vogt relied only on the portions of Ms. Marchetti's opinions which were found admissible, such as the value of what Forest received in return for its payments to Mylan" and that "Dr. Vogt did not rely upon any statement by Ms. Marchetti that the Lexapro Amendment was not for 'fair value' under *FTC v. Actavis*." Ex. 2 (May 19, 2022 Letter from M. Miller to J. Hurst) at 2. But Plaintiff provided no support for these assertions, not even after Defendants pointed out their lack of support, and those assertions cannot be squared with what Dr. Vogt actually said in his report. Ms. Marchetti's report consistently says that the $30.9 million Dr. Vogt relies on for his November 2012 entry date was "entirely unjustified" and "does not represent the 'fair value' of the manufacturing services Mylan was retained to perform." Dkt. 553-5 (Marchetti Rep.) ¶ 119.

As the Court ruled in June 2021, the reality is that Ms. Marchetti cannot testify as to whether the Lexapro Amendment offered "fair value" or that "Mylan received approximately $30.9 million in excess of fair value," *id*. at ¶ 31, because the methodology underlying these opinions is "not based on the proper standard for measuring benefits to a reverse payor when applying *Actavis*." Dkt. 689 at 23. While Dr. Vogt's "but-for" entry date of June 2012 did not rely on these excluded opinions, his November 2012 entry date did and, thus, should be excluded from trial too.

Dr. Vogt's reliance on Ms. Marchetti's excluded opinion that Mylan received "$30.9 million" above "fair value" for his November 2012 entry-date calculation is evident from the

express language of his report.  In terms of reliance, he writes, "I understand, from counsel, that Ms. Marchetti, an expert in this case, has opined on the ***size of the reverse payment*** from Forest to Mylan embodied in the patent litigation settlement agreement and the Lexapro licensing agreement.  ***I rely on this opinion***, though I modify her calculations slightly."  *Id.* at ¶ 18.  He further states that "Mylan and Forest entered into an amendment to their Lexapro licensing agreement in which, ***according to Ms. Marchetti, Mylan was given excess consideration***."  *Id.* at ¶ 118.  He also makes clear that Ms. Marchetti's valuation that Mylan received "$30.9 million in excess of fair value" forms the basis of an input in his bargaining model:

> ***I understand from counsel that Ms. Marchetti found that the Lexapro agreement between Forest and Mylan involved an overpayment to Mylan of $30.9 million dollars***.  In addition, the patent litigation settlement agreement between Mylan and Forest involved a payment of $2 million from Forest to Mylan.  I further understand that, in ***her calculations***, Ms[.] Marchetti did not discount Mylan's savings on royalty payments in the Lexapro agreement amendment which savings were to happen approximately two years after its conclusion . . . After discounting these figures at Mylan's discount rate of 11%, ***her $30.9 million*** falls to $28.8 million.  Adding the $2 million payment from the settlement agreement ***yields $30.8 million, the figure used in my bargaining model***.

Dkt. 553-9 at ¶ 119 (emphasis added).  According to Dr. Vogt, "the generic entry date chosen by the bargaining model is the date at which the gain-split between Forest and Mylan" in the no-pay-for-delay-settlement-but-for world "is closest to the gain-split between Forest and Mylan in the actual world."  *Id*. at ¶ 126.

Table 1 of Dr. Vogt's report also shows the inputs into his bargaining model, and the only inputs corresponding to the allegedly unfair payment list "Marchetti" as their sole "Source":

| Table 1: Bargaining Model Parameters | | |
|---|---|---|
| Parameter Name | Value | Source |
| Mylan | | |
| Discount Rate | 11% | Mylan 2011 Form 10-K |
| Market Growth Rate | 8.7% | Planning Spreadsheet |
| Gross Margin | 25% to 0% | Planning Spreadsheet |
| Avoided Litigation Costs | $2.7MM | Dr Davitz |
| Settlement Payment | -$30.8MM | Ms Marchetti |
| Forest | | |
| Discount Rate | 10% | Planning Documents |
| Market Growth Rate | 6.1% | Planning Spreadsheet |
| Gross Margin | 58% | Planning Spreadsheet |
| Avoided Litigation Costs | $3.0MM | Dr Davitz |
| Settlement Payment | $30.8MM | Ms Marchetti |

*Id.* at Table 1 (emphases added).

