UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **IN RE NAMENDA INDIRECT PURCHASER ANTITRUST LITIGATION** | **C.A. No. 15-cv-6549-CM-RWL** |

**END-PAYOR PLAINTIFF CLASS'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION SEEKING CLARIFICATION OF THE COURT'S DECISION AND ORDER GRANTING IN PART DEFENDANTS'** *DAUBERT* **MOTION TO EXCLUDE THE TESTIMONY OF SUSAN MARCHETTI**

**TABLE OF CONTENTS**

INTRODUCTION ..................................................................................................................................1

BACKGROUND ..................................................................................................................................2

    A.    This Court rejected Defendants' motion to exclude Dr. Vogt's opinions and held them admissible at trial. ...............................................................................................2

    B.    Defendants again make the same arguments to exclude Dr. Vogt's opinions that the Court already rejected. ...........................................................................................4

ARGUMENT .......................................................................................................................................6

    A.    Rule 60 does not provide a basis for Defendants' motion. ............................................6

    B.    Dr. Vogt did not rely on the opinion this Court excluded in its ruling on the Marchetti *Daubert*, and thus his testimony on the November 2012 but-for entry date remains admissible. ...........................................................................................9

CONCLUSION ....................................................................................................................................10

## TABLE OF AUTHORITIES

**Cases**                                                                                                                                        **Page(s)**

*Blume v. Port Auth. Trans-Hudson Corp.*,
  No. 18-cv-12251 (CM), 2020 WL 3472254 (S.D.N.Y. Jun. 25, 2020) .................................. 2, 8

*Consumer Fin. Prot. Bureau v. Sprint Corp.*,
  320 F.R.D. 358 (S.D.N.Y. 2017) ........................................................................................... 7

*Dudley ex rel. Est. of Patton v. Penn-Am. Ins. Co.*,
  313 F.3d 662 (2d Cir. 2002)................................................................................................... 7

*Ferring B.V. v. Serenity Pharms.*,
  No. 17 Civ. 9922 (CM), 2019 WL 7283272 (S.D.N.Y. Dec. 27, 2019).................................. 6

*FTC v. Actavis*,
  570 U.S. 136 (2013)............................................................................................................ 1, 6

*In re Namenda Indirect Purchaser Antitrust Litig.*,
  338 F.R.D. 527 (S.D.N.Y. 2021) ............................................................................. 2, 3, 4, 10

*In re Namenda Indirect Purchaser Antitrust Litig.*,
  No. 1:15-cv-6549 (CM) (RWL), 2021 WL 2403727 (S.D.N.Y. June 11, 2021)............... 4, 5, 9

*L.I. Head Start Child Dev. Servs., Inc. v. Econ. Opportunity Comm'n of Nassau Cnty.*, Inc.,
  956 F. Supp. 2d 402 (E.D.N.Y. 2013) .................................................................................... 7

*McCluskey v. Roberts*,
  No. 20-4018, 2022 WL 2046079 (2d Cir. June 7, 2022) ........................................................ 7

*Restivo v. Hessemann*,
  846 F.3d 547 (2d Cir. 2017)................................................................................................... 9

*Schonberger v. Serchuk*,
  742 F. Supp. 108 (S.D.N.Y. 1990)......................................................................................... 8

*Space Hunters, Inc. v. United States*,
  No. 10 Civ. 6335 (CM), 2011 WL 1899627 (S.D.N.Y. May 17, 2011) ................................. 6

*Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*,
  956 F.2d 1245 (2d Cir. 1992)............................................................................................. 2, 8

**Rules**

Fed. R. Civ. P. 59............................................................................................................................ 7

Fed. R. Civ. P. 60....................................................................................................... 1, 2, 6, 7, 8

## INTRODUCTION

Defendants' motion for "clarification" is pretextual. This Court's denial of Defendants' earlier *Daubert* motion—which likewise sought to exclude Dr. Vogt's damages calculations based on his reliance on Ms. Marchetti's calculation of the size of Forest's reverse payment to Mylan—was clear. There is no reasonable basis for further clarification. This Court completely denied Defendants' *Daubert* motion against Dr. Vogt. While the Court ruled that Ms. Marchetti could not opine on the ultimate conclusion of whether the Lexapro Amendment was for "fair value," the Court also detailed why the bulk of Ms. Marchetti's opinion would be very helpful to the jury and is admissible. Dr. Vogt does not rely on Ms. Marchetti's conclusion on fair value. Rather, he relies on her opinions which this Court has already found admissible and helpful to the jury.

