**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **IN RE NAMENDA INDIRECT PURCHASER ANTITRUST LITIGATION** | **Case No. 1:15-cv-06549-CM-RWL** |

**INDIRECT PURCHASER CLASS PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF PROPOSED SETTLEMENT, APPROVAL OF THE FORM AND MANNER OF NOTICE TO THE CLASS, AND PROPOSED SCHEDULE FOR A FAIRNESS HEARING**

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

I.     INTRODUCTION ............................................................................................. 1

II.    BACKGROUND .............................................................................................. 4

    A.    Plaintiff's Claims and Procedural Background ..................................... 4

    B.    Settlement Negotiations and the Proposed Settlement ........................... 6

III.    THE PROPOSED SETTLEMENT MEETS THE STANDARD FOR
PRELIMINARY APPROVAL ....................................................................... 8

    A.    The Proposed Settlement Was the Result of Serious and Informed
Negotiations by Experienced Counsel ................................................. 9

    B.    Negotiations Were at Arm's-Length and Continued Until the Eve of
Trial ................................................................................................... 9

    C.    Class Counsel Are Highly Experienced in Antitrust Litigation Alleging
Delayed Generic Drug Competition…………………………………………10

    D.    The Proposed Settlement Is Within the Range of Possible Approval .................. 10

    E.    The Plan of Distribution Is Fair, Reasonable, and Adequate ............................... 12

    F.    The Proposed Form and Manner of Notice Are Appropriate ............................... 13

        1.    Form of Notice ........................................................................ 13

        2.    Manner of Notice .................................................................... 15

        3.    An Additional Opt-Out Period Is Unnecessary ......................... 15

    G.    A.B. Data, Ltd. Is an Appropriate Settlement Administrator ............................... 16

    H.    Valley National Bank Is an Appropriate Escrow Agent ..................................... 17

    I.    The Proposed Schedule Is Fair and Should Be Approved..................................... 17

IV.    CONCLUSION ............................................................................................. 17

# TABLE OF AUTHORITIES

Cases

*Bourlas v. Davis Law Assocs.*,
  237 F.R.D. 345 (E.D.N.Y. 2006) ............................................................................ 11

*Denney v. Deutsche Bank AG*,
  443 F.3d 253 (2d Cir. 2006) ................................................................................ .16

*Detroit v. Grinnell Corp.*,
  495 F.2d 448 (2d Cir. 1974) ................................................................ ………11

*Elkind v. Revlon Consumer Prods. Corp.*,
  CV 14-2482 (JS)(AKT), 2017 WL 9480894 (E.D.N.Y. Mar. 9, 2017)………………………………………8

*Goldberger v. Integrated Resources, Inc.*, 209 F.3d 43 (2d Cir. 2000)………………………………...11

*Hart v. RCI Hosp. Holdings*,
  No. 09 Civ. 3043(PAE), 2015 WL 5577713 (S.D.N.Y. Sep. 22, 2015)……………………12-13

*In re Global Crossing Sec. and ERISA Litig.*,
  225 F.R.D. 436 (S.D.N.Y. 2004) .......................................................................... .15

*In re Initial Pub. Offering Sec. Litig.*,
  243 F.R.D. 79 (S.D.N.Y. 2007) ........................................................................... 9

*In re Namenda Direct Purchaser Antitrust Litig.*,
  462 F.Supp.3d 307 (S.D.N.Y. 2020)………………………………………………………..11

*In re Penthouse Exec.Club Comp. Litig.*,
  Master File No. 10 Civ. 1145(KMV), 2013 WL 1828598 (S.D.N.Y. Apr. 30, 2013)…………..9

*In re Platinum & Palladium Commodities Litig., No. 10-cv-3617*,
  No. 10-cv-3617, 2014 WL 3500655 (S.D.N.Y. July 15, 2014) (S.D.N.Y. July 15, 2014)……8, 9

*In re Restasis (Cyclosporine Ophthalmic Emulsion) Antitrust Litigation*,
  527 F. Supp.3d 269 (E.D.N.Y. 2021) …………………………….………………..……………16-17

*In re Take Two Interactive Sec. Litig.*,
  Nos. 06 Civ. 803(RJS), 06 Civ. 987(RJS), 06 Civ. 1131(RJS), 06 Civ. 1733(RJS),
  2010 WL 11613684 (S.D.N.Y. June 29, 2010)………………………………………………………15

*In re Telik, Inc. Sec. Litig.*,
  576 F. Supp. 2d 570 (S.D.N.Y. 2008) ................................................................. 8, 9

*In re Traffic Exec. Ass'n E.R.Rs.,*
    627 F.2d 631 (2d Cir. 1980) ............................................................................8

*In re Union Carbide Corp. Consumer Prods. Bus. Sec. Litig.*,
    718 F. Supp. 1099 (S.D.N.Y. 1989) ................................................................9

*Maley v. Del Glob. Techs. Corp.*,
    186 F. Supp. 2d 358 (S.D.N.Y. 2002) ...........................................................13

*Seijas v. Republic of Argentina,*
    No. 04-CV-1085 (TPG), 2017 WL 1511352 (S.D.N.Y. Apr. 27, 2017) ...................16

