**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **IN RE NAMENDA INDIRECT PURCHASER ANTITRUST LITIGATION** | **Case No. 1:15-cv-06549-CM-RWL** |

**MEMORANDUM OF LAW IN SUPPORT OF CLASS COUNSEL'S MOTION FOR
ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES AND INCENTIVE AWARD
FOR THE NAMED PLAINTIFF**

## <u>TABLE OF CONTENTS</u>

I.    INTRODUCTION ...................................................................................................1

II.   SUMMARY OF CLASS COUNSEL'S LITIGATION EFFORTS ...........................9

    A. Motions To Dismiss ....................................................................................9

    B. Class Certification .......................................................................................9

    C. Experts ......................................................................................................10

    D. Summary Judgment and Daubert Motions ...............................................11

    E. Trial Preparation .......................................................................................12

    F. Mediation and Settlement .........................................................................13

III.  ARGUMENT ......................................................................................................14

    A. Class Counsel Should Be Awarded Reasonable Attorneys' Fees ............14

    B. Class Counsel's Fee Request Satisfies the *Goldberger* Factors .............16

       1. The Time and Labor Expended by Counsel ....................................16

       2. The Magnitude and Complexities of the Litigation ........................17

       3. The Risk of the Litigation ...............................................................18

       4. The Quality of Representation .........................................................20

       5. The Requested Fee in Relation to the Settlement ...........................21

       6. Public Policy Considerations ..........................................................22

    C. A Lodestar Cross-Check Confirms the Reasonableness of the Requested Fee ....23

    D. Class Counsel's Costs and Expenses Are Reasonable and Were Necessary to Achieve the Result ....24

    E. An Incentive Award for the Class Representative Is Appropriate and Reasonable ....24

CONCLUSION ...................................................................................25

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Am. Soc'y of Mech. Eng'rs v. Hydrolevel Corp.,*
  456 U.S. 556, 102 S. Ct. 1935, 72 L. Ed. 2d 330 (1982)............................................22

*Boeing Co. v. Van Gemert,*
  444 U.S. 472, 100 S. Ct. 745, 62 L. Ed. 2d 676 (1980)..............................................14

*Brown v. City of New York,*
  No. 17-CV-9078-AJN, 2020 WL 6075524 (S.D.N.Y. Oct. 15, 2020) ....................................21

*Bryant v. Potbelly Sandwich Works, LLC,*
  No. 117-CV-07638-CMHBP, 2020 WL 563804 (S.D.N.Y. Feb. 4, 2020) ...........................3, 21

*Christine Asia Co. v. Yun Ma,*
  No. 1:15-MD-02631-CM-SDA, 2019 WL 5257534 (S.D.N.Y. Oct. 16, 2019)........................23

*Cohen v. Warner Chilcott Pub. Ltd. Co.,*
  1:06-cv-00401, 522 F. Supp. 2d 105 (D.D.C. Nov. 16, 2007) ....................................4

*Comcast Corp. v. Behrend,*
  569 U.S. 27, 133 S. Ct. 1426, 185 L. Ed. 2d 515 (2013)..............................................2

*Fresno County Employees' Ret. Ass'n v. Isaacson/Weaver Fam. Tr.,*
  925 F.3d 63, 67 (2d Cir. 2019) ..................................................................... 14, 15

*Garcia v. Pancho Villa's of Huntington Vill., Inc.,*
  No. 09-CV-486 ETB, 2012 WL 5305694 (E.D.N.Y. Oct. 4, 2012)...................................17

*Goldberger v. Integrated Res., Inc.,*
  209 F.3d 43 (2d Cir. 2000) .......................................................................14, 15

*In re Aggrenox Antitrust Litig.,*
  No. 3:14-md-2516, 2018 WL 10705542 (D. Conn. Jul. 19, 2018)................................. 5

*In re Chicago Bridge & Iron Co. N.V. Sec. Litig.,*
  No. 1:17-CV-1580, 2022 WL 3220783 (S.D.N.Y. Aug. 5, 2022)................................. 21

*In re Credit Default Swaps Antitrust Litig.,*
  No. 13-MD-2476, 2016 WL 2731524 (S.D.N.Y. Apr. 25, 2016) ................................. 23

*In re DDAVP Indirect Purchaser Antitrust Litig.,*
  No. 7:05-cv-2237, 2013 WL 10114257 (S.D.N.Y. Dec. 18, 2013)......................5, 22

*In re EpiPen (Epinephrine Injection, USP) Mktg., Sales Pracs. and Antitrust Litig.*,
   No. 17-MD-2785-DDC-TJJ, 2020 WL 1809664 (D. Kan. Feb. 27, 2020) ...........................4, 5

*In re EpiPen (Epinephrine Injection, USP) Mktg., Sales Practices and Antitrust Litig.*,
   No. 17-MD-2785-DDC-TJJ, 2022 WL 2663873 (D. Kan. July 11, 2022)................................17

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
   No. 02-CV-3400-CM-PED, 2010 WL 4537550 (S.D.N.Y. Nov. 8, 2010) ..............................25

*In re Flonase Antitrust Litig.*,
   951 F. Supp. 2d 739 (E.D. Pa. 2013) ..........................................................................................17

*In re Flonase Antitrust Litig.*,
   291 F.R.D. 93 (E.D. Pa. 2013)..................................................................................................22

*In re Giant Interactive Group, Inc. Sec. Litig.*,
   279 F.R.D. 151, 164-65 (S.D.N.Y. 2011)...................................................................................21

*In re Global Crossing Sec. & ERISA Litig.*,
   225 F.R.D. 436 (S.D.N.Y. 2004) ...............................................................................................21

*In re Initial Pub. Offering Sec. Litig.*,
   671 F. Supp. 2d 467 (S.D.N.Y. 2009) ........................................................................................15

*In re K-Dur Antitrust Litig.*,
   No. 01-CV-1652-SRC-CLW, 2017 WL 11636125 (D.N.J. Oct. 5, 2017) .................................25

*In re Lidoderm Antitrust Litig.*,
   No. 3:14-md-02521-WHO, 2018 WL 11375216 (N.D. Cal. Sept. 20, 2018) ........................5, 25

*In re Lloyds American Trust Fund Litigation*,
   No. 96-CV-1262-RWS, 2002 WL 31663577 (S.D.N.Y. Nov. 26, 2002), *aff'd sub nom. Adams
   v. Rose*, No. 03-7011, 2003 WL 21982207 (2d Cir. Aug. 20, 2003)............................................ 3

*In re Loestrin 24 Fe Antitrust Litig.*,
   No. 1:13-md-2472-WES-PAS, 2020 WL 4038942 (D.R.I. July 17, 2020), *report and
   recommendation adopted*, No. 1:13-MD-2472-WES-PAS, 2020 WL 5201275
   (D.R.I. Sept. 1, 2020)....................................................................................................5, 17, 22

*In re Marsh ERISA Litig.*,
   265 F.R.D. 128 (S.D.N.Y. 2010) .........................................................................................23, 24

*In re Namenda Indirect Purchaser Antitrust Litig.*,
   338 F.R.D. 527 (S.D.N.Y. 2021) ........................................................................................ Passim

iv

*In re Namenda Indirect Purchaser Antitrust Litig.*,
   No. 1:15-cv-6549-CM-RWL, 2021 WL 100489 (S.D.N.Y. Jan. 12, 2021) ..............................11

*In re Namenda Indirect Purchaser Antitrust Litig.*,
   No. 1:15-CV-6549-CM-RWL, 2021 WL 2403727 (S.D.N.Y. June 11, 2021) ...................12, 20

*In re Namenda Indirect Purchaser Antitrust Litig.*,
   No. 1:15-CV-6549-CM-RWL, 2022 WL 3362429 (S.D.N.Y. Aug. 15, 2022)...................12, 13

*In re Namenda Indirect Purchaser Antitrust Litig.*,
   15-CV-6549-CM-RWL, 2022 WL 4298767 (S.D.N.Y. Sept. 19, 2022)..............................8, 10

*In re Neurontin Antitrust Litig.*,
   No. CV 02-1830, 2014 WL 12962880 (D.N.J. Aug. 6, 2014)...................................................25

*In re Nexium (Esomeprazole) Antitrust Litig.*,
   842 F.3d 34 (1st Cir. 2016).....................................................................................................8

*In re Petrobras Sec.*,
   862 F.3d 250 (2d Cir. 2017) ...................................................................................................19

*In re Ranbaxy Generic Drug Application Antitrust Litig.*,
   338 F.R.D. 294 (D. Mass. 2021)............................................................................................ 4

*In re Remeron End-Payor Antirust Litig.*,
   No. 2:02-cv-2007, 2005 WL 2230314 (D.N.J. Sept. 13, 2005)..................................................6