Dr. Vogt's reliance on Ms. Marchetti's opinion can be seen not only from these excerpts of Dr. Vogt's report, but also from the Excel file "NamendaBargainingModel.xls" that goes with it. Below are annotated screen shots of that model showing that the "$30.8MM" figure Dr. Vogt derived from Ms. Marchetti's "overpayment" opinion was input and then used to calculate the "actual world" 97.5%-to-2.5%-share-of-profits figures upon which his November 2012 entry date expressly relies:



(Dr. Vogt using Ms. Marchetti-derived $30.8MM to calculate values in cells E14 and E15)

14

(Dr. Vogt using Ms. Marchetti-derived values in cells E14 and E15 to calculate 2.47% and 97.53% values in cells E18 and E19)

Thus, by plugging this excluded opinion into his bargaining model, he determined that in the "actual world," "Forest achieved 97.5% of the gains from the agreement" and Mylan achieved "2.5%." Dkt. 553-9 at ¶ 122 & n.74. Dr. Vogt then selected the but-for "generic entry date which most closely approximates the [97.5% to 2.5% share of profits] achieved in the actual world." That date is November 2012. *Id*. at ¶ 126. Dr. Vogt says that he views November 2012 "as the best estimate of the entry date in the absence of a pay-for-delay payment." *Id.* at ¶ 22.d; *see also id.* at ¶ 102.

Dr. Vogt's deposition testimony also confirms multiple times over that his November 2012 opinion depends on Ms. Marchetti's $30.9 million "excess" figure. At deposition, Dr. Vogt testified, "***I relied on Ms. Marchetti to analyze the excess compensation*** from Forest to Mylan and then ***I used that number in my analysis***." Dkt. 553-23 (Oct. 8, 2020 Vogt Dep.) at 266:18-20 (emphases added); *see also id*. at 256:15–24 ("***I relied on Ms. Marchetti for*** . . . the Lexapro [A]mendment part of the ***size of the reverse payment***.") (emphases added); *id.* at 252:2–12 ("I relied on her for the figure and for the calculations. I haven't independently evaluated whether or

not her calculation is done in exactly the way I would have done it.").

For Plaintiff to say now that Ms. Marchetti's excluded fair value opinion didn't matter to Dr. Vogt's November 2012 opinion or that it did not matter whether any of the $30.9 million figure he used to construct his "but-for world" was for "fair value" would rewrite the opinions he actually disclosed.   Plaintiff would be deleting those limiting words "excess compensation" and "overpayment" each time they were written when describing Dr. Vogt's understanding of the opinion by Ms. Marchetti that he expressly "relied upon."   Those would be new, previously undisclosed opinions that contravene Rule 26(a)(2)'s clear requirement that expert reports contain the experts' "complete" opinions and bases.  Fed. R. Civ. P. 26(a)(2).  And Plaintiff would again run afoul of *Actavis*.  In this case, Dr. Vogt should not be calculating damages for anything but the allegedly extra "unfair" value—the alleged payment-for-delay.  The Court also has said multiple times now that "any value Forest obtained from the Lexapro Amendment, whatever its source, must be factored into an *Actavis* analysis."  Dkt. 689 at 23 (citing *In re Namenda Direct Purchaser Antitrust Litig.*, No. 15-cv-7488 (CM), 2019 WL 6242128, at *10 (S.D.N.Y. Aug. 2, 2019) (McMahon, J.)).