Defendants' motion seeks late and improper reconsideration of the Court's year-old Marchetti and Vogt *Daubert* rulings, and is premised on factual and legal errors. Defendants misstate Dr. Vogt's opinion as relying on Ms. Marchetti's excluded conclusion that the Lexapro Amendment was not for "fair value." Mem. of Law in Supp. of Defs.' Motion Seeking Clarification of the Ct.'s Decision and Order Granting in Part Defs.' *Daubert* Mot. to Exclude the Test. of Susan Marchetti (ECF No. 864, "Mem.") at 3 (citing July 6, 2020 Expert Rep. of William B. Vogt, Ph.D. ("Vogt Rep.") ¶ 18 at 4). Dr. Vogt states that he relies on Ms. Marchetti's opinion "on the *size* of the reverse payment from Forest to Mylan" and that he "modif[ies] her calculations slightly" to account for the time value of money. Decl. of A. Kapoor, Ex. 1, (Vogt Rep., "Ex. 1") ¶ 18 at 4 (emphasis added); *id.* ¶ 119 at 32-33. Defendants elide the distinction between Ms. Marchetti's calculation of the size of the reverse payment—which the Court has held to be admissible—and her excluded opinion that the reverse payment was not for "fair value" under *FTC v. Actavis*, 570 U.S. 136 (2013).

1

Defendants also incorrectly invoke Federal Rule of Civil Procedure 60, which provides no basis for their claimed clarification or for any other relief they seek. Rule 60(a) addresses clerical errors or oversights, and Rules 60(b) and (d) address relief from final judgments or grounds for independent collateral actions, neither of which is at issue here. Instead, Defendants' motion expresses a belated desire for the Court to reconsider its allowance of Dr. Vogt's damages calculations and the Court's rejection in February 2021 of the same argument they make in this motion. Rule 60 is not meant to provide a way for parties to relitigate matters already decided.

Even treating the motion as one for reconsideration, it is still improper because Defendants do not point to "'an intervening change in controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice.'" *Blume v. Port Auth. Trans-Hudson Corp.*, No. 18-cv-12251 (CM), 2020 WL 3472254, at *1 (S.D.N.Y. Jun. 25, 2020) (quoting *Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992)). The Court excluded Ms. Marchetti's ultimate conclusion on fair value 13 months ago in June 2021, and the parties fully briefed motions in limine over 8 months ago in October 2021. Indeed, after losing their original *Daubert* motion against Dr. Vogt's opinions, Defendants filed three pending motions in limine seeking exclusion of Dr. Vogt's opinions on *Daubert*-type grounds, notably failing to raise the strawman argument they do now. Defendants' delay in bringing this motion begs its credulity.

## BACKGROUND

### A.  This Court rejected Defendants' motion to exclude Dr. Vogt's opinions and held them admissible at trial.

First, "Dr. Vogt estimates that, but-for the reverse payments, generic Namenda IR would have entered the market in November 2012, more than two and a half years before the July 2015 date of actual generic launch." *In re Namenda Indirect Purchaser Antitrust Litig.*, 338 F.R.D. 527,

544 (S.D.N.Y. 2021). Second, Dr. Vogt estimates the damages suffered by the class from having to pay for higher-priced branded Namenda IR during those 2.5 years of delayed competition. *Id.*

        1.        To determine the but-for entry date, Dr. Vogt determines what entry date Forest and Mylan would have bargained for without a reverse payment. Using the well-accepted Nash bargaining model, Dr. Vogt "used the actual terms of the parties' settlement to estimate each party's relative bargaining strength" in terms of what share each of Forest and Mylan received of the expected joint profit gains from the settlement. *See id.* "He then factored this estimate of relative bargaining strength, along with other factors – such as the companies' profit projections given different dates of generic entry – to predict the but-for date of generic entry." *Id.* The November 2012 date is that date which would give each party the same profit share as with the actual settlement, but in a scenario without the reverse payment. "He also considered the strength of Mylan's claim that any generic it created would either not infringe Forest's patent, or that Forest's patent was invalid." *Id.* at 544-45. Dr. Vogt's model "'is capable of producing estimates of damages for any but-for entry date after January, 2011 up to July, 2015.'" *Id.* at 545 (quoting Vogt Rep. ¶ 97).