*Sergeants Benevolent Ass'n Health & Welfare Fund v. Actavis, PLC,*
    No. 15-cv-6549 (CM), 2016 WL 4992690 (S.D.N.Y. Sep. 13, 2016) .........................5

*Tiro v. Public House Invs., LLC,*
    No. 11 CIV. 7679 CM, 2013 WL 2254551 (S.D.N.Y. May 22, 2013).....................,8, 11, 14

*Torres v. Gristede's Operating Corp., No. 04-CV-3316 (PAC)*,
    No. 04-CV-3316 (PAC), 2010 WL 2572937 (S.D.N.Y. June 1, 2010) ...................11

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*,
    396 F.3d 96 (2d Cir. 2005)............................................................... 9, 11, 16


Rules

Fed. R. Civ. P. 23(c)(2)(B).............................................................................13

Rule 23(e)(4) ........................................................................................ 13, 15


Dockets

*In re Aggrenox Antitrust Litig.*, No. 14-md-2516-SRU (D. Conn.)……………………………....10

*In re Flonase Antitrust Litig.,* No. 08-cv-3301-AB (E.D. Pa.)……………………………………10

*In re Lidoderm Antitrust Litig.*, No.3:14-md-02521-WHO (N.D. Cal.)……………………….....13, 14, 15

*In re Loestrin 24 Fe Antitrust Litig.*, No. 13-md-2472-WES-PAS (D.R.I.)………………13, 15, 10

*In re Relafen Antitrust Litig.*, Master File No. 01-12222-WGY (D. Mass.)………………...........10

Sergeants Benevolent Association Health & Welfare Fund ("Plaintiff"), has reached an agreement with Allergan Sales, LLC, as successor-in-interest to Forest Laboratories, LLC ("Forest"), and Allergan Limited, as successor-in-interest to Actavis plc (collectively, "Actavis"), and Merz GmbH & Co KGaA, Merz Pharmaceuticals GmbH, and Merz Pharma GmbH & Co. KGaA ("Merz") (collectively, "Brand Defendants"), to settle this litigation (the "Brand Defendants Settlement Agreement").[1] Plaintiff submits this Memorandum of Law in Support of its Motion for Preliminary Approval of Proposed Settlement, Approval of the Form and Manner of Notice to the Class, and Proposed Schedule for a Fairness Hearing.

## I.    INTRODUCTION

The additional $54,400,000 proposed by this settlement, if approved, would resolve the state-law claims asserted based on the Defendants' alleged abuse of the generic pharmaceutical approval process under the Hatch Waxman Act. Plaintiff's claims were made under numerous states' antitrust acts, consumer protection acts, and other common law claims resulting from Defendants' alleged pay-for-delay to prevent competition for Namenda.[2]

Plaintiff achieved this result in this unusually complex pharmaceutical antitrust case after years of hard-fought litigation, and on the eve of trial. Trial in this matter would have required a jury

---

[1]    The Settlement Agreement between Plaintiff and the Brand Defendants is referred to herein as the "Brand Defendants Settlement Agreement."

[2]    Earlier, the group of generic defendants, Dr. Reddy's Laboratories, Ltd, and Dr. Reddy's Laboratories, Inc. (together, "Dr. Reddy's"), Barr Pharmaceuticals, Inc., Teva Pharmaceutical Industries, Ltd., Teva Pharmaceuticals USA, Inc., and Cobalt Laboratories, Inc., (together, "Teva"), Upsher-Smith Laboratories, Inc., Amneal Pharmaceuticals, LLC, and Sun Pharmaceutical Industries, Ltd. (together, "Upsher-Smith/Amneal/Sun"), Wockhardt Limited and Wockhardt USA LLC (together, "Wockhardt"), collectively, "Generic Defendants", settled for $2,038,000. The Court preliminarily approved those settlements and allowed for the deferral of final approval notice. However, those settlements were included in the class certification notice of pendency which provided the opportunity for the Third-Party Payors ("TPPs") to request exclusion. That notice was explicit and clear that "HOWEVER, AS A THIRD-PARTY PAYOR MEMBER OF THE CERTIFIED TPP CLASS, THIS WILL BE THE ONLY OPPORTUNITY YOU WILL HAVE TO EXCLUDE YOURSELF FROM THE TPP CLASS." The date for TPPs to request exclusion expired May 28, 2021. Therefore, no additional right for TPPs to opt-out is required.

to distill and resolve a thicket of conflicting facts in dense legal frameworks at the intersection of antitrust law, Hatch-Waxman drug approval laws and regulations, drug manufacturing concepts, contract interpretation, patent law, and principles of economics.  The jury would have had to navigate through competing and highly sophisticated expert testimony addressing each substantive topic. For example, the jury would have had to consider fact evidence and expert testimony to determine what likely would have occurred in the absence of the challenged reverse payment settlement, whether the generic competitor Mylan would have won its patent challenge and if so, when, or, alternatively whether rational pharmaceutical companies in the position of Forest and Mylan would still have settled the patent litigation, but without a large and unjustified reverse payment and with an earlier generic entry date. The trial risk was significant for both sides; and if Plaintiff won at trial, Plaintiff would have faced substantial risk on appeal.  Plaintiff was prepared to go to trial but after careful consideration concluded that the proposed all-cash settlement for $54.4 million is in the best interests of the Class and easily satisfies the requirements that it be fair, reasonable, and adequate.