*In re Restasis (Cyclosporine Ophthalmic Emulsion) Antitrust Litig.*,
   No. 18-md-02819-NG-LB, 2022 WL 3043103 (E.D.N.Y. Aug. 2, 2022) ................5, 17, 22, 24

*In re Signet Jewelers Ltd. Sec. Litig.*,
   No. 1:16-CV-06728-CM-SDA, 2020 WL 4196468 (S.D.N.Y. July 21, 2020).........................21

*In re Telik, Inc. Sec. Litig.*,
   576 F. Supp. 2d 570, 586 (S.D.N.Y. 2008) .......................................................................14, 23

*In re Veeco Instruments Sec. Litig.*,
   No. 05 MDL 01695CM, 2007 WL 4115808 (S.D.N.Y. Nov. 7, 2007)....................................21

*In re Wellbutrin XL Antitrust Litig.*,
   133 F. Supp. 3d 734 (E.D. Pa. 2015), *aff'd sub nom. In re Wellbutrin XL Antitrust Litig.
   Indirect Purchaser Class*, 868 F.3d 132 (3d Cir. 2017), *judgment entered sub nom. In re
   Wellbutrin XL Antitrust Litig.*, No. 15-2875, 2017 WL 3529114 (3d Cir. Aug. 9, 2017)........5, 7

*In re Wellbutrin SR Antitrust Litig.*,
   No. 2:04-cv-05898, ECF No. 378, ADD CITE (E.D. Pa. Jun. 27, 2013)....................................5

*King Drug Co. of Florence, Inc. v. Cephalon, Inc*.,
 No. 2:06-CV-01797-MSG, 2015 WL 12843830 (E.D. Pa. Oct. 15, 2015) ..............................25

*Maley v. Del Global Technologies Corp*.,
 186 F. Supp. 2d 358 (S.D.N.Y. 2002).......................................................................................3

*Maywalt v. Parker & Parsley Petroleum Co*.,
 963 F. Supp. 310 (S.D.N.Y. 1997) ........................................................................................ 3

*Nichols v. Smithkline Beecham Corp. ("Paxil")*,
 No. 2:00-cv-6222, 2005 WL 950616 (E.D. Pa. Apr. 22, 2005) ..................................................6

*Pearlstein v. BlackBerry Ltd*.,
 No. 13-CV-7060-CM-KHP, 2022 WL 4554858 (S.D.N.Y. Sept. 29, 2022).....................Passim

*Sergeants Benevolent Association Health & Welfare Fund v. Actavis, PLC*,
 No. 15-CV-6549-CM, 2016 WL 4992690 (S.D.N.Y. Sept. 13, 2016)...................................1, 9

*Vista Healthplan, Inc v. Cephalon, Inc. ("Provigil")*,
 No. 2:06-cv-1833, 2020 WL 1922902 (E.D. Pa. Apr. 21, 2020)..................................................5

*Vista Healthplan, Inc v. Warner Chilcott Holdings Company III, Ltd*. ("Ovcon"),
 No. 05-cv-2327 , 246 F.R.D. 349 (D.D.C. 2007) ........................................................... 4, 6

*Woburn Ret. Sys. v. Salix Pharms., Ltd.*,
 No. 14-CV-8925-KMW, 2017 WL 3579892 (S.D.N.Y. Aug. 18, 2017) ................................... 18

**Statutes**

Fed. R. Civ. P. 23(h) ................................................................................................................ 15

**Dockets**

*In re Metoprolol Succinate ("Tropol XL") End-Payor Antitrust Litig*.,
 No. 06-cv-71, (D. Del.)………………………………………………………………………6

*In re Opana ER Antitrust Litig*.,
 No. 14-cv-10150 (ND. Ill) ......................................................................................4, 8, 18

*In re Prograf Antitrust Litig*.,
 No. 1:11-md-02242 (D. Mass)………………………….............................................................5

*In re Relafen Antitrust Litig*.,
 No. 1:01-cv-12239 (D. Mass.)………………………………………………………………6

*In re Skelaxin (Metaxalone) Antitrust Litig*.,

No. 1:12-md-2343 (E.D. Tenn)……………………………………………………………5

*In re Solodyn (Minocycline Hydrochloride) Antitrust Litig.*,
   No. 1:14-md-02503 (D. Mass.)……………………………………………………....5

*In re Terazosin Hydrochloride Antitrust Litig.*,
   No. 1:99-md-1317 (S.D. Fla.)…………………………………………………… 6

*In re Tricor Indirect Purchaser Antitrust Litig.*,
   No. 1:05-cv-00360 (D. Del)……………………………………………………………6

*In re Wellbutrin XL Antitrust Litig.*,
   No. 2:08-cv-2433 (E.D. Pa.)………………………………………………………… 5

*In re Restasis (Cyclosporine Ophthalmic Emulsion) Antitrust Litig.*,
   No. 18-md-02819-NG-LB (E.D.N.Y.)………………………….............................................. 5

*Ryan-House v. GlaxoSmithKline PLC ("Augmentin")*,
   No. 2:02-cv-442 (E.D. Va.)…………………………………………………………… 6

## I.    INTRODUCTION

After more than 5 years of contentious litigation[1], three mediations with three different mediators, and with just two weeks before the start of the first phase of a two-phase jury trial, Class Counsel achieved global resolution and a substantial all-cash $56,438,000 settlement for the benefit of the certified and settlement Classes. Class Counsel submits this memorandum in support of their motion for an award of attorney's fees, reimbursement of expenses, and an incentive award for the class representative, Sergeant's Benevolent Association Health & Welfare Fund ("SBA").

The  facts and procedural background of this case are detailed in the Declaration Of Marvin A. Miller In Support Of Indirect Purchaser Class Plaintiff's Motion For Preliminary Approval Of Proposed Settlement, Approval Of The Form And Manner Of Notice To The Class, And Proposed Schedule For A Fairness Hearing [Doc. 957] and the Declaration Of Marvin A. Miller In Further Support Of Indirect Purchaser Class Plaintiff's Motion For Final Approval Of Settlements, Award Of Attorneys' Fees, Reimbursement Of Expenses, and Incentive Award to be filed contemporaneously herewith.

Since filing Plaintiff's complaint more than seven years ago, Class Counsel has aggressively prosecuted this complex pharmaceutical antitrust case, maintained seventy-eight claims under the laws of twenty-nine states and the District of Columbia, and against ten determined defendants that are represented by capable and experienced counsel, up to and until the brink of trial.  Moreover, as this Court recognized, this case was substantially different from the Direct Purchaser ("DPP") action because in addition to pursuing brand Defendant Merz, along with common Defendant Forest, Indirect Purchaser Plaintiff also sued eight Generic Defendants and obtained agreements for monetary

---

[1]    The litigation lasted seven years, but the Court stayed the End Payor Plaintiff's case for just over two years. *See*, *Sergeants Benevolent Ass'n Health & Welfare Fund v. Actavis*, *PLC*, No. 15-CV-6549-CM, 2016 WL 4992690, at *1 (S.D.N.Y. Sept. 13, 2016) and Order Lifting Stay And Referring This Case To The Magistrate Judge For Certain Purposes. (ECF No. 122).

settlements, with cooperation provisions, from all of them.[2]  Plaintiff's case is also unique because Class Counsel here litigated a significant portion of the case during the first global pandemic in one hundred years.

Plaintiff's claims included reverse payment and product hop claims brought under state laws. The Court certified Plaintiff's claims under its reverse payment theory of liability and held that, "SBA has done exactly what *Comcast* requires by offering proof [of] a measurable estimate of class-wide damages attributable to the pay-for-delay theory."  *In re Namenda Indirect Purchaser Antitrust Litig*., 338 F.R.D. 527, 565 (S.D.N.Y. 2021), citing *Comcast Corp. v. Behrend*, 569 U.S. 27, 133 S. Ct. 1426, 185 L. Ed. 2d 515 (2013).  In the same opinion, the Court also denied Defendants' *Daubert* motion to exclude the opinions of Plaintiff's damages expert, Dr. William Vogt. *Id.* at 546. While Plaintiff also initially challenged the Defendants' "hard-switch product hop" to compel purchasers to switch to Defendants' extended-release version of Namenda (Namenda XR), before less expensive generic versions of Namenda IR became available, the Court did not certify the "hard switch" claim for class action treatment in this action.  As a consequence, for trial, Plaintiff focused on the reverse payment claims and whether the Lexapro Amendment qualified as a large and unjustified payment made to settle Paragraph IV litigation between the Defendants and Mylan.  No government enforcement agency pursued this reverse payment/pay-for-delay theory.  Moreover, Class Counsel pursued this case on a wholly contingent basis without any guarantee of success or compensation.