*CCM Rochester, Inc.*, 2016 WL 11617452, is on point.  In that case, the defendant moved to exclude opinions offered by two plaintiff's experts:  (1) a "flawed" net cash flow valuation by one expert, and (2) an opinion by the damages expert, which relied on the "flawed" valuation "as a predicate and input" for the damages model.  *Id.* at *3, 7.  The court excluded the net cash flow valuation as unreliable.  The plaintiff sought to supplement the opinion of the damages expert to allow him an "alternative (i.e., non-expert) evidentiary basis for a net cash flow input for his model."  *Id.* at *7 (internal citations omitted).  The court denied the plaintiff's request and also granted the defendant's motion to exclude the opinion of the damages expert because it relied on

16

now-precluded testimony.  Specifically, the court found that the "[p]laintiff could have provided an alternative basis for [the damages expert's] opinion but did not.  Plaintiff should bear the risk of having relied solely on [the net cash flow valuation] as an input for [the damages expert's] model, and their opinions rise and fall together . . . [The damages expert's] opinions are excluded to the extent that they rely on [the] now excluded asset allocation opinion."  *Id*.

Here, Dr. Vogt's November 2012 entry-date opinion relies on Ms. Marchetti's excluded fair-value opinion.  Therefore, it too must be excluded.  Even if "Plaintiff could have provided an alternative basis for [Dr. Vogt's November 2012 entry date] opinions . . . Plaintiff should bear the risk of having relied solely on [Ms. Marchetti's overpayment] opinion as an input for [Dr. Vogt's] model, and their opinions rise and fall together."  *See id*.  Accordingly, Defendants respectfully request that the Court also clarify that Dr. Vogt may not rely on Ms. Marchetti's excluded opinion, and thus cannot testify regarding the November 2012 entry-date output of his bargaining model.

## CONCLUSION

For the reasons above, Defendants respectfully request that the Court grant their motion for clarification.

Date:  June 30, 2022
New York, New York

/s/ James F. Hurst
James Francis Hurst
Amanda Hollis
**KIRKLAND & ELLIS LLP**
300 North LaSalle
Chicago, IL 606054
Tel: (312) 862-2000
james.hurst@kirkland.com
amanda.hollis@kirkland.com

Olivia Adendorff
**KIRKLAND & ELLIS LLP**
1601 Elm Street
Dallas, Texas 75201
Tel: (214) 972-1759
olivia.adendorff@kirkland.com

Candice A. Andalia
**KIRKLAND & ELLIS LLP**
1301 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
Tel: (202) 879-5000
candice.andalia@kirkland.com

***Counsel for Defendants Forest
Laboratories, LLC, Actavis plc***

*/s/ Martin M. Toto*
Martin M. Toto
John H. Chung
Kristen O'Shaughnessy
William H. Bave, III
Kevin C. Adam
**WHITE & CASE LLP**
1221 Ave of the Americas
New York, NY 10020
Tel: (212) 819-8200
mtoto@whitecase.com
jchung@whitecase.com
kristen.oshaughnessy@whitecase.com
william.bave@whitecase.com
kevin.adam@whitecase.com

***Counsel for Defendants Forest Laboratories,
LLC, Actavis plc, Merz GmbH & Co KGaA,
Merz Pharmaceuticals GmbH, and Merz
Pharma GmbH & Co. KGaA***

*/s/ John Roberti*
M. Elaine Johnston
**ALLEN & OVERY LLP**
1221 Avenue of the Americas
New York, NY 10020
Tel: (212) 610-6300
elaine.johnston@allenovery.com

John Roberti
**ALLEN & OVERY LLP**
1101 New York Avenue, NW
Washington, DC 20005
Tel: (202) 683-3862
john.roberti@allenovery.com

18

*Counsel for Defendants Merz GmbH & Co*
*KGaA, Merz Pharmaceuticals GmbH, and*
*Merz Pharma GmbH & Co. KGaA*