        2.        To calculate the class's damages, Dr. Vogt:

> "compar[es] the price paid by Class members during the period of alleged misconduct with the prices for that same product in another period where the price was not impacted by the alleged misconduct." (*Id.* at ¶ 65). This type of "benchmark" methodology is commonly used to calculate damages, and in this case, "the period after the actual entry of generic memantine can be used as a reliable benchmark period." (*Ibid.*) For example, Vogt observed that the price of generic Namenda "fell rapidly" after entering the market at a price of $7.79 per day of therapy ("DOT"), so that, one year after entry, the average price of a Namenda generic was $5.56 per DOT, and $5.40 per DOT two years after entry. He then used these price movements to calculate the but-for price of memantine had generics entered the market in November 2012, when Namenda IR prices were around $8.91 per DOT. Ultimately, he used the difference in the actual and but-for prices to calculate the level of overcharges attributable to the delayed entry.

*Id.*

3

On February 2, 2021, this Court rejected in its entirety Defendants' motion to exclude Dr. Vogt's opinions and held them to be admissible, finding him to be a qualified expert economist and his methodology "sufficiently reliable" as it is based on "a widely recognized economic bargaining model." *Id.*

### B. Defendants again make the same arguments to exclude Dr. Vogt's opinions that the Court already rejected.

The arguments Defendants raise in this motion for "clarification" mirror the arguments raised in their Vogt *Daubert*, which this Court already considered and rejected. *See* 338 F.R.D. at 544-47. In that motion, Defendants attacked Dr. Vogt's reliance on Ms. Marchetti's opinion about the "size of the reverse payment from Forest to Mylan" as an input in his bargaining model for determining a generic-entry date of November 2012 in the absence of a reverse payment. Mem. of Law in Supp. of Defs.' Mot. to Exclude Ops. and Test. of Dr. William V. Vogt (ECF No. 552, "Vogt *Daubert* Mem.") at 6, 13; *see also id.* ("Dr. Vogt assumes that the 'size of the reverse payment from Forest to Mylan' pursuant to the patent settlement and Lexapro Amendment was $30.8 million."); *id.* at 6-7 (characterizing Ms. Marchetti's $30.8 figure as an "assumption" and "input" in Dr. Vogt's model); *id.* (arguing Dr. Vogt did not conduct "independent expert inquiry into the reasonableness of [his] inputs and assumptions").

The Court expressly stated that Defendants' claim that Dr. Vogt "misapplied certain assumptions to make his determination of the but-for date of generic entry" was "a classic example of what this Court calls, 'That expert's testimony hurts our case, so let's try to disqualify the expert' use of *Daubert*." 338 F.R.D. at 545-46. Defendants' proper recourse is to cross-examine Dr. Vogt at trial. *Id.*

Four months later, this Court excluded Ms. Marchetti's conclusion that "the 'Amended Lexapro Agreement did not represent fair value to Forest.'" *In re Namenda Indirect Purchaser*

4

*Antitrust Litig.*, No. 1:15-cv-6549 (CM) (RWL), 2021 WL 2403727, at *12 (S.D.N.Y. June 11, 2021). However, in all other respects, the Court denied Defendants' Marchetti *Daubert*. Rejecting Defendants' claim that Ms. Marchetti's opinions should be stricken because she had "no formal training or experience in business valuation," the Court stated that Ms. Marchetti was eminently qualified to opine on the size of Forest's reverse payment to Mylan and on what Forest received in return:

> She is being asked her views on the value of what Forest got for conferring over $30 million in benefits on Mylan. Although she cannot opine that the value was "fair" or not, she can provide her assessment of the value of what Forest received in return. After 35 years in the pharmaceutical industry, including stints as the Chief Operation Officer at one pharmaceutical company and managing the product life cycle and product launches at others, ***Marchetti's extensive practical experience qualifies her to opine on the value of what Forest was getting in exchange for what it paid*** – including the amount that it saved in manufacturing costs. It is simply the ultimate conclusion that I will not allow, because Marchetti's ultimate conclusion is predicated on a misreading of *Actavis*.