The facts asserted herein constitute Plaintiff's understanding and analysis of the facts developed during discovery. The parties entered into the Settlement Agreement ("Exhibit 1 to the Declaration of Marvin A. Miller ("Miller Decl.") within days of trial and jury selection, and after facing two sets of motions to dismiss by both sets of defendants, Actavis and Merz, and the Generic Defendants, extensive fact and expert discovery, including taking and defending numerous fact depositions, and nearly twenty expert depositions, analyzing an extensive number of fact and expert depositions from the related Direct Purchaser Plaintiffs ("DPP") Action and the New York Attorney General Action because those records were ruled part of the evidence in this Indirect Purchaser, a.k.a., End-Payor Plaintiff ("EPP") Action, discovery motion practice, class certification briefing, numerous *Daubert* motions challenging several of Plaintiff's experts, numerous *Daubert* motions challenging Defendants' experts, offensive and defensive motions for summary judgment, motions for

decertification, briefing on twenty-nine motions *in limine*, submission of a Pre-Trial Order, which included the preparation of exhibit lists, deposition designations, and related objections, and the completion of preparation for a trial had the parties not reached an agreement in principle to settle. Additional details are specified in the accompanying Miller Declaration. The Settlement also occurred after several protracted mediations and, again, after Plaintiff settled its claims with the Generic Defendants. A nationally recognized mediator conducted a multi-party mediation which concluded with certain Generic Defendants agreeing to settle. Those settlements, coupled with follow-on settlements with the remaining Generic Defendants, resulted in an aggregate settlement amount of $2,038,000. Another mediation process was conducted much closer to trial in March 2022. After the March 2022 mediation with Actavis and Merz was not successful, the parties began intense preparation for trial. Counsel for both sides thus had full appreciation for the risks of trial and entered into the Settlement after carefully considering those risks. Late-stage negotiations were aided by another mediator who worked closely with the parties from late August until October 4, 2022. Those negotiations were intense and without time limits. Indeed, there was an open line of communication on weekdays, weekends, and evenings. As a result of those numerous mediation sessions and communications, Plaintiff and Actavis and Merz achieved an all-cash $54.4 million settlement, thereby creating Settlement Fund, which, when added to the Generic Defendants settlements all-cash benefits to the Class aggregates to $56,438,000.

The Settlement avoids an uncertain bifurcated, two-phase trial outcome on liability and damages, the certainty of lengthy appeals, and assures the availability of a cash settlement fund against which for all Class Members may claim.

Accordingly, Plaintiff respectfully requests that the Court enter a proposed order (in the form of Exhibit A to the Settlement Agreement) which provides for the following:

1.      Preliminary approval of the proposed Settlement Agreement and the documents

necessary to effectuate the Settlement, including a proposed form of notice to the Class, including Third-Party Payor and Consumer claim forms (in the forms of Exhibits 2-4 to the Declaration of Marvin A. Miller) and a proposed plan of distribution of the Settlement Fund as described in the proposed plan of allocation (in the form of Exhibit B to the Settlement Agreement);

2.     Appointment of A.B. Data, Ltd. ("ABD") as the Notice and Claims Administrator;

3.     Appointment of Valley National Bank as escrow agent for the Settlement Funds; and

4.     A proposed settlement schedule, including the scheduling of a Fairness Hearing during which the Court will consider: (a) Plaintiffs' request for final approval of the Settlement and entry of a proposed order and final judgment (Exhibit C to the Settlement Agreement); (b) Class Counsel's application for an award of attorneys' fees and reimbursement of expenses, payment of notice and notice administrative costs, and incentive award to the named class plaintiff; and (c) Plaintiff's request for dismissal of this action against Defendants with prejudice, at the appropriate time.

## II.     BACKGROUND

### A.     Plaintiff's Claims and Procedural Background

Plaintiff alleged that Defendants engaged in inequitable conduct and violated the state antitrust and consumer protection and deceptive trade practices laws and of thirty jurisdictions by participating in an unlawful scheme to delay and impede the market entry of less expensive, generic versions of Namenda IR. Plaintiff alleges that the Defendants entered into unlawful non-competition agreements, or horizontal market allocation agreements, with prospective generic competitors, whereby Defendants agreed to pay the generic competitors in exchange for the generic competitors agreeing to delay selling a generic version of Namenda IR. The lawsuit also includes allegations directed toward a so-called "hard-switch product hop" to compel purchasers to switch to Defendants' extended-release version of Namenda (Namenda XR), before less expensive generic versions of Namenda IR became available; however, the Court did not certify the "hard switch" claim for class action treatment. Plaintiff alleges that it and the TPP Class were injured by being overcharged (paying more for Namenda than they otherwise would have) because of Defendants' conduct and having overpaid in the states for their purchases of Namenda IR, Namenda XR, and generic Namenda IR.