From the inception of this case through January 31, 2023, Class Counsel expended nearly 52,000 hours of uncompensated professional time equating to just over $32 million and incurred over $5,879,787.65 in unreimbursed out-of-pocket expenses.  Declaration of Marvin A. Miller In Further

---

[2]    Both the Brand and Generic Defendants are defined in the Class Notice.
https://www.inrenamendaindirectantitrustlitigation.com/docs/Namenda%20LF%20Notice%20(020)%20Final.pdf (last visited Feb. 26, 2023).

Support of the Indirect Purchaser Class Plaintiff's Motion For Final Approval of Settlements, Award of Attorneys' Fees, Reimbursement of Expenses, and Incentive Award ("M. Miller Supp Decl.") at ¶ 7.  As compensation for their efforts, Class Counsel seek an award of attorneys' fees in the amount of $18,812,666, *i.e.*, 33 1/3% of the settlement amount (plus an equal percentage of any interest accrued since the settlement amount was escrowed), and reimbursement of litigation expenses in the amount of $5,879,787.65. *Id.*  Class Counsel also seeks an incentive award in the amount of $100,000 for sole class representative SBA. The fee award, if granted, will result in Class Counsel receiving 41.3% less than aggregate lodestar on its years' long effort on behalf of the Class. This request is justified for several reasons.

Class Counsel's application for attorneys' fees in the amount of "one-third of the gross settlement fund is reasonable within this circuit." *Pearlstein v. BlackBerry Ltd.*, 2022 WL 4554858, at *10 (S.D.N.Y. Sept. 29, 2022) (collecting cases).  As a general matter, "[i]n this district alone, there are scores of common fund cases where fees alone (*i.e.*, where expenses are awarded in addition to the fee percentage) were awarded in the range of 33-1/3% of the settlement fund."  *In re Lloyds Am. Trust Fund Litig.*, 2002 WL 31663577, at *26 (S.D.N.Y. Nov. 26, 2002), *aff'd sub nom. Adams v. Rose*, No. 03-7011, 2003 WL 21982207 (2d Cir. Aug. 20, 2003) (collecting cases).  *See also*, *Bryant v. Potbelly Sandwich Works, LLC*, 2020 WL 563804, at *6 (S.D.N.Y. Feb. 4, 2020) ("Class Counsel's request for a one-third fee is consistent with the norms of class litigation in this circuit.") (quotations omitted); *Maley v. Del Global Technologies Corp.*, 186 F. Supp. 2d 358, 370 (S.D.N.Y. 2002) (awarding attorneys' fees representing 1/3 of the settlement fund); and *Maywalt v. Parker & Parsley Petroleum Co.*, 963 F. Supp. 310, 313-314 (S.D.N.Y. 1997) (awarding attorneys' fees representing 33.4% of the settlement fund).  End-Payor generic suppression cases share common attributes; therefore, attorneys' fees awarded in similar litigations supply the most appropriate comparators.  As reflected in the table below, Class Counsel is aware of attorneys' fee awards in twenty end-payor generic suppression class

3

actions over the past decade-and-a-half that did not result in the creation of megafunds. Of these, fees of 33% were awarded in fourteen cases. Moreover, reflecting the quality of the results obtained by Class Counsel, the all-cash $56,438,000 recovery is in accord with other settlements in recent end-payor cases (for which the mean is approximately $34,516,410), but does not reach "megafund territory."[3]

**Attorneys' Fee Awards in End-Payor Generic Suppression Class Actions (2005-2022)**

| Settlement Year | Case | Settlement Amount | Fee Awarded | Fee % |
|---|---|---|---|---|
| 2022 | *In re Opana ER Antitrust Litig.*, No. 14-cv-10150 (N.D. Ill.), at ECF 1091 | $15MM | $5MM | 33.3% |
| 2022 | *In re EpiPen (Epinephrine Injection, USP) Marketing, Sales Practices and Antitrust Litig.*, No. 17-md-2785 (D. Kan.) (Mylan Settlement),[4] at ECF 2622 | $264MM | $88MM | 33.3% |
| 2022 | *In re Ranbaxy Generic Drug Application Antitrust Litig.*, 19-md-02878 (D. Mass), at ECF 613[5] | $145MM | $29MM | 20% |
| 2021 | *In re EpiPen (Epinephrine Injection, USP) Marketing, Sales Practices and Antitrust Litig.*, No. 17-md-2785 (D. | $345MM | $115MM | 33.3% |

---

[3]    The separate third-party payor and consumer class settlements in the *Ovcon* litigation are not reflected in these categories, because they did not require a cash payment to class members. The settling defendants agreed to donate products at market value ($6 million for consumers and $3 million for third-party payors), pay attorneys' fees and costs ($2 million to consumers and $1.1 million to third-party payors), and pay settlement notice and administration expense ($300,000 to consumers and $100,000 to third-party payors). The portion of the fees and expense fund awarded to class counsel as fees ($1,880,293.13 for consumers and $874,650) was equivalent to 21.2% of the total combined $13 million market value of the settlement, inclusive of all fees and costs awarded. *See Vista Healthplan, Inc v. Warner Chilcott Holdings Company III, Ltd*. ("*Ovcon*"), 246 F.R.D. 349 (D.D.C. 2007); *Cohen v. Warner Chilcott Pub. Ltd*. Co., 522 F. Supp. 2d 105 (D.D.C. 2007), ECF No. 101; *Ovcon*, No. 05-cv-2327, at ECF 104 (D.D.C. Nov. 16, 2007).

[4]    In addition to certifying end-payors' state antitrust claims, the *EpiPen* court also certified an end-payor nationwide RICO damages class. *See In re EpiPen (Epinephrine Injection, USP) Mktg., Sales Practices and Antitrust Litig.*, No. 17-MD-2785-DDC-TJJ, 2020 WL 1809664, at *1 (D. Kan. Feb. 27, 2020).

[5]    In addition to certifying end-payors' state antitrust and consumer fraud claims, the *Ranbaxy* court also certified three end-payor nationwide RICO classes. *See In re Ranbaxy Generic Drug Application Antitrust Litig.*, 338 F.R.D. 294, 299, 309 (D. Mass. 2021).

| Settlement Year | Case | Settlement Amount | Fee Awarded | Fee % |
|---|---|---|---|---|
| | Kan.) (Pfizer Settlement),[6] at ECF 2506 | | | |
| 2022 | *In re Restasis (Cyclosporine Ophthalmic Emulsion) Antitrust Litig.,* No. 18-md-02819 (E.D.N.Y.), at ECF 743 | $29,999,999.99 | $10MM | 33.3% |
| 2020 | *In re Loestrin 24 Fe Antitrust Litig.,* No. 1:13-md-2472 (D.R.I.), at ECF 1461 | $62.5MM | $20,833,333.33 | 33.3% |
| 2020 | *Vista Healthplan, Inc v. Cephalon, Inc.* ("Provigil"), No. 2:06-cv-1833 (E.D. Pa.), at ECF 614 | $65,877,600 | $21,959,200 | 33.3% |
| 2018 | *In re Aggrenox Antitrust Litig.,* No. 3:14-md-2516 (D. Conn.), at ECF 821 | $50,229,193 | $16,743,064 | 33.3% |
| 2018 | *In re Lidoderm Antitrust Litig.,* No. 3:14-md-02521 (N.D. Cal.), at ECF 1055 | $104.75MM | $34,916,000 | 33.3% |
| 2018 | *In re Solodyn (Minocycline Hydrochloride) Antitrust Litig.,* No. 1:14-md-02503 (D. Mass.), at ECF Nos. 1157 and 1176 | $43MM | $14,333,333 | 33.3% |
| 2016 | *In re Prograf Antitrust Litig.,* No. 1:11-md-02242 (D. Mass.), at ECF 712 | $13.250MM | $4,416,667 | 33.3% |
| 2015 | *In re Skelaxin (Metaxalone) Antitrust Litig.,* No. 1:12-md-2343 (E.D. Tenn.), at ECF 950 | $9MM | $3,000,000 | 33.3% |
| 2013 | *In re Wellbutrin SR Antitrust Litig.,* No. 2:04-cv-05898 (E.D. Pa.), at ECF No. 378 | $21.5MM | $7,095,000 | 33.3% |
| 2013 | *In re DDAVP Indirect Purchaser Antitrust Litig.,* No. 7:05-cv-2237 (S.D.N.Y.), at ECF 178 | $4.75MM | $1,567,500 | 33.3% |
| 2013 | *In re Flonase Antitrust Litig.,* No. 08-cv-3301 (E.D. Pa.), at ECF 605 | $35MM | $11,655,000 | 33.3% |
| 2013 | *In re Wellbutrin XL Antitrust Litig.,* 2:08-cv-2433 (E.D. Pa.), at ECF 473 | $11.75MM | $3,916,275 | 33.3% |