*Id.* at *13 (emphasis added). The Court recognized that Ms. Marchetti's testimony rebutting Forest's "assertions of value" was admissible because it would "help the jury decide whether Forest's claimed benefits are legitimately worth what Forest contends they are worth." *Id*.

On October 29, 2021—four months after the Marchetti *Daubert* was decided—Defendants filed three *Daubert*-esque motions in limine seeking to limit Dr. Vogt's opinions, including one arguing that the Plaintiff Class should not be allowed to proffer alternative damages estimates based on dates other than June 2012 and November 2012. Defs.' Mot. in Lim. #3 to Preclude Test. Regarding Undisclosed Damages Ops. (ECF No. 712). In that motion, Defendants also did not seek "clarification" of the Court's Marchetti *Daubert* ruling as applied to Dr. Vogt's damages analysis.

On May 16, 2022—13 months after the Court issued its ruling on the Marchetti *Daubert*—Defendants sent Plaintiff a letter asking it to confirm "that the IPPs will not be introducing at trial

Dr. Vogt's opinion that generic Namenda would have entered the market in the 'but-for' world in November 2012." Defs.' Ltr. (ECF No. 865-1) at 1.  Plaintiff responded that "Dr. Vogt relied only on the portions of Ms. Marchetti's opinion which were found admissible, such as the value of what Forest received in return for its payments to Mylan," and did not rely on any opinion that the Lexapro Amendment was for "fair value" under *FTC v. Actavis*, 570 U.S. 176 (2013).  Pl.'s Ltr. (ECF No. 865-2) at 2.

In response to Defendants' argument in correspondence that the later-issued opinion on the Marchetti *Daubert* somehow implicitly overruled the earlier-issued opinion regarding the Vogt *Daubert* motion, Plaintiff and the Class noted that the Vogt and Marchetti *Daubert* motions were filed at the same time, and that the Vogt *Daubert* motion raised the same argument that Marchetti's opinion should be excluded *in toto* and that Vogt's opinion should be excluded as a result.  Because the Court had these arguments before it when it denied the Vogt *Daubert* relying on those arguments, and because granting the *Daubert* as to Marchetti's "fair value" conclusion while upholding the admissibility of Marchetti's analysis of the deal in other respects did not affect how Vogt relied on Marchetti, Plaintiff stated that there was no basis to infer the Court had made a mistake by failing to retract its earlier ruling upholding Dr. Vogt's opinion.

Unable to convince Plaintiff to relitigate a motion that has already been decided, Defendants filed this present motion ostensibly seeking "clarity" under Federal Rule of Civil Procedure 60, but in reality improperly seeking reconsideration of a settled issue.

## ARGUMENT

### A. Rule 60 does not provide a basis for Defendants' motion.

Rule 60 is entirely inapposite to Defendants' request.  While Section (b) provides grounds for reconsideration of a court's ruling, it only applies to final judgments and orders.  *Ferring B.V. v. Serenity Pharms.*, No. 17 Civ. 9922 (CM), 2019 WL 7283272, at *4 (S.D.N.Y. Dec. 27, 2019)

6

(McMahon, J.). Similarly, Section (d) applies to independent collateral actions and not to *Daubert* rulings. *Space Hunters, Inc. v. United States*, No. 10 Civ. 6335 (CM), 2011 WL 1899627, at *3 (S.D.N.Y. May 17, 2011) (McMahon, J.) (internal quotation marks omitted) (recognizing that Rule 60(d) applies to independent actions that aim to prevent "a grave miscarriage of justice").[1]