4

Defendants deny all these allegations, including that any TPP Class member is entitled to damages or other relief. Defendants also deny that their conduct violated any applicable law or regulation. On December 22, 2015, Defendants moved to dismiss the DPPs' and EPP's complaints, and after extensive briefing, the Court denied the Defendants' motions to dismiss and reserved ruling on the EPP's state law claims. *Sergeants Benevolent Ass'n Health & Welfare Fund v. Actavis, PLC*, No. 15-cv-6549 (CM), 2016 WL 4992690 (S.D.N.Y. Sep. 13, 2016). On the same date, the Court stayed this case while the DPP case proceeded. After approximately two years, the Court lifted the stay of the EPP's case on September 10, 2018 but limited the EPP's discovery to issues that were not already addressed in the NY Attorney General's and DPPs' actions. The Court also directed the Plaintiff to get up to speed on the record that evolved in the DPPs' case and participate with DPPs in a mediation to be conducted in early 2019. That allowed only an extraordinarily brief time for Plaintiff to conduct non-duplicative discovery and defend against a large volume of Defendants' discovery, while formulating a settlement negotiating strategy.

On December 26, 2018, after additional briefing, Defendants' remaining motions to dismiss the EPP's amended complaint were largely denied. *See* S*ergeants Benevolent Ass'n Health & Welfare Fund v. Actavis, PLC*, No. 15-CV-6549 (CM), 2018 WL 7197233 (S.D.N.Y. Dec. 26, 2018). On October 28, 2019, the parties to the DPP action advised the Court that they had reached an agreement in principle to settle DPPs' claims against Actavis and Merz. Since the core liability issues in this case and the DPP case were similar, to be effective and cost efficient, Plaintiff sought to retain the experts who provided opinions in the DPP case. DPPs opposed those efforts, and this Court ordered the EPP to retain its own experts. Consequently, the EPP Class independently retained seven new experts, who each submitted at least two reports containing their opinions on a very short schedule. The Defendants deposed all of Plaintiff's experts at least once, and two experts twice, and Plaintiff's damages expert was deposed three times. EPP ultimately developed a strong evidentiary record

5

sufficient to win its motion for class certification on its pay-for-delay claims, but not on the hard switch claims. *See In re Namenda Indirect Purchaser Antitrust Litig.*, 338 F.R.D. 527 (S.D.N.Y. 2021).

Subsequently, on June 11, 2021, the Court substantially denied the parties' cross motions for summary judgment and *Daubert* motions and directed the parties to prepare for a jury trial in the first quarter of 2022. *See Namenda Indirect Purchaser Antitrust Litig.*, 15-cv-6549, 2021 WL 2403727 (S.D.N.Y. June 11, 2021). Numerous motions *in limine* were filed by both sides. Those motions were decided on August 15, 2022. Actavis and Merz filed motions for clarification and to decertify the class and then engaged in a strategy to re-litigate certain *Daubert* challenges against Plaintiff's experts. On an accelerated schedule, the Court ordered presentation of new expert reports, permitted additional expert discovery, and set the matter for hearing. The matter remained *sub judice* when the settlement was reached.

###   B.   Settlement Negotiations and the Proposed Settlement

The parties attempted to reach global resolution of this case on numerous occasions *via* direct communications and through two separate mediations. Neither those direct communications nor the formal mediations with experienced nationally recognized mediators were successful in achieving resolution. Initially, although the Court contemplated that Plaintiff and the DPPs would mediate together, DPPs refused to do so. Plaintiff proceeded alone. Before mediation, Plaintiff and the Brand Defendants and Generic Defendants submitted comprehensive mediation briefs to the mediator outlining the competing strengths and weaknesses of their respective cases. Throughout these negotiations, Class Counsel brought their extensive experience litigating similar delayed generic entry cases to the task of evaluating the proposed settlement against the case's merits. They did so with an eye on relevant decisions issued by other courts in similar reverse- payment cases brought by end-payors and on the opinions issued by this Court during this litigation. Further arm's-length

mediation with some of the Defendants continued for several weeks after the initial formal session both in person and by numerous telephonic discussions.

Despite good faith efforts to resolve their differences, Plaintiff and defendants were unable to reach a global agreement, but the parties did not abandon their efforts. The mediation process with several Generic Defendants continued throughout the next several months, negotiating both directly and often through the mediator, to seek compromise and reach resolution, but those efforts too failed. Ultimately, the Plaintiff achieved settlements with all Generic Defendants and their respective settlement agreements were granted preliminary approval by this Court.

Meanwhile, the litigation had continued against Actavis and Merz and in March 2022, the parties submitted mediation statements and engaged in a one-day mediation session before a new and retired prominent mediator, but that mediation too was not successful. As Plaintiff continued to prepare for trial, Plaintiff faced multiple additional challenges to Plaintiff's damages assessment. Then, the Court directed the parties to engage in mediation with this Court's mediator. The discussions were in-person, by video teleconference, and telephone. They were intense and often multiple times daily. Finally, on October 4, 2022, Class Counsel carefully reassessed the risk of trial in light of the challenges posed by, *inter alia*, the complexity of the case in general, Defendants' defenses, and Defendants' pending motions. After due consideration of all the facts and circumstances, Plaintiff's Counsel concluded and agreed that an all-cash settlement was in the best interests of the Class.