---

[6]     *See EpiPen,* 2020 WL 1809664, at *1.

| Settlement Year | Case | Settlement Amount | Fee Awarded | Fee % |
|---|---|---|---|---|
| 2012 | *In re Metoprolol Succinate ("Tropol XL") End-Payor Antitrust Litig.,* No. 06-cv-71 (D. Del.), at ECF 342 | $11MM | $3,500,000 | 31.8% |
| 2009 | *In re Tricor Indirect Purchaser Antitrust Litig.,* No. 1:05-cv-00360 (D. Del.), at ECF 545 | $65.7MM | $21,900,000 | 33.3% |
| 2007 | *Vista Healthplan, Inc. v. Warner Chilcott Holdings Company III, Ltd.* ("Ovcon"), No. 1:05-cv-2327 (D.D.C.) | $9 million in products at market value and $3.2 million in fees and costs | $2,754,943.13 | *21.2% |
| 2005 | *In re Terazosin Hydrochloride Antitrust Litig.,* No. 1:99-md-1317 (S.D. Fla.), at ECF 1611 | $28.7MM | $8,610,000 | 30% |
| 2005 | *In re Relafen Antitrust Litig.,* No. 1:01-cv-12239 (D. Mass.), at ECF 459 | $67MM | $22,311,000 | 33.3% |
| 2005 | *In re Remeron End-Payor Antirust Litig.,* No. 2:02-cv-2007 (D.N.J.), at ECF 197 | $27.555MM | $7,800,000 | 28.3%[7] |
| 2005 | *Nichols v. Smithkline Beecham Corp. ("Paxil"),* No. 2:00-cv-6222 (E.D. Pa.), at ECF Nos. 212 and 226 | $65MM | $19,500,000 | 30.0% |
| 2005 | *Ryan-House v. GlaxoSmithKline PLC ("Augmentin"),* No. 2:02-cv-442 (E.D. Va.), at ECF 298 | $29MM | $7,250,000.00 | 25% |

The fee sought in this case, if approved by this Court, equates to 58.7% of the aggregate

---

[7]    In *Remeron*, the end-payor class and state attorneys' general negotiated a combined $36 million settlement fund, $2 million earmarked for class notice and settlement administration costs, and $1 million to the attorney generals' offices for their fees and expenses. *See In re Remeron End-Payor Antitrust Litig.*, No. 02-CV-2007-FSH, 2005 WL 2230314, at *5-6 (D.N.J. Sept. 13, 2005). Under the terms of the settlement, class members were to receive 83.5% of the $33 million fund ($27,555,000). *Id.* Accordingly, class counsel's $7.8 million fee award represents 28.3% of the portion of the settlement that was allocated to the class.

lodestar (a *negative* multiplier, 41.3% of the total lodestar). That alone underscores the complexity and risks incurred to prosecute the claims asserted in this litigation and why, only a modest number of plaintiffs' firms have the experience and resources to prosecute end-payor purchaser pharmaceutical reverse-payment antitrust cases like this one.

While all antitrust cases are complex and involve risk, this end-payor pharmaceutical antitrust case was even more so given the multi-state claims, evolving law, and large out-of-pocket expenses and significant commitment of time that were borne solely by Class Counsel. Class counsel faced a myriad of complex issues involving drug manufacturing and contracting, in dense legal and regulatory frameworks at the intersection of numerous state antitrust, and consumer protection laws, common law principles of unjust enrichment, patent law, Hatch-Waxman drug approval laws and regulations, and Medicaid Drug Rebate Program laws and regulations as modified through the Deficit Reduction Act of 2007. Layered atop these complex questions of fact and law, Class Counsel also had to prove (1) what would have occurred in the absence of the challenged reverse payment (*i.e.*, whether Mylan was likely to win its patent challenge and when Mylan's Paragraph IV litigation would have been exhausted, and whether and when generic entry would have occurred in the absence of the reverse payment), (2) the damages suffered by the end-payor Class as a result of the reverse payment.

Compounding these complicated issues was exceptional risk. Even after *Actavis* was decided, dismissals of other cases at the Rule 12 and Rule 56 stages quickly revealed that *Actavis* was not a panacea for the risk these cases present.  *See, e.g., In re Wellbutrin XL Antitrust Litig.*, 133 F. Supp. 3d 734 (E.D. Pa. 2015), *aff'd sub nom. In re Wellbutrin XL Antitrust Litig. Indirect Purchaser Class,* 868 F.3d 132 (3d Cir. 2017), *judgment entered sub nom. In re Wellbutrin XL Antitrust Litig.*, No. 15-2875, 2017 WL 3529114 (3d Cir. Aug. 9, 2017) (summary judgment on direct and end-payor claims in antitrust reverse payment case).  Plaintiff also encountered additional challenges and risk on class certification.  Indeed, even after Plaintiff obtained class certification of a third-party payor class on

Plaintiff's pay-for-delay theory of liability,[8] and even after the Court denied Defendants' initial motion for decertification *in its entirety*,[9] the Defendants filed a letter motion for leave to file a renewed motion to decertify the class as to damages[10] that was *sub judice* at the time of settlement. Defendants' failure to file a motion under Fed. R. 23(f) and instead make multiple motions for decertification underscores Plaintiff's risk on class certification. Moreover, although Class Counsel successfully litigated the case to the verge of trial, the prospect of a two-phase jury trial on liability and damages only intensified the risk. There was no guarantee a jury would find in favor of the Plaintiff Class on *both* liability and damages. *See, e.g., In re Opana ER Antitrust Litig.*, 14-cv-10150, at ECF No. 1005 (N.D. Ill. July 1, 2022) (returning a jury verdict in favor of brand pharmaceutical manufacturer defendant after an over three-week trial on liability) and *In re Nexium (Esomeprazole) Antitrust Litig.*, 842 F.3d 34, 39 (1st Cir. 2016) (upholding jury verdict "that although the plaintiffs had proved an antitrust violation in the form of a large and unjustified reverse payment from AstraZeneca to Ranbaxy, the plaintiffs had not shown that they had suffered an antitrust injury that entitled them to damages").

Finally**,** this case settled at a very advanced stage on the verge of trial, after three mediations by three different mediators. ECF 957 at ¶¶ 14 and 17. *See also*, M. Miller Supp Decl. at 3. Class Counsel zealously prosecuted this case through exhaustive fact and expert discovery, significant motion practice under Rules 12, 23, 56, and 702, numerous motions *in limine*, the completion of jury instructions and verdict slips, and the compilation of two joint pretrial orders, which included the preparation of exhibit lists and deposition designations for trial. *See* ECF 957 at 9-10, 12-19.

These factors strongly support the 33 1/3% fee requested.

---

[8]     *See In re Namenda Indirect Purchaser Antitrust Litig.*, 338 F.R.D. at 565.
[9]     *See In re Namenda Indirect Purchaser Antitrust Litig.*, No. 1:15-CV-6549-CM-RWL, 2022 WL 4298767, at *11 (S.D.N.Y. Sept. 19, 2022).
[10]    *See* ECF 946.

## II.    SUMMARY OF CLASS COUNSEL'S LITIGATION EFFORTS

### A.    Motions to Dismiss

At the inception of this case, the Brand Defendants filed a joint motion to dismiss both the indirect and direct plaintiff actions.  At the same time, the Brand and Generic Defendants also filed an additional motion to dismiss the indirect purchaser action.  On September 13, 2016, the Court largely denied the motion to dismiss directed to both the DPP and Indirect Purchaser suits.  In the same opinion, the Court also stayed Plaintiff's case.  *See Sergeants Benevolent Association Health & Welfare Fund*, 2016 WL 4992690, at *1 (S.D.N.Y. Sept. 13, 2016).  On September 10, 2018, the Court lifted the stay on Plaintiff's case.  The Court then permitted Defendants to file renewed motions to dismiss against Plaintiff after it determined that "intervening events in the Direct Purchaser action and new case law in the Second Circuit warrant supplemental briefing."  ECF 134. In total, Plaintiff was required to respond to over five hundred pages of memoranda and exhibits in support of the motions filed by both the brand and generic Defendants to predominately defeat Defendants' motions to dismiss.  *See* ECF 80-86, 129-31, 133-34, 146-47.