Section (a), under which Defendants presumably move but do not specify, is "directed to errors or omissions in the essentially ministerial act of transcribing the court's rendered judgment into writing." *Dudley ex rel. Est. of Patton v. Penn-Am. Ins. Co.*, 313 F.3d 662, 671 (2d Cir. 2002) (Sotomayor, J., concurring). In other words, "a correction under Rule 60(a) cannot alter the substantive rights of the parties, but rather may only correct the record to reflect the adjudication that was actually made." *Consumer Fin. Prot. Bureau v. Sprint Corp.*, 320 F.R.D. 358, 363 (S.D.N.Y. 2017) (quoting *Dudley*, 313 F.3d at 675). Rule 60(a) is "not meant to provide a way for parties to relitigate matters already decided." *L.I. Head Start Child Dev. Servs., Inc. v. Econ. Opportunity Comm'n of Nassau Cnty.*, Inc., 956 F. Supp. 2d 402, 409 (E.D.N.Y. 2013) (internal quotation marks omitted); *Emamian v. Rockefeller Univ.*, 1:07-cv-03919 (PGG) (SDA), 2022 WL 2056275, at *8 (S.D.N.Y. Feb. 9, 2022).

Defendants' motion does not seek corrections of clerical errors, oversights, or omissions. Instead, under the guise of seeking "clarification," Defendants ask this Court to exclude expert testimony already ruled admissible over the same objections raised in Defendants' Vogt *Daubert*. Specifically, Defendants claim that Dr. Vogt should be precluded from testifying about his November 2012 but-for entry date because he relied on Ms. Marchetti's "unreliable" opinion on

---

[1] Federal Rule of Civil Procedure 59(e) similarly governs motions to alter or amend a judgment. But such motions must be filed within 28 days of the entry of the judgment being challenged, and when untimely, "this Court will generally treat it as a motion for reconsideration under Rule 60(b)." *McCluskey v. Roberts*, No. 20-4018, 2022 WL 2046079, at *1 (2d Cir. June 7, 2022) (discussing Rule 59(e) and Rule 60(b) motions in the context of tolling the time to appeal a judgment).

7

the value transferred from Forest to Mylan to generate that date. Mem. at 11-12. Defendants made this precise argument in their Vogt *Daubert*, which also referenced their contemporaneous Marchetti *Daubert* to support their position. Vogt *Daubert* Mem. at 1, 6-8. The Court rejected Defendants' attempts to exclude Dr. Vogt's testimony, characterizing Defendants' position as "a classic example of what this Court calls, 'That expert's testimony hurts our case, so let's try to disqualify the expert' use of *Daubert*.'" 338 F.R.D. at 546. The Court made clear that cross-examination was the appropriate means for testing Dr. Vogt's assumptions.

Rule 60 thus affords no relief to Defendants and this motion should be promptly denied on procedural grounds. Even treating Defendants' motion as one for reconsideration under Local Civil Rule 6.3, it should be denied because Defendants do not point to "'an intervening change in controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice.'" *Blume v. Port Auth. Trans-Hudson Corp.*, No. 18-cv-12251 (CM), 2020 WL 3472254, at *1 (S.D.N.Y. Jun. 25, 2020) (quoting *Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992)). "'The provision for reargument is not designed to allow wasteful repetition of arguments already briefed, considered and decided.'" *Id.* (quoting *Schonberger v. Serchuk*, 742 F. Supp. 108, 119 (S.D.N.Y. 1990)).

Defendants were required to bring a Local Civil Rule 6.3 motion for reconsideration 14 days after the relevant order. Yet despite the Court having excluded Ms. Marchetti's ultimate conclusion on fair value in June 2021, Defendants did not bring this motion for 13 months. Defendants were right the first time not to do so. The motion is meritless.

> **B.  Dr. Vogt did not rely on the opinion this Court excluded in its ruling on the Marchetti *Daubert*, and thus his testimony on the November 2012 but-for entry date remains admissible.**

In addition to its procedural defects, Defendants' motion for "clarification" fails on the merits. When the Court ruled that Ms. Marchetti could not opine on the ultimate conclusion of whether the Lexapro Amendment represented "fair value," the Court also ruled that all of Ms. Marchetti's other opinions were admissible and would assist the jury. The Court did not preclude Ms. Marchetti from testifying about the size of the reverse payment. To the contrary, the Court was explicit that Ms. Marchetti's "extensive practical experience qualifies her to opine on the value of what Forest was getting in exchange for what it paid." 2021 WL 2403727, at *13. As the Court stated, "[Ms. Marchetti] is being asked her views on the value of what Forest got for conferring over $30 million in benefits on Mylan. Although she cannot opine that the value was "fair" or not, she can provide her assessment of the value of what Forest received in return." *Id.*