The Settlement Agreement provides that Actavis and Merz will pay $54,400,000 in cash for the benefit of TPP Class members in exchange for dismissal of the litigation between Plaintiff and Defendants and certain releases. Together with the earlier Generic Defendants settlements, the all-cash settlement amount is $56,438,000 for the benefit of the Class.

Plaintiff retained A. B. Data Ltd., a nationally recognized notice and settlement claims

administrator, to develop a robust notice program. This Court earlier approved that firm to provide notice in connection with the class certification decision. Together, Class Counsel and A.B. Data developed and  proposed form and manner of providing notice of the Settlement Agreement to the TPP Class, and the procedures by which: (a) Class members may receive their share of settlement funds; (b) TPP Class members may object to the proposed Settlement Agreement; and (c) TPP Class members may object to Class Counsel's application for attorney's fees of up to one-third of the Settlement Amount, reimbursement of reasonable expenses incurred in prosecuting this action and incentive award, for its efforts on behalf of the Class.

## III.   THE PROPOSED SETTLEMENT MEETS THE STANDARD FOR PRELIMINARY APPROVAL

Preliminary approval does not require a court to reach any ultimate conclusions on the merits of the litigation. *See Tiro v. Pub. House Investments, LLC,* No. 11 CIV. 7679 CM, 2013 WL 2254551, at *1 (S.D.N.Y. May 22, 2013) (McMahon, J.)*.* Rather, the court "need only determine that there is probable cause to submit the agreement to the proposed class members and to hold a fairness hearing, at which time the court will have the opportunity to closely examine the intricacies of the settlement terms and to assess their fairness." *Elkind v. Revlon Consumer Prods. Corp.,* CV 14-2482 (JS)(AKT), 2017 WL 9480894, at *6 (E.D.N.Y. Mar. 9, 2017), citing *In re Traffic Exec. Ass'n E.R.Rs*., 627 F.2d 631, 634 (2d Cir. 1980).

In evaluating a proposed settlement, a court typically gives significant weight to "the judgment . . . of the parties who negotiated the settlement." *In re Telik, Inc. Sec. Litig.,* 576 F. Supp. 2d 570, 575-76 (S.D.N.Y. 2008) (McMahon, J.).  Moreover, in conducting a preliminary approval inquiry, a court considers both the "negotiating process leading up to the settlement, *i.e.*, procedural fairness, as well as the settlement's substantive terms, *i.e.*, substantive fairness." *In re Platinum & Palladium Commodities Litig.*, No. 10-cv-3617, 2014 WL 3500655, at *11 (S.D.N.Y. July 15, 2014) (internal

quotation marks omitted). "Where the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class and falls within the range of possible approval, preliminary approval is granted." *In re Initial Pub. Offering Sec. Litig.*, 243 F.R.D. 79, 87 (S.D.N.Y. 2007) (citation omitted); *see also Platinum & Palladium*, 2014 WL 3500655, at *12. As demonstrated below, the proposed Settlement merits preliminary approval because it is both procedurally and substantively fair.

### A. The Proposed Settlement Was the Result of Serious and Informed Negotiations by Experienced Counsel

If a court finds that a settlement is the result of good faith, serious, "arm's-length negotiations between experienced, capable counsel after meaningful discovery" the settlement is entitled to a presumption of fairness. *See Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.,* 396 F.3d 96, 116-17 (2d Cir. 2005) (internal quotation marks omitted). *See also In re Telik, Inc. Sec. Litig.,* 576 F. Supp. 2d at 575, citing *In re Union Carbide Corp. Consumer Prods. Bus. Sec. Litig*., 718 F. Supp. 1099, 1103 (S.D.N.Y. 1989) ("a class action settlement enjoys a 'presumption of correctness' where it is the product of arm's-length negotiations conducted by experienced, capable counsel."). Participation by a neutral third party supports a finding that the agreement is non-collusive. *See In re Penthouse Exec. Club Comp. Litig.*, Master File No. 10 Civ. 1145(KMV), 2013 WL 1828598, at *2 (S.D.N.Y. Apr. 30, 2013) ("A settlement like this one, reached with the help of third-party neutrals enjoys a presumption that the settlement achieved meets the requirements of due process.") (Internal quotation marks omitted).

### B. Negotiations Were at Arm's-Length and Continued Until the Brink of Trial

The parties achieved this Settlement after several years of hard-fought litigation and with the assistance of private and court-appointed mediators. The voluminous record, including the Court's

opinion dispensing with the parties' Motions *in Limine* and the Brand Defendants' first motion for

clarification (ECF No. 890) and rulings on the admissibility of evidence (*see* ECF No. 943; Transcript,

September 22, 2022) permitted the parties to further scrutinize the strengths and weaknesses of their

respective claims and defenses as they prepared for trial.  Equipped with this knowledge, the parties

engaged in intensive settlement discussions through multiple days of mediation and open line of

communications with this Court's deputy Clerk.  As noted above, the negotiations were detailed, time-

consuming, and hard-fought.

### C.     Class Counsel Are Highly Experienced in Antitrust Litigation Alleging Delayed Generic Drug Competition

Courts often defer to the judgment of experienced counsel who have engaged in arm's- length

negotiations, understanding that vigorous, skilled negotiation protects against collusion and advances

the fairness interests of Rule 23(e).