### B.    Class Certification

After Plaintiff largely prevailed on Defendants' motions to dismiss (Doc. Nos. 107 and 186), Plaintiff successfully obtained class certification of a third-party payor class, on EPP's reverse payment claims, under the laws of thirty jurisdictions.  *See*, *In re Namenda Indirect Purchaser Antitrust Litig*., 338 F.R.D. at 576-77.  Prior to obtaining class certification, Class Counsel settled with the Generic Defendants and defined in those Settlement Agreements a class of all end payors in the United States who paid for Namenda XR and IR during the period of April 14, 2010 through the time when the Generic Defendants' anticompetitive conduct ceased.  *See* ECF Nos. 284, 505, 514.[11]  The

---

[11]    *See* ECF Nos. 279-1, 470-1, and 473-1 (generic settlement agreements).  The settlement with Teva also includes the AB-rated generic equivalents of Namenda IR tablets.  *See* Doc. No. 470-1.

Third-Party Payor Class is limited to those who paid for or reimbursed for generic and brand Namenda IR and XR in the enumerated states during the period of June 1, 2012 through December 31, 2017.[12] In subsequent motion practice, Forest and Merz sought to have that Class decertified shortly before trial was scheduled to begin. ECF Nos. 897-899. Class Counsel defeated Defendants' motion for decertification in its entirety and maintained the third-party class. *See In re Namenda Indirect Purchaser Antitrust Litig.*, 2022 WL 4298767 (S.D.N.Y. Sept. 19, 2022).

### C.    Experts

Plaintiff and Class Counsel sought to be efficient, effective, and minimize the expert expense by retaining the experts who were knowledgeable about the facts in the case and who provided reports and testimony in the DPP case. DPPs opposed those efforts, and after holding that there were differences between the DPP and EPP cases, the Court ordered the Plaintiff to retain its own experts. ECF 359. Consequently, at their sole risk and expense, the EPP Class independently retained five new experts,[13] who each, on a very short schedule, submitted at least two reports containing their opinions. 957 at 17. The Defendants deposed all of Plaintiff's experts at least once, and two experts twice, and Plaintiff's damages expert was deposed three times. *Id.* Additionally, Class Counsel fully prepared each expert for direct and cross examination at trial in the event the action had not settled. *Id.* at 18.

In addition to retaining and preparing Plaintiff's experts for their depositions and trial, Class Counsel also responded to Defendants' experts and prepared for and took several of their depositions. The Defendants submitted over six-hundred pages of new opinions from twelve defense experts in EPP's case. *Id.* at 17. This required Class Counsel to carefully review and analyze the new defense expert opinions to address them in opposition briefing, as well as to prepare for and take the

---

[12]    *See In re Namenda Indirect Purchaser Antitrust Litig.*, 338 F.R.D. 527, 576-77 (S.D.N.Y. 2021).

[13]    Plaintiff independently retained seven testifying experts, but Plaintiff had already retained two of its experts prior to the Court's order precluding Plaintiff from using the DPPs' experts.

depositions of several of the new defense experts. *Id.* Moreover, because this case settled on the verge of trial, Class Counsel had already prepared cross-examinations of the ten defense experts who Defendants planned to call at trial and who opined on a diverse range of subject matter. *Id.* at 18.

This effort required Class Counsel to present and defend against exceptionally complex material in a concise and coherent manner in a short timeframe.

### D.    Summary Judgment and *Daubert* Motions

While Plaintiff's motion for class certification was *sub judice*, both the Forest and Merz Defendants filed individual motions for summary judgment and made a myriad of arguments concerning, *inter alia*, Plaintiff's theory of liability regarding its "reverse payment" and "hard switch" allegations, the purported strength of Forest and Merz's position in the underlying Paragraph IV patent litigation, the reasonableness of Defendants' Lexapro sales forecasts, the application of *Actavis*'s "unjustified" and "large" language, Plaintiffs' causation theories concerning their reverse-payment, antitrust impact, and damages. *See* ECF 650 and 653, *see also* ECF 957 at 10 and 17. Additionally, similar to the EPP-specific challenges Defendants made against Plaintiff's state law claims on the motions to dismiss, Defendants again targeted and moved to dispose of Plaintiff's individual state law claims on summary judgment. *Id.* Indeed, several of Defendants' arguments in this case were not raised in the DPPs' case. At the same time, Defendants also filed *Daubert* motions against five of Plaintiff's merits experts: Dr. Michael Davitz, Dr. Jacob Holzer, Dr. Thomas McGuire, Dr. William Vogt, and Ms. Susan Marchetti.[14] *See* ECF Nos. 543-553. Accordingly, Class Counsel was required

---

[14]    Defendants did not make a *Daubert* motion against Dr. Russell Lamb, Plaintiff's economic injury expert. Because Plaintiff's expert, Laura Craft, opined on issues related to class certification, Defendants moved during class certification briefing to exclude her opinions. *See* ECF Nos. 461-464. The Court denied Defendants' *Daubert* motion directed to Ms. Craft. *In re Namenda Indirect Purchaser Antitrust Litig.*, No. 1:15-cv-6549-CM-RWL, 2021 WL 100489 (S.D.N.Y. Jan. 12, 2021). Defendants first moved to exclude the opinions of Plaintiff's expert, Dr. William Vogt, who opined on issues related to both class certification and merits, during summary judgment briefing. ECF No. 551-52. After losing their initial *Daubert* motion directed to Dr. Vogt, *In re Namenda Indirect*

to analyze and respond to thousands of pages of briefing to predominately defeat Defendants' summary judgment and *Daubert* motions. *See* ECF Nos. 543-53, 555-58, 564-55, 572. Plaintiff also affirmatively moved for summary judgment and to exclude, in part, the opinions of several of Defendants' experts. *See* ECF Nos. 561-62, 568-71, 573-76.

The Court largely denied the parties cross-motions for summary judgment and allowed Plaintiff's claims under the laws of thirty jurisdictions to go to trial. *See In re Namenda Indirect Purchaser Antitrust Litig.*, No. 1:15-CV-6549-CM-RWL, 2021 WL 2403727 (S.D.N.Y. June 11, 2021). While the Court granted Defendants' motions to exclude two of Plaintiff's experts in part, the Court also granted Plaintiff's motions to exclude two of Defendants' experts in part. *Id.* at *42.

### E.    Trial Preparation

After completing extensive fact and expert discovery, as well as class certification, summary judgment and *Daubert* briefing, Class Counsel prepared for trial and submitted the initial joint pretrial order. ECF 700, 702. As part of the pretrial order, Class Counsel prepared contentions, designated deposition testimony, reviewed and identified thousands of exhibits for trial, and lodged objections to hundreds of Defendants' deposition designations and exhibits. *Id.* After the submission of the first joint pretrial order, Class Counsel researched, drafted, and filed preliminary and substantive jury instructions, a proposed verdict slip, and a proposed juror questionnaire. *See* ECF 829-30, 832, 834, and 957-18. Class Counsel also filed sixteen motions *in limine*, many of which were successful, including Plaintiff's motion *in limine* to exclude a document on which several of Defendants' experts relied. *See In re Namenda Indirect Purchaser Antitrust Litig.*, No. 1:15-CV-6549-CM-RWL, 2022 WL 3362429, at *3-4 (S.D.N.Y. Aug. 15, 2022). Additionally, Plaintiff successfully defeated the

---

*Antitrust Litig.*, 338 F.R.D. at 544-46, Defendants continued to challenge Dr. Vogt's opinions up until the time of settlement. *See, e.g.*, ECF 734, 737, 863, and 921.

majority of Defendants' thirteen motions *in limine*.[15]  *Id.* at *6-14.

In May 2022, after the Court set an October 2022 trial date, Class Counsel undertook the final push of intensive trial preparation, which included working with Defendants to resolve any outstanding issues related to the parties' exhibit lists, joint exhibit list, and deposition designations, in preparation for the final pretrial conference.  *Id.* at 11.  Additionally, during this time, and up until settlement, Defendants engaged in a strategy to re-litigate class certification and *Daubert* challenges against Plaintiff's experts, which required Class Counsel to respond to Defendants' various new motions while preparing for trial.  *See* ECF 863, 895, 897, 921, 933, and 946.