The Court explicitly allowed Ms. Marchetti to testify that Forest paid Mylan $32.5 million for services that cost at most $1.2-2 million through the Lexapro Amendment. The Court also made clear that Ms. Marchetti is permitted to "take[] issue with Forest's assertions of value received as a result of the Lexapro Amendment." *Id.* All that Ms. Marchetti is precluded from telling the jury is whether Forest's $30.9 million excess payment to Mylan through the Lexapro Amendment was for "fair value," not the fact of the payment itself.

Dr. Vogt never relied on Ms. Marchetti's opinion whether the Lexapro Amendment was for "fair value" under *Actavis*. Instead, he relied on her testimony regarding the "size of the reverse payment from Forest to Mylan" as an input to his bargaining model for determining a November 2012 generic entry date. *See* Ex. 1 (Vogt. Rep) ¶ 18 at 4; *see also id.* at 29, Table 1: Bargaining Model Parameters (including a "Settlement Payment" input derived from Ms. Marchetti).

9

Defendants acknowledged that in their Vogt *Daubert*. *See, e.g.*, Vogt *Daubert* Mem. at 6 ("Dr. Vogt assumes that the 'size of the reverse payment from Forest to Mylan' pursuant to the patent settlement and Lexapro Amendment was $30.8 million" through his reliance on Ms. Marchetti).

Contentions that Dr. Vogt's assumptions are "unfounded go to the weight, not the admissibility of [his] testimony." *Restivo v. Hessemann*, 846 F.3d 547, 577 (2d Cir. 2017). Defendants may "cross-examine Vogt about his conclusions and assumptions when he testifies." *In re Namenda Indirect Purchaser Antitrust Litig.*, 338 F.R.D. at 546. In their contentions filed with the Joint Pretrial Order on October 1, 2021—after the Court's ruling on the Marchetti *Daubert*—Defendants stated they would do precisely that. Ex. IV.B to Proposed Joint Pretrial Order: Defs.' Contentions (ECF No. 700-1) at 30, 46. Similarly, Ms. Marchetti will be free to tell the jury that Forest paid Mylan over $30 million through the Lexapro Amendment, that Mylan's newly assumed manufacturing responsibilities under that Amendment cost between $1.2 million and $2 million, and that Forest's purported justifications for this "large" reverse payment should not be trusted. Ultimately, the jury will be free to accept or reject this testimony as they decide the ultimate issue in this case.

## CONCLUSION

For the foregoing reasons, Defendants' belated attempts to relitigate their grievance with the Court's Vogt *Daubert* decision should be denied.

Dated: July 14, 2022                                  Respectfully submitted,

By: /s/ Marvin A. Miller

| | |
|---|---|
| Ankur Kapoor | Marvin A. Miller |
| Lloyd Constantine | Lori A. Fanning |
| Ethan E. Litwin | **MILLER LAW LLC** |
| Hamsa Mahendranathan | 145 South Wells Street, 18th Floor |
| Margaux Poueymirou | Chicago, IL 60606 |
| **CONSTANTINE CANNON LLP** | Tel: (312) 332-3400 |
| 335 Madison Avenue, 9th Floor | mmiller@millerlawllc.com |
| New York, NY 10017 | lfanning@millerlawllc.com |

10

| | |
|---|---|
| Tel: (212) 350-2700 | Peter Safirstein |
| lconstantine@constantinecannon.com | **SAFIRSTEIN LAW LLC** |
| akapoor@constantinecannon.com | 45 N. Broad Street, Suite 100 |
| elitwin@constantinecannon.com | Ridgewood, NJ 07450 |
| hmahendranathan@constantinecannon.com | Tel: (917) 952-9458 |
| mpoueymirou@constantinecannon.com | psafirstein@safirsteinlaw.com |
| | |
| *Counsel for the Plaintiff Class* | *Co-Lead Counsel for the Plaintiff Class* |