Class Counsel has extensive experience in the successful prosecution and settlement of

pharmaceutical pay-for-delay cases on behalf of classes of third-party payors.[3] After carefully

evaluating the myriad of risks associated with the continued prosecution of this case through trial and

any potential appeals, Class Counsel determined that the settlement with Defendants is fair and in the

best interests of the Class.

### D.     The Proposed Settlement Is Within the Range of Possible Approval

The proposed cash payout to Class members here easily falls within the range of settlements

deemed worthy of final approval as fair, reasonable, and adequate. Whether a settlement is ultimately

---

[3]     *See e.g.*, *In re Loestrin Antitrust Litig*., 13-md-2472-WES-PAS (D.R.I.) ($63.5 million settlement – Co-Lead Counsel for End Payor Class*); In re Flonase Antitrust Litig*., No. 08-3301 (E.D. Pa.) ($46 million settlement - Co-Lead Counsel for End Payor Class); *In re Aggrenox Antitrust Litig*., 14-md-2516 (D. Conn.) ($54 million settlement – Co-Lead Counsel for End Payor Class); *In re Relafen Antitrust Litig*., Master File No. 01-12222-WGY (D. Mass. 2001) (Co-Lead Counsel for End Payor Class - $75 million settlement).  Significantly, the TPP Class here includes many of the same third-party health and welfare funds, self-funded plans, and insurance companies that composed the classes in these cases.

granted *final* approval is determined at the final fairness stage based on nine factors for the Court to consider in assessing the fairness of a settlement under Rule 23(e). *See, e.g., In re Namenda Direct Purchaser Antitrust Litig.*, 462 F.Supp.3d 307, 310-11 (S.D.N.Y. 2020). At the *preliminary* approval stage, by contrast, courts simply determine if the settlement could possibly be approved. *See, e.g.*, *Bourlas v. Davis Law Assocs.*, 237 F.R.D. 345, 355 n.7 (E.D.N.Y. 2006) ("Little is gained . . . in applying *Grinnell* at such an early stage since the proposed settlement has yet to be tested in a fairness hearing . . . Furthermore, it is apparent that several of the *Grinnell* factors themselves were designed for application at a later stage in the class settlement approval process."); *Tiro v. Public House Invs., LLC*, 2013 WL 2254551, at *1 ("Preliminary approval of a settlement agreement requires only an initial evaluation of the fairness of the proposed settlement on the basis of written submissions and an informal presentation by the settling parties.") (Internal quotation marks omitted); *Torres v. Gristede's Operating Corp.*, No. 04-CV-3316 (PAC), 2010 WL 2572937, at *2 (S.D.N.Y. June 1, 2010) (same).

The *Grinnell* factors are: (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation. *See Wal-Mart Stores.,* 396 F.3d at 117 (citing *Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d. Cir. 1974) *abrogated on other grounds by Goldberger v. Integrated Resources, Inc.*, 209 F.3d 43 (2d Cir. 2000).

Here, the proposed Settlement now presented for preliminary approval is in the best interest of the Class. If finally approved, it will result in an immediate all cash settlement fund of $54,400,000.

Compared to litigating to an uncertain final resolution, which would be subject to potentially years of appeals even if successful, the certain and timely receipt of the substantial proceeds of the Settlement establishes an initial presumption that the settlement is fair, adequate, and reasonable. *See Hart v. RCI Hosp. Holdings*, No. 09 Civ. 3043(PAE), 2015 WL 5577713, at *7 (S.D.N.Y. Sep. 22, 2015) ("[C]ounsel on both sides were unusually well-positioned to assess the potential outcomes of the case and to weigh the various risks and rewards presented to each side. Thus, there is no basis to rebut the presumption of procedural fairness, and the Court finds the settlement procedurally fair.").

As to the *Grinnell* factors: (1) this case was quite complex, with numerous legal, evidentiary and economic issues, and the two-phase trial was likely to last several weeks; (2) the reaction of the class will be determined after distribution of notice; (3) the case was literally on the eve of trial after all discovery had been completed; (4) Plaintiffs faced a serious risk of proving liability on the reverse payment claim, and proving damages for purchases of Namenda XR (5) proof of damages (assuming liability) became complex because of the numerous attacks on Plaintiff's economist damages expert; (6) Although Defendants did not appeal the class certification decision pursuant to Rule 23 and Plaintiff does not believe there was any risk of maintaining the class action through trial, Defendant no doubt would have appealed class certification, among other issues, had Plaintiff won at trial; (7) there was not an ability to pay issue; and (8-9) as discussed above, the $54,400,000 settlement figure from these remaining Defendants is fair, reasonable and adequate under the circumstances of this generic suppression antitrust case. The *Grinnell* factors support preliminary approval here.

### E.     The Plan of Allocation Is Fair, Reasonable, and Adequate

Approval of a plan of distribution for a settlement fund in a class action is governed by the same standards of review applicable to approval of the settlement as a whole, *i.e.,* the distribution plan must be fair, reasonable, and adequate. *Hart*, 2015 WL 5577713, at *12. "An allocation formula need only have a reasonable, rational basis, particularly if recommended by experienced and

competent class counsel." *Id.* at *34, *quoting Maley v. Del Glob. Techs. Corp.*, 186 F. Supp. 2d 358, 367 (S.D.N.Y. 2002) (internal quotation marks omitted).