### F.    Mediation and Settlement

With the assistance of this Court's personnel, Plaintiff and the last two defendants reached an agreement in principle on October 4, 2022, only two weeks before trial.  ECF 950.  This represented the third attempt to settle this action. In the Fall of 2018, the Court lifted the stay and ordered Class Counsel to get up to speed for mediation with the DPPs and Defendants.  *See* ECF Nos. 122 and 957-8.  The parties exchanged lengthy mediation statements and participated in a joint mediation session with Mr. Marks.  *See* M. Miller Supp Decl. at ¶3.  Sometime after that mediation, Class Counsel achieved a settlement with some of the Generic Defendants.  Settlements with the remaining Generic Defendants followed.  ECF 957 at 4.  Plaintiff and Forest and Merz continued to litigate vigorously and in March 2022 parties engaged in additional mediation efforts before retired United States District Judge Faith Hochberg, including additional written submissions and an in-person session.  *Id.* at 11. *See also*, ECF No. 843.  The mediation before Judge Hochberg included another full day session but did not result in settlement.  *Id.*  Ultimately, the parties reached a settlement in principle with the able

---

[15]    The Forest and Merz Defendants collectively filed thirteen motions *in limine*. Merz independently filed one motion *in limine* that the Court granted *in part*.  *See In re Namenda Indirect Purchaser Antitrust Litig.*, 2022 WL 3362429, at *13-14.

assistance of the Court's senior law clerk. *Id*. at 17.  Class Counsel negotiated the terms of the settlement over several weeks, signing a Settlement Agreement on November 11, 2022. *See* ECF 919-1.

Since 2015, with the exception of when the Court stayed Plaintiff's case, Class counsel zealously prosecuted this action, and secured substantial all-cash benefits for the Classes.

## III.    ARGUMENT

### A.    Class Counsel Should Be Awarded Reasonable Attorneys' Fees

Under the "equitable fund" doctrine, attorneys for the plaintiffs in a class action may petition the court for compensation from the settlement fund that resulted from their efforts. *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980). "[R]egardless of whether a case is brought pursuant to a statute with a fee-shifting provision, if the parties settle the case by creating a common fund, common-fund principles control class counsel's fee recovery." *Fresno County Employees' Ret. Ass'n v. Isaacson/Weaver Fam. Tr.*, 925 F.3d 63, 67 (2d Cir. 2019).  In common fund cases, the Second Circuit has endorsed the calculation of attorneys' fees based on a percentage-of-the-fund methodology. *Pearlstein*, 2022 WL 4554858, at *9. This is because "once the parties have agreed to settle, the percentage-of-the-fund methodology serves as important motivation for counsel to maximize the class's recovery, and, a fortiori, counsel's fee." *Fresno County Employees*, 925 F.3d at 71.  The percentage method also dispenses with the "cumbersome, enervating, and often surrealistic process of lodestar computation," but courts generally assess the hours submitted by counsel as a "cross-check" on the reasonableness of the requested percentage. *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 50 (2d Cir. 2000) (quotation omitted).  *See also In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d 570, 586 (S.D.N.Y. 2008) ("[T]he administrative problems associated with the lodestar method, and the advantages presented by the percentage of recovery approach, [have] led most district courts in this Circuit to adopt the percentage of recovery methodology.").

This Court has discretion to determine a reasonable fee based on the following factors: "(1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of the litigation … (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations." *See Goldberger,* 209 F.3d at 50. *See also*, *In re Initial Pub. Offering Sec. Litig.*, 671 F. Supp. 2d 467, 480 (S.D.N.Y. 2009). A fee award is based on what is reasonable under the circumstances. *Goldberger*, 209 F.3d at 47. *See also* Fed. R. Civ. P. 23(h) ("In a certified class action, the court may award *reasonable* attorney's fees") (emphasis added). A reasonable fee is determined from the "plaintiff's perspective" and "can account for contingency risk where such risk exists." *Fresno County Employees*, 925 F.3d at 70.

Where, as here, the contingency risk is significant, and the Class has benefited from Class Counsel's hard-fought efforts, a reasonable fee should include compensation for such risk. As Second Circuit held:

> The plaintiff class is therefore appropriately charged for contingency risk where such risk is appreciable because the class has benefited from class counsel's decision to devote resources to the class's cause at the expense of taking other cases. That is, because class counsel has decided to represent the plaintiff class, class counsel's ability to freely represent other clients is limited by the risk she has assumed that the class's cause will be unsuccessful. The class, having been enriched by counsel's acceptance of its cause at the expense of other clients' causes, may be charged for counsel's assumption of risk on its behalf.

*Id*. Indeed, "[i]t is precisely the promise of a reasonable fee that encourages plaintiffs' attorneys to accept cases such as these and risk spending their own financial resources and personal efforts for years until recovery can be obtained for the class." *In re Initial Pub. Offering Sec. Litig*, 671 F. Supp. 2d at 502; *id.* at 516 ("[t]his [33%] fee takes into account the risks counsel undertook to represent class members and the hard work that was put into resolving this litigation."). Here, Class Counsel's request for a 33 1/3% fee of the settlement fund is supported by the *Goldberger* factors and consistent with the law and awards in similar cases.

15

**B.** **Class Counsel's Fee Request Satisfies the *Goldberger* Factors**

    **1.** **The Time and Labor Expended by Counsel**

Class Counsel spent 51,769.4 hours, with a value of $32,048,598.25, prosecuting this case from investigation through January 31, 2023. M. Miller Supp Decl. at ¶7. As detailed above and in the Miller Declarations, Class Counsel: (a) largely defeated the Defendants' motions to dismiss, which included analyzing and responding to over five hundred pages of memoranda and exhibits in support of the motions filed by both the brand and generic Defendants; (b) independently reviewed and analyzed 4.7 million pages of documents, as well as transactional and pricing data produced in this matter; (c) drafted and served document requests, interrogatories, and requests for admission; (d) responded to Defendants' voluminous discovery requests, including at minimum, seventy-one Requests for Admission, two-hundred and seventy-six Requests for Production, and one hundred and ten Interrogatories propounded by Defendants; (e) prepared for and deposed multiple fact-witnesses (f) prepared for and deposed several of Defendants' experts (g) consulted with and retained seven testifying experts and one consulting expert in wide-ranging disciplines (h) engaged in substantial discovery motion practice both before Magistrate Judge Lehrburger and this Court; (i) successfully obtained class certification of a third-party payor class, on EPP's reverse payment claims, under the laws of thirty jurisdictions; (j) largely defeated Defendants' motions for summary judgment, which included supporting memoranda and exhibits in excess of one thousand pages; (k) largely defeated Forest and Merz's motions to exclude the opinions of Plaintiff's experts; (l) successfully moved to exclude in part several defense expert opinions; (m) briefed twenty-nine motions *in limine* filed by both sides; (n) defeated Defendants' motion for decertification in its entirety (o) prepared for and participated in multiple mediations; and (p) fully prepared for a two-phase trial that would have begun two weeks after the parties settled.

This was a large volume of work that Class Counsel performed efficiently, effectively, and rapidly. Moreover, Class Counsel has and will continue to expend a significant number of hours in connection with administering the Settlement. *See Garcia v. Pancho Villa's of Huntington Vill., Inc.,* No. 09-CV-486 ETB, 2012 WL 5305694, at *8 (E.D.N.Y. Oct. 4, 2012) (acknowledging that class counsel would perform more work on behalf of the class after final approval, including "assisting with the administration of the settlement, and answering Class Member questions, which further supports their fee request"). The significant time and labor that has been (and will be) expended by Class Counsel supports the requested fee requested.

## 2.    The Magnitude and Complexities of the Litigation

"An antitrust class action is arguably the most complex action to prosecute." *In re EpiPen (Epinephrine Injection, USP) Mktg., Sales Practices and Antitrust Litig.,* No. 17-MD-2785-DDC-TJJ, 2022 WL 2663873, at *5 (D. Kan. July 11, 2022) (citation and internal quotation marks omitted). *See also In re Restasis (Cyclosporine Ophthalmic Emulsion) Antitrust Litig.,* No. 18-MD-2819-NG-LB, 2022 WL 3043103, at *9 (E.D.N.Y. Aug. 2, 2022) (characterizing antitrust case against pharmaceutical manufacturer as "complex, discovery-intensive, and expert-dependent"); *In re Loestrin 24 Fe Antitrust Litig.,* No. 1:13-MD-2472-WES-PAS, 2020 WL 4038942, at *7 (D.R.I. July 17, 2020), *report and recommendation adopted*, No. 1:13-MD-2472-WES-PAS, 2020 WL 5201275 (D.R.I. Sept. 1, 2020) (recognizing the complexity of protracted reverse payment and product hop antitrust litigations); and *In re Flonase Antitrust Litig.,* 951 F. Supp. 2d 739, 743 (E.D. Pa. 2013) ("Antitrust class actions are particularly complex to litigate and therefore quite expensive."). This antitrust lawsuit, brought on behalf of a class end-payors, was no different. The litigation involved numerous state antitrust and consumer protection statutes, the principles of unjust enrichment, patent law, the Hatch-Waxman Act, pharmaceutical manufacturing processes, the Medicaid Drug Rebate Program, and unclear guidance from the Supreme Court's decision in *Actavis.* Plaintiffs' economists

17

were also required to model the complicated interaction between the delay of generic Namenda entry from the reverse payment and the extent of damage to the Class.  The extent of damages ultimately became a significant issue as the parties approached trial.