The proposed Plan of Allocation meets this standard. As described in the proposed notice to Class Members, and as set forth in the attached Plan of Allocation, the proceeds of the proposed Settlement in this case, net of Court-approved attorneys' fees, incentive award for the Class Representative, and costs of litigation ("Net Settlement Fund"), will be paid *pro rata* to Class Members who submit timely and valid claims. This plan is similar to plans that have previously been approved by courts in analogous cases and implemented with a high degree of success and efficiency and should be approved here as well. *See, e.g., In re Loestrin 24 Fe Antitrust Litig.*, No. 1:13-md-2472-WES-PAS, ECF Nos. 1424-2, 1427 (*pro rata* shares of settlement fund computed on the basis of claimants' purchases); *In re Solodyn (Minocycline Hydrochloride) Antitrust Litig.*, 1:14-md-02503-DJC, ECF Nos. 1067-7 (Ex. 3), 1077  (D. Mass.) (same); and *In re Lidoderm Antitrust Litig.*, 3:14-md-02521-WHO, ECF Nos. 1005-4 (Ex. A),  1016 at ¶¶16-17 (N.D. Cal.) (same).

## F.    The Proposed Form and Manner of Notice Are Appropriate

### 1.    Form of Notice

Under Rule 23(e), class members are entitled to reasonable notice of a proposed settlement before it is finally approved by the Court, and to notice of the final Fairness Hearing. *See* MANUAL FOR COMPLEX LITIGATION, §§ 21.312, 21.633 (4th ed. 2005) ("MANUAL").  For 23(b)(3) classes, the court must "direct to class members the best notice that is practical under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B).  There are two components of notice: (1) the form of the notice; and (2) the manner in which notice is sent to Class members.

The proposed forms of notice are based on notices approved by courts in similar cases brought by end-payors. *See, e.g.*, *In re Loestrin 24 Fe Antitrust Litig.*, No. 1:13-md-2472-WES-PAS, ECF

No. 1401-3 (D.R.I.) (notice) and *id.* at ECF No. 1427 (approving form and manner of notice); *In re Solodyn (Minocycline Hydrochloride) Antitrust Litig.*, No. 1:14-md-02503-DJC, ECF Nos. 1067-4 (D. Mass.) (notice); *id.* at ECF No. 1077 (approving the form and manner of notice); *In re Lidoderm Antitrust Litig.*, 3:14-md-02521-WHO, ECF No. 1014, at Ex. E (N.D. Cal.) (notice); *id.* at ECF No. 1016, ¶¶ 10-15 (approving the form and manner of notice). The proposed Notice Plan is designed to alert Class Members to the proposed Settlement by using a bold headline, and the plain language text provides important information regarding the terms of the proposed Settlement, including the nature of the action; the definition of the Class certified; the identity of the Defendants; the significant terms of the proposed Settlement including the total amount Defendants have agreed to pay to the Class; that a Class member may object to all or any part of the proposed Settlement and the process and deadline for doing so, including entering an appearance through an attorney if the Class member desires; the process for obtaining a portion of the settlement proceeds; the final approval process for the proposed Settlement and Class Counsel's request for attorneys' fees of up to one third of the Settlement (net of Court-approved reimbursed costs and expenses and service awards), reimbursement of all litigation expenses, and incentive awards to the named plaintiffs; the schedule for completing the settlement approval process, including the submission of the motion for final approval of the settlement, and the submission of the motion for attorneys' fees, expenses, and incentive awards to the named plaintiffs; and the binding effect of a final judgment on members of the Class. In addition, the proposed notice prominently features Class Counsel's contact information and directions to the firm websites for Class Counsel where the Settlement documents, proposed Plan of Allocation, and supplemental information will be provided, as well as contact information for the settlement administrator. *Tiro v. Public House Invs., LLC*, 2013 WL 2254551, at *4 (approving notice that "describes the terms of the settlement, informs the class about the allocation of attorneys' fees and costs, and provides specific information regarding the date, time, and place of the final approval

14

hearing").

### 2.    Manner of Notice

Plaintiff's Counsel worked closely with A.B. Data, Ltd., a nationally known and recognized Notice and Claims Administrator, to develop a robust notice plan and proposes to send notice by first-class United States mail to each TPP Class Member, all of which are business entities.[4] The list of Class Members was developed from A.B. Data's proprietary database and other public information. In circumstances in which all class members can be identified, the best method of notice is individual notice. *See* MANUAL, § 21.311 at 488 ("Rule 23(c)(2)(B) requires that individual notice in 23(b)(3) actions be given to class members who can be identified through reasonable effort."). Individual notice by first class mail has been recognized by the courts as appropriate. *See, e.g. In re Take Two Interactive Sec. Litig.*, Nos. 06 Civ. 803(RJS), 06 Civ. 987(RJS), 06 Civ. 1131(RJS), 06 Civ. 1733(RJS), 2010 WL 11613684, at *12-13 (S.D.N.Y. June 29, 2010), citing *In re Global Crossing Securities and ERISA Litig.*, 225 F.R.D. 436, 448 (S.D.N.Y. 2004). The Notice Plan also contemplates electronic notices and media publications, all of which helps adhere to the Federal Judicial Center's *Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide*. As discussed above, courts have approved similar notice plans in similar generic suppression cases brought by indirect purchasers. *See* Section III.F.1, *supra* (citing *Loestrin*, *Solodyn*, and *Lidoderm* orders approving similar notice plans).