One cannot overstate the complexities that this massive litigation presented, and the hurdles Class Counsel confronted to make them comprehensible to a lay jury.

### 3.    The Risk of the Litigation

"[R]isk of the litigation is one of the most important factors, if not the foremost factor, to consider when determining the reasonableness of fees."  *Woburn Ret. Sys. v. Salix Pharms., Ltd.*, No. 14-CV-8925-KMW, 2017 WL 3579892, at *6 (S.D.N.Y. Aug. 18, 2017).  When lawyers undertake litigation on a contingency basis, they face the risk of non-payment despite years of hard work.  *See Pearlstein*, 2022 WL 4554858, at *9 ("At each stage, Class Counsel took on the risk that the claims would fail leaving Class Counsel with nothing.").  *See also Woburn Ret. Sys.*, 2017 WL 3579892, at *6 (lawyers on contingency "assume a great deal of risk").

This litigation presented substantial risks. The substantial risks the EPP faced are illustrated by the recent *Opana* trial in the United States District Court for the Northern District of Illinois. Lead counsel for the DPPs in *Namenda*, Garwin & Gerstein, was also one of DPP lead counsel in *Opana*. *Opana* was an over three-week liability trial during June of this year which pitted three plaintiff groups – DPPs, Retailers, and End-Payors – against Endo, the manufacturer of branded Opana, and Impax, the generic defendant. The trial focused on federal and state pay-for-delay, no authorized generic claims, and patent issues as they were related to the antitrust claims.  While Impax settled soon after trial had begun, the case against Endo went to verdict. The jury ultimately found in favor of Endo. After the jury rendered its verdict, *see In re Opana ER Antitrust Litig.*, 14-cv-10150, at ECF No. 1005 (N.D. Ill. July 1, 2022), plaintiffs filed a post-trial motion for judgment as a matter of law or for a new trial. *Id.* at ECF No. 1048.  Shortly after plaintiffs filed their post-trial motion, Endo declared

bankruptcy and filed a notice of suggestion of bankruptcy and automatic stay of proceedings in the *Opana* case, substantially reducing any chances of a meaningful appeal or post-verdict settlement. *Id.* at ECF No. 1064. Here, even if the jury found for the Plaintiff on liability and damages, Plaintiff would have faced substantial risk on appeal.

Since this case's inception in 2015, Plaintiff confronted significant risk. Defendants filed multiple motions to dismiss Plaintiff's claims, which included over five hundred pages of memoranda and exhibits in support of their motions. Defendants' challenges on the motions to dismiss included, but were not limited to, contesting Plaintiff's interpretation of "large" under *Actavis*, contesting Plaintiff's Article III standing, and making specific challenges to the majority of Plaintiff's claims brought under the various state antitrust, consumer protection, and unjust enrichment laws in an effort to dispose of Plaintiff's case. *See* ECF 80-86, 129-31, 133-34, 146-47.

Plaintiff continued to face risk related to class certification up until settlement. During the initial class certification briefing, Defendants attacked Plaintiff's ability to ascertain the identity of members of the class and attempted to impose a heightened standard that this Circuit has declined to adopt. *Compare* ECF No. 465 at 4-5, 27-30, *with In re Petrobras Sec.*, 862 F.3d 250 (2d Cir. 2017). Defendants also challenged Plaintiff's assertions of class-wide injury based on Defendants' flawed assumptions that many plans were not injured due to the different coverage phases of Medicare Part D, third-party payors passed on the overcharges to the government, and third-party payors recouped or passed on overcharges relating to a single drug by raising plan contributions in subsequent years. Plaintiff ultimately prevailed, as the Court rejected these arguments and certified Plaintiffs' claims under the laws of thirty jurisdictions based on Plaintiff's reverse payment theory of liability. *See In re Namenda Indirect Purchaser Antitrust Litig.,* 338 F.R.D. at 527.

There was also no guarantee that Plaintiff would defeat Defendants' motions for summary judgment and repeated *Daubert* challenges to Plaintiff's experts. Although, after extensive briefing,

Plaintiff largely prevailed on these motions.[16]  *See supra*. At 9.

Plaintiff also faced substantial risk that the jury would be persuaded that Forest did not make a reverse payment to Mylan because its Lexapro forecasts were reasonable, and Forest would have made more money under the Lexapro Amendment than under its prior deal with Mylan; that Forest made no reverse payment to Mylan because Forest's forecasted Medicaid rebate savings would offset its payments to Mylan; that even if Forest did make a reverse payment to Mylan, the payment was not sufficiently large, or sufficiently in excess of saved litigation costs, and that the entry date in the Forest-Mylan settlement fairly represented the strength of the '703 patent; that no generic could have entered the market earlier regardless of the reverse payment deal with Mylan; and that the Class did not sustain damages. Any of these conclusions would have led to a defense verdict on Plaintiff's reverse payment claims.

These risks would present themselves yet again during the inevitable appeal to the Second Circuit after a judgment in the Class's favor (and then possibly to the Supreme Court).  Viewed against these risks, the $56,438,000 all-cash settlement provides certainty and substantial benefits to the Class. The risks of establishing liability and proving damages weigh in favor of granting Class Counsel's fee petition. *See., e.g.*, *Pearlstein*, 2022 WL 4554858, at *9-10.

### 4.    The Quality of Representation

Class Counsel has vigorously litigated this unusually complicated case from initial investigation through trial preparation and settlement with skill, tenacity, and strict obedience to the Class's best interests at every stage. Class Counsel has decades of complex class action litigation experience, particularly in representing end-payor plaintiffs in pharmaceutical antitrust cases. *See* M. Miller Supp Decl. at Exhibits B-1, C-1, and D.-1.  The collective and extensive experience of

---

[16]    *See In re Namenda Indirect.*, 2021 WL 2403727.

Plaintiff's counsel enabled them to compare the risks and benefits of continued litigation to the settlement for the collective benefit of Plaintiff and the Class.  Indeed, the "quality of [class counsel's] representation is evidenced by the quality of the result achieved."  *In re Signet Jewelers Ltd. Sec. Litig.*, No. 1:16-CV-06728-CM-SDA, 2020 WL 4196468, at *20 (S.D.N.Y. July 21, 2020).  *See also, Brown v. City of New York*, No. 17-CV-9078-AJN, 2020 WL 6075524, at *4 (S.D.N.Y. Oct. 15, 2020) (concluding the quality of class counsel supported requested fee award).

"[T]he quality of opposing counsel is also important in evaluating the quality of plaintiffs' counsels' work." *In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 467 (S.D.N.Y. 2004). Forest and Merz were initially represented by two leading defense firms, with extensive antitrust and trial experience, including in pharmaceutical antitrust cases: White & Case and Kirkland & Ellis. Allen & Overy later appeared on behalf of the Merz Defendants.  Given "[t]hat Plaintiffs' Counsel was able to obtain a substantial settlement from these Defendants confirms the quality of Plaintiffs' Counsel's representation in this matter, and is a factor in determining the reasonableness of the fee request."  *In re Veeco Instruments Inc. Sec. Litig.*, No. 05 MDL 01695CM, 2007 WL 4115808, at *7 (S.D.N.Y. Nov. 7, 2007) (McMahon, J.).  *See also, In re Giant Interactive Group, Inc. Sec. Litig.*, 279 F.R.D. 151, 164-65 (S.D.N.Y. 2011) (awarding 33% attorneys' fee award after considering the "quality of representation by counsel on both sides was high").

### 5.    The Requested Fee in Relation to the Settlement

As discussed above (*see* pp. 3-6), a 33 1/3% fee is both well within the range of fee awards within this Circuit and for complex pharmaceutical antitrust cases. *See, e.g.*, *Pearlstein*, 2022 WL 4554858, at *10.  *See also, In re Chicago Bridge & Iron Co. N.V. Sec. Litig.*, No. 1:17-CV-1580, 2022 WL 3220783, at *1 (S.D.N.Y. Aug. 5, 2022) (finding a baseline fee percentage of 33 1/3% to be "reasonable and appropriate") and *Bryant*, 2020 WL 563804, at *6 (citation and internal quotation marks omitted)(holding "a one-third award of the settlement proceeds [for attorneys' fees] is

21

considered typical and reasonable…because the attorneys' fees requested were entirely contingent upon success"). *See also Restasis,* 2022 WL 3043103, at *9 (33 1/3% attorneys' fees on $29,999,999.99 settlement fund for class of end payors); *Loestrin,* 2020 WL 4038942, at *9 (33 1/3% attorneys' fees on $62,500,000 settlement fund for class of end payors); *In re Flonase Antitrust Litig.,* 291 F.R.D. 93, 104 (E.D. Pa. 2013) (internal quotations and citations omitted) (approving 33.3% attorneys' fee award on $35,000,000 settlement fund and recognizing that "[a] one-third fee award is standard in complex antitrust cases of this kind" and "is consistent with awards in other complex antitrust actions involving the pharmaceutical industry").