### 3.    An Additional Opt-Out Period Is Unnecessary

The TPPs were afforded an opportunity to opt out or exclude themselves from the Class, *see* fn. 1, *infra*. While the Court has discretion to give members of a previously certified class a second chance to opt out, *see* Rule 23(e)(4), there is no requirement that it do so, as numerous courts have

---

[4]    The Notice Plan also includes the manner and method of providing notice to the Generic Defendants Class.

recognized. *See Denney v. Deutsche Bank AG*, 443 F.3d 253, 270-71 (2d Cir. 2006) (courts are under "no obligation" to afford class members second opportunity for exclusion); *Wal-Mart*, 396 F.3d at 114-15 (rejecting argument that class members should have been granted "the opportunity to opt out after the settlement notice was issued" because the member "was required to opt out at the class notice stage if it did not wish to be bound by the Settlement."); *Seijas v. Republic of Argentina*, No. 04-CV-1085 (TPG), 2017 WL 1511352, at *7 (S.D.N.Y. Apr. 27, 2017) (no second exclusion period warranted where "the opt-out notice for each class was well- designed, thoroughly circulated, and adequate. The content of the notices was sufficiently detailed to inform class members that their rights were at issue and to provide them an opportunity to learn the full extent of this litigation.").  Because TPP Class Members (sophisticated business entities) were informed about the litigation nearly a year ago pursuant to Court- approved notice plan, and were given the opportunity to opt out of the certified Class, and the Settlement still allows them to object to the terms of the Settlement and/or Class Counsel's request for attorneys' fees, expenses and service award to the Class Representative, Plaintiff respectfully submits that no second opt-out period is necessary here. See earlier notice attached hereto which provides in all capital bold text "HOWEVER, AS A THIRD-PARTY PAYOR MEMBER OF THE CERTIFIED TPP CLASS, THIS WILL BE THE ONLY OPPORTUNITY YOU WILL HAVE TO EXCLUDE YOURSELF FROM THE TPP CLASS."

### G.    A.B. Data, Ltd. Is an Appropriate Settlement Administrator

Plaintiff requests that A.B. Data, Ltd., which already served as the Class Certification Notice Administrator, again be appointed as the Notice and Claims Administrator. In the role, A.B. Data will oversee the administration of the Settlement, including disseminating notice to the Class, calculating each Class member's *pro rata* share of the Net Settlement Amount, and distributing settlement proceeds. A.B. Data has been appointed claims administrator in another pharmaceutical reverse payment case in a district court within the Second Circuit. *See, e.g., In re Restasis*

*(Cyclosporine Ophthalmic Emulsion) Antitrust Litigation*, 527 F. Supp.3d 269, 272-73 (E.D.N.Y. 2021) ("Given its [A.B. Data's] extensive experience administering notice in class actions—including antitrust class actions against pharmaceutical companies—I appoint A.B. Data as notice administrator without hesitation.").

### H.    Valley National Bank Is an Appropriate Escrow Agent

Plaintiff requests that Valley National Bank (formerly Bank Leumi USA) serve as escrow agent. In April 2022, Valley National Bank acquired Bank Leumi USA. The same bank officers and personnel will continue to oversee this settlement escrow account. Defendants have approved this selection. This Court approved Bank Leumi USA to serve as Escrow Agent in connection with the Generic Defendants' Settlements and it is appropriate that it again be appointed for this Settlement.

### I.    The Proposed Schedule Is Fair and Should Be Approved

As set forth in the Proposed Preliminary Approval Order, the schedule provides ample time for consideration of the Settlement and Class Counsel's request for fees, expenses, and incentive award before the deadline for submitting objections.

## IV.    CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court enter the proposed Order.

Dated:  November 11, 2022                             Respectfully submitted,

/s/ *Marvin A. Miller*

Marvin A. Miller
Lori A. Fanning
**MILLER LAW LLC**
145 South Wells Street
Floor 18
Chicago, IL 60606
Tel: (312) 332-3400
mmiller@millerlawllc.com
lfanning@millerlawllc.com

Peter Safirstein
**SAFIRSTEIN LAW LLC**
45 N. Broad Street
Suite 100
Ridgewood, NJ 07450
Tel: (917) 952-9458
psafirstein@safirsteinlaw.com

*Co-Lead Counsel for the Class*

Lloyd Constantine
Ankur Kapoor
**CONSTANTINE CANNON LLP**
335 Madison Avenue, 9th Floor
New York, NY 10017
Tel: (212) 350-2700
lconstantine@constantinecannon.com
akapoor@constantinecannon.com

*Counsel for the Plaintiff Class*

18