In *In re DDAVP Indirect Purchaser Antitrust Litig.,* No. 05 CIV 2237 CS, 2013 WL 10114257, at *3 (S.D.N.Y. Dec. 18, 2013), another pharmaceutical antitrust case brought on behalf of end-payors, the court approved a requested fee of 33⅓% of a settlement fund, reasoning that:

> Class counsel who recover a common fund for the benefit are entitled to a reasonable attorneys' fee from the fund. Class Counsel's request for 33% of the Settlement fund is well within the applicable range of reasonable percentage awards, and such an award in this case would in fact result in a negative multiplier.

*Id.*

The DDAVP court's reasoning is equally applicable in this case and supports the requested fee of 33 1/3% of the Settlement. Even an award of that percentage which will yield a fee of $18,812,666 will result in a 41.3% discount from Plaintiff's counsels' lodestar. Accordingly, the cross-check under the circumstances of this case ensures that Plaintiff's counsel will not recover a windfall. To the contrary, the award of 33 1/3% of the settlement fund will help to maintain the incentive of counsel to continue to prosecute these types of cases on a purely contingent basis.

### 6. Public Policy Considerations

"[P]rivate suits are an important element of the Nation's antitrust enforcement effort." *Am. Soc'y of Mech. Eng'rs v. Hydrolevel Corp.,* 456 U.S. 556, 572 n.10, 102 S. Ct. 1935, 72 L. Ed. 2d 330

(1982).  Consistent with that rationale, courts recognize that "[i]t is important to encourage top-tier litigators to pursue challenging antitrust cases…[because] [o]ur antitrust laws address issues that go to the heart of our economy." *In re Credit Default Swaps Antitrust Litig.*, No. 13-MD-2476-DLC, 2016 WL 2731524, at *18 (S.D.N.Y. Apr. 26, 2016).  This case underscores these principles.  No government agency prosecuted the illegality or liability of Forest and Merz's reverse payments under the antitrust laws.  In addition to successfully prosecuting a case against Forest and Merz for antitrust violations in connection with the sale of Namenda, unlike the DPPs, Plaintiff and Class Counsel also undertook the risk of litigating against the generic defendants.  Incentivizing the prosecution of complex end-payor antitrust actions, such as the one here, upholds the policy goals of private antitrust enforcement.

### C.    A Lodestar Cross-Check Confirms the Reasonableness of the Requested Fee

"[C]ounsel may be entitled to a 'multiplier' of their lodestar rate to compensate them for the risk they assumed, the quality of their work and the result achieved for the class." *In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d at 590. *See also Christine Asia Co. v. Yun Ma*, No. 1:15-MD-02631-CM-SDA, 2019 WL 5257534, at *18 (S.D.N.Y. Oct. 16, 2019) (internal quotations and citations omitted) ("No one expects a lawyer whose compensation is contingent upon his success to charge, when successful, as little as he would charge a client who in advance had agreed to pay for his services, regardless of success.").  Here, a lodestar "cross-check" confirms that the fee requested in this case is eminently fair and reasonable given that it will result in an award substantially less than Plaintiff's counsel's actual lodestar.  *See* M. Miller Supp Decl. at ¶7 (reflecting a lodestar value of $32,048,598.25).  As this Court has held, when the fee requested "is significantly less than the lodestar," there is a strong suggestion that "the requested fee is reasonable."  *In re Marsh ERISA Litig.*, 265 F.R.D. 128, 146-47 (S.D.N.Y. 2010) ("When expressed as a percentage of the recovery—33.33%--the requested fee is reasonable under the circumstances of this case, consistent with the *Goldberger* factors.").

23

### D.    Class Counsel's Costs and Expenses Are Reasonable and Were Necessary to Achieve the Result

It is well-settled that counsel who have created a common fund for the benefit of a class are entitled to reimbursement for out-of-pocket expenses reasonably incurred to establish the fund.  *See In re Marsh ERISA Litig.*, 265 F.R.D. at 150. Here, Class Counsel's unreimbursed expenses were reasonably incurred and necessary to the representation of the Class. These expenses have been itemized by category for the Court's convenience. *See* M. Miller Supp Decl. at ¶7, Exh. B-F. These expenses include costs for seven testifying experts and one consulting expert, computerized legal research, the creation and maintenance of electronic document databases for discovery and trial, travel and lodging expenses, copying, court reporters, deposition and hearing transcripts, and multiple mediations. *Id*. These are the typical kinds of expenses that are routinely deemed reasonable and necessary. *See In re Marsh ERISA Litig.,* 265 F.R.D. at 150 (describing such expenses as "ordinary and necessary").  *See also, Restasis*, 2022 WL 3043103, at *9 (holding class counsel was entitled to full reimbursement of expenses incurred for the benefit of the class).  Accordingly, Class Counsel respectfully request that the Court approve reimbursement of Class Counsel's expenses in full.

### E.    An Incentive Award for the Class Representative Is Appropriate and Reasonable

Incentive awards are to reimburse a named plaintiff, who "take on a variety of risks and tasks when they commence representative actions[.]" *In re Marsh ERISA Litig*., 265 F.R.D. at 150. Here, Class Counsel believes that the award of $100,000 to the sole class representative, SBA, is appropriate, in recognition of the long hours they spent participating in this litigation since its inception in 2015, including filing suit, reviewing key motion practice, reviewing discovery requests, reviewing and collecting discovery, including claims data, preparing for and sitting for depositions, reviewing settlement proposals, and preparing to testify at trial.  If granted, this award would represent less than one percent of the total value of the settlement fund.  Moreover, the amount requested is in accord

with other incentive awards granted in this district where class representatives "were actively involved in the litigation and diligently and capably represented the best interests of the Class, from their appointment as Lead Plaintiffs…through the Settlement." *Pearlstein*, 2022 WL 4554858, at *11 (awarding $100,000 to each class representative). *See also, In re Flag Telecom Holdings, Ltd. Sec. Litig*., No. 02-CV-3400-CM-PED, 2010 WL 4537550, at *31 (S.D.N.Y. Nov. 8, 2010) (authorizing $100,000 incentive award for class representative who actively participated in the litigation since its inception, including reviewed complaints, produced documents, and sat for deposition).

The amount requested here is also consistent with awards made to class representatives in similar pharmaceutical antitrust cases outside this district. *E.g., In re Lidoderm Antitrust Litig.*, No. 14-MD-02521-WHO, 2018 WL 11375216, at *3 (N.D. Cal. Sept. 20, 2018) ($100,000); *In re K-Dur Antitrust Litig.,* No. 01-CV-1652-SRC-CLW, 2017 WL 11636125, at *2 (D.N.J. Oct. 5, 2017) ($100,000); *King Drug Co. of Florence, Inc. v. Cephalon, Inc*., No. 2:06-CV-01797-MSG, 2015 WL 12843830, at *6 (E.D. Pa. Oct. 15, 2015) ($100,000 to certain representatives); *In re Neurontin Antitrust Litig.,* No. CV 02-1830, 2014 WL 12962880, at *3 (D.N.J. Aug. 6, 2014) ($100,000).

**CONCLUSION**

For the reasons Class Counsel request that this Court enter an Order awarding Class Counsel fees in the amount of $18,812,666, *i.e.,* 33 1/3% of the Settlement Fund (including a *pro rata* share of the accrued interest), and reimbursement of expenses in the amount of $5,879.787.65. Class Counsel also respectfully requests that this Court approve an incentive award of $100,000 to SBA, the class representative, for its efforts on behalf of the Class.

Dated: February 25, 2023

*/s/ Marvin A. Miller*
Marvin A. Miller
Lori A. Fanning
**MILLER LAW LLC**
145 South Wells Street
Floor 18
Chicago, IL 60606
Tel: (312) 332-3400
mmiller@millerlawllc.com
lfanning@millerlawllc.com

Peter Safirstein
**SAFIRSTEIN LAW LLC**
45 N. Broad Street
Suite 100
Ridgewood, NJ 07450
Tel: (917) 952-9458
psafirstein@safirsteinlaw.com

*Co-Lead Counsel for the Class*

Lloyd Constantine
Ankur Kapoor
**CONSTANTINE CANNON LLP**
335 Madison Avenue, 9th Floor
New York, NY 10017
Tel: (212) 350-2700
lconstantine@constantinecannon.com
akapoor@constantinecannon.com

*Counsel for the Plaintiff